BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
ROBERT A. LEWIS (SBN 83630)
GEOFFREY T. HOLTZ (SBN 191370)
Three Embarcadero Center
San Francisco, CA  94111
Telephone:  415.393.2000
Facsimile:  415.393.2286
robert.lewis@bingham.com

DELOITTE LLP
KAREN KENNARD (SBN 141925)
50 Fremont Street, Suite 3100
San Francisco, CA  94105-2230
Telephone:  415.783.4000

Attorneys for
DELOITTE CONSULTING LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF MARIN,<br><br>        Plaintiff,<br><br>     v.<br><br>DELOITTE CONSULTING LLP, SAP AMERICA, INC., SAP PUBLIC SERVICES, INC. and ERNEST W. CULVER,<br><br>        Defendants. | No. CV11-0381-SI<br><br>**DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION TO REASSIGN ACTION TO REFEREE**<br><br>Date:   March 25, 2011<br>Time:  9:00 a.m.<br>Place:  450 Golden Gate Ave. (Courtroom 10, 19th Floor)<br>Judge:  Hon. Susan Illston |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. The General Reference Provision Governs All Disputes Relating to the Engagement and Plainly Encompasses the Claims at Issue ................................... 2

        1. Under Any Interpretation of the Governing Standards, the Reference Provision Applies Because the Claims Alleged Require Interpreting and Applying the Parties' Contract ........................................ 2

        2. Broad Provisions like the Reference Clause Must Be Applied Broadly to Include All Claims Relating to the Engagament, Including RICO Claims ................................................................................ 5

    B. The Enforcement of the General Reference Provision Would Not be Unreasonable, and Marin's Tactical Choice to Commence a Second Duplicative Lawsuit Cannot Avoid Application of the Reference Provision ........ 7

        1. The Consequences of Marin's Choice to Bring a Second Lawsuit Does Not Make Unreasonable Reference of the Claims Against Deloitte Consulting to the Referee Selected by Marin to Whom the Parties Contractually Agreed to Submit All Disputes ................................. 8

        2. Marin Consented to Irrevocably Waive All Rights to a Trial by Jury and to Submit to a Referee Any and All Disputes of Fact or Law, and No Constitutional Issue Is Presented By Enforcement of the Reference Provision ....................................................................... 11

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Life Ins. Co. v. Superior Court*,
    182 Cal. App. 3d 431 (1986) ............................................................................................. 6

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) ............................................................................................... 8

*Badie v. Bank of Am.*,
    67 Cal. App. 4th 779 (1998) .............................................................................................. 6

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*,
    2010 WL 5154136 (C.D. Cal. 2010) ..................................................................... 5, 7, 8, 13

*Clinton v. Janger*,
    583 F. Supp. 284 (N.D.Ill. 1984) ................................................................................. 3, 13

*Continental Illinois Nat. Bank & Trust Co. v. Washington*,
    696 F.2d 692 (9th Cir. 1983) ........................................................................................... 14

*Day Mgmt. Corp. v. Mobex Commc'ns., Inc.*,
    2004 WL 906366 (D. Or. Apr. 28, 2004) ........................................................................ 13

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ........................................................................................... 8

*E. & J. Gallo Winery v. Andina Licores, S.A.*,
    446 F.3d 984 (9th Cir 2006) .............................................................................................. 8

*Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*,
    806 F.2d 848 (8th Cir. 1986) ............................................................................................. 7

*Fleet Tire Service of North Little Rock v. Oliver Rubber Co.*,
    118 F.3d 619 (8th Cir. 1997) .......................................................................................... 6, 7

*General Environmental Science Corp. v. Horsfall*,
    753 F. Supp. 664 (N.D. Ohio 1990) ............................................................................... 6, 7

*Grafton Partners L.P. v. Superior Court*,
    36 Cal. 4th 944 (2005) ..................................................................................................... 11

*Halim v. Great Gatsby's Auction Gallery, Inc.*,
    516 F.3d 557 (7th Cir. 2008) ........................................................................................... 13

*In re Edgar M*,
    14 Cal. 3d 727 (Cal. 1975) ................................................................................................ 6

TABLE OF AUTHORITIES
(continued)

Page(s)

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) .................................................................................... 2, 3, 7

*PacifiCare Health Systems, Inc. v. Book*,
    538 U.S. 401 (2003) ..................................................................................................... 6, 13

*Saint Agnes Med. Ctr. v. PacificCare of Calif.*,
    31 Cal. 4th 1187 (2003) ................................................................................................. 13

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ..................................................................................................... 5, 6

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ................................................................................................ 5, 7, 12

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ..................................................................................... 6, 7, 14

*Tarrant Bell Property, LLC v. Superior Court (Abaya)*,
    2011 WL 446984 (Cal. Feb. 10, 2011) .......................................................................... 10, 11

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ............................................................................................................. 8

*Weidner Comms., Inc. v. Faisal*,
    671 F. Supp. 531 (N.D. Ill. 1987) ..................................................................................... 3

*William S. Gray & Co. v. Western Borax Co.*,
    99 F.2d 239 (9th Cir. 1938) ............................................................................................. 13

*Woodside Homes v. Superior Court*,
    142 Cal. App. 4th 99 (2006) ............................................................................................ 11

**STATUTES**

Cal. Code Civ. Proc. § 638 ............................................................................................. passim

**OTHER AUTHORITIES**

California Constitution ..................................................................................................... 8, 11

I.  **INTRODUCTION**

Marin's opposition to Deloitte Consulting's Motion to Reassign tries to ignore and/or rewrite the procedural history of this dispute, because to tell the whole story would show that reassignment is clearly proper here. The full story is this. The County of Marin filed a state court lawsuit on May 28, 2010 alleging breach of contract (the Implementation Services Agreement or "ISA") by Deloitte Consulting ("State Court Action"). Because the ISA contains limitation of liability provisions, Marin also alleged tort claims — fraud in the inducement, fraud in the performance, negligent misrepresentation, and professional negligence — to attempt to evade those provisions. Marin stipulated, under the reference provision of the ISA, that all of those claims should be adjudicated by the referee it proposed, former Santa Clara County Judge John Herlihy.

Marin's strategy was upset when Referee Herlihy on October 11, 2010 sustained Deloitte Consulting's demurrer to certain tort claims.[1] So Marin revised its strategy and filed this second lawsuit on December 16, 2010, alleging the same facts as in the State Court Action but under different (but closely related) legal theories and adding three defendants. This duplicative lawsuit is a transparent effort again to evade the limitation of liability provisions in the ISA. It is also an effort to evade the reference provision of the ISA now that the referee has expressed skepticism that Marin's claims are anything other than a breach of contract dispute.

Marin predictably argues that the ISA's reference provision should not be enforced as to the claims against Deloitte Consulting in this lawsuit. Its arguments are meritless. First, it asserts that this lawsuit (unlike the State Court Action) doesn't come within the reference provision, thereby ignoring the provision's intentionally broad terms, misconstruing the applicable law, and recasting its own allegations. Second, Marin argues that it would be unreasonable to enforce the reference provision because doing so might risk inconsistent rulings

---

[1] On March 4, Referee Herlihy again sustained Deloitte Consulting's demurrer to three of the four tort claims in Marin's Second Amended Complaint. (*See* Exhibit A to Request for Judicial Notice ("RJN") in support of this Reply.) Marin was granted until March 24, 2011 to file a third amended complaint.

REPLY ISO MOTION TO REASSIGN ACTION TO REFEREE

1 and duplicative litigation costs, which is ironic since those risks result from Marin's own strategy
2 decision to file a second lawsuit when its first lawsuit suffered adverse rulings, and are less likely
3 to materialize if the Court grants this motion. Finally, Marin claims it would be
4 "unconstitutional" to enforce the reference provision because Marin didn't consent to its
5 application in these particular circumstances, an argument that most charitably can be described
6 as specious.

The law is clear that reference provisions are to be broadly enforced. The ISA provision should be enforced, and the claims against Deloitte Consulting should be referred to Referee Herlihy.

## II. ARGUMENT

### A. The General Reference Provision Governs All Disputes Relating to the Engagement and Plainly Encompasses the Claims at Issue

#### 1. Under Any Interpretation of the Governing Standards, the Reference Provision Applies Because the Claims Alleged Require Interpreting and Applying the Parties' Contract

Marin argues that the ISA reference provision cannot be enforced because "resolution of the claims asserted against Deloitte in this action does not relate to interpretation of the ISA." (Opp. 6:17-18) That's wrong, both as a matter of law and fact.

Marin's argument is premised on language from *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) that "claims fall within the scope of a forum-selection clause if 'resolution of the claim[s] relates to interpretation of the contract.'" (Opp. at 6:14-15) *Manetti-Farrow* was a forum-selection case construing a narrow clause which by its terms applied only to "any controversy regarding interpretation or fulfillment of the present contract." The terms of that clause necessarily made the relevant inquiry whether "claims require interpretation of the contract." *Id*. at 511. And ultimately, the *Manetti-Farrow* court enforced the narrow forum selection clause and dismissed, sending claims of conspiracy and tortious interference with contract to Italy for resolution. *Id*. at 514. Indeed, in a decision relied on and followed by the court, a similar clause was held to apply to RICO claims. *Clinton v. Janger*, 583 F. Supp. 284, 287-88 (N.D.Ill. 1984).

*Manetti-Farrow* did not address reference clauses, let alone broad reference clauses such as that in the ISA. Even if the *Manetti-Farrow* analysis were applicable here, the ISA's reference provision would have to be enforced because the claims alleged in this lawsuit cannot be adjudicated without interpreting the ISA. Marin alleges that Deloitte Consulting "induce[d] the County to enter into a multi-million dollar contract to implement SAP for Public Sector software," directly implicating the ISA. (Compl. ¶ 17) The complaint alleges that "Deloitte had not provided sufficiently skilled consultants to the Project." (Compl. ¶ 55) The ISA specifically covers the personnel to be assigned (ISA ¶ 3.1 - 3.1.7) and their qualifications (ISA ¶ 1.2). It further alleges that "Deloitte and the SAP Defendants . . . intentionally concealed problems on and risks to the Project so that they remained hidden from the County until after the SAP system, defectively designed and implemented by Deloitte, went live." (Compl. ¶ 17) Because the Project was entirely governed by the ISA (ISA ¶ 1.3), which covers all design and implementation work (ISA ¶ 2.1), the determination of any "problem" or "defect" necessarily requires a determination of the parties' contractual obligations. Indeed, the ISA provides for Deloitte Consulting to report problems with the Project, the deliverables, or the system to Marin (ISA ¶ 4.1). The complaint alleges that "Deloitte also engaged in a practice of 'under-testing' to ensure that system defects did not come to light prior to the go-live." (Compl. ¶ 24) The ISA has detailed provisions governing software testing (ISA ¶¶ 13-13.5).[2]

The complaint also alleges a number of performance problems (Compl. ¶¶ 83-89) and asserts that "Deloitte and the SAP Defendants concealed problems with the County's implementation by unlawfully influencing [County employee] Culver." (Compl. ¶¶ 26, 64) Again, whether there were "problems" with the implementation necessarily requires a determination of Deloitte Consulting's contractual obligations. And assuming there were "problems," whether those problems were "concealed" likewise requires a determination under

---

[2] The Opening Brief at page 3, footnote 1, and at page 4 lines 15 to 20 sets out other examples. We also attach for the Court's convenience, as Exhibit A to Supplemental Declaration of Geoffrey Holtz in support of this reply, a chart with further examples of how the allegations in this complaint relate to the ISA.

the ISA because the ISA contains an express "Conflict of Interest" provision that prohibits conduct intended to improperly influence County personnel "to act in a manner contrary to the best interests of the County." (ISA ¶ 4.5) Finally, the complaint alleges that Deloitte Consulting "obtained Culver's 'sign-off' approval for various work that Deloitte had failed to properly perform." (Compl. ¶ 103) The ISA expressly designates Culver as the Marin designee for such approvals (ISA ¶ 17.15). The ISA also includes detailed provisions for reviewing and approving deliverables and for Marin to provide notice of any deficiencies (ISA ¶ 13-13.5) and, as noted above, prohibits improper attempts to influence County personnel (ISA ¶ 4.5).

Indeed, none of the claims in this action can be adjudicated without interpreting the ISA to determine whether Deloitte Consulting complied with it. For example, to adjudicate whether there was a conspiracy between Deloitte Consulting and SAP to violate RICO by, among other things, "Deloitte Consulting's misrepresentation of its skill, fraudulently inducing the County into hiring it, concealing problems on the contract, silencing an SAP employee, under-testing, and bribing and otherwise corrupting a County employee" (Opp. at 6:24-27), the trier of fact would first necessarily have to determine if there were "problems on the contract" and whether there was "under-testing" as opposed to the testing agreed upon in the ISA. Similarly, to adjudicate Marin's claim of "aiding and abetting fraud based on Deloitte substantially assisting Culver in covering up Deloitte's breaches" (Opp. at 7:1-3), the trier of fact must necessarily determine if there were any breaches of the ISA by Deloitte Consulting. More fundamentally, each claim will require an adjudication of whether Deloitte Consulting breached the ISA because each of Marin's causes of action allege that the harm to Marin resulted from improper performance by Deloitte Consulting under the ISA, either because the contract was awarded to Deloitte Consulting as a result of alleged "racketeering" conduct or because Deloitte Consulting was subsequently permitted to continue improper performance under the ISA as a result of ongoing fraud and breach of fiduciary duty.

    **2. Broad Provisions like the Reference Clause Must Be Applied Broadly to Include All Claims Relating to the Engagement, Including RICO Claims**

It is now well-settled that contract provisions for referral are to be broadly applied with

all doubts resolved in favor of referring the claims in accordance with the terms of the reference provision. Further, there is nothing unique about the claims Marin asserts here, including its RICO allegations, that changes this result.

In *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, 2010 WL 5154136 (C.D. Cal. 2010), the parties' contract included a reference provision stating that "[a]ny claim or dispute arising out of this Agreement shall be submitted to a general, non-jury reference ('Referee') to hear and decide all matters relating to the claim or dispute pursuant to California Code of Civil Procedure Sec. 638." *Id*. at *1. The court held that this clause embraced all claims asserted for breach of contract, for unjust enrichment and under the Copyright Act, even though the Copyright Act provides for exclusive federal court jurisdiction. *Id*. at *5.

In *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), trustees for pension and profit-sharing plans sued their broker under the Securities and Exchange Act for allegedly engaging in fraudulent and excessive trading on respondents' accounts, making false statements and omitting material facts from the advice given to respondents. The complaint also alleged a federal RICO claim and state law claims for fraud and breach of fiduciary duty. *Id*. at 223. The customer agreement provided:

> Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect.

*Id*. The Court held that the claims—including the RICO claims—came within this provision and were referred to arbitration. *Id*. at 242.[3]

---

[3] In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974), the Supreme Court observed that "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." In *Scherk*, the Supreme Court reversed the lower courts and held that an arbitration clause in a sales agreement covering "any controversy or claim [that] shall arise out of this agreement or the breach thereof" applied to claims asserted under the Securities Exchange Act. *Id*.

In *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), the court construed this provision: "All disputes arising in connection with this Agreement shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce . . ." The court held that with such a broad clause, the "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id*. at 721. After examining the factual allegations, it held that the "all disputes" clause encompassed claims based on antitrust violations, misappropriation of trade secrets and defamation. *Id*. at 721–725.

Likewise, in *Fleet Tire Svc. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619 (8th Cir. 1997), the court confirmed that broad arbitration clauses encompassing claims "relating to" the contract require reference of all disputes, "including collateral disputes that relate to the agreement." *Id*. at 621 (claim based on promises of exclusivity in a letter were collateral, but "related to" an agreement signed five years earlier); *see also PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 403-06 (2003) (reversing lower courts that had denied request to compel arbitration in a RICO case).

This authority compels enforcement of the ISA reference provision here.[4] Section

---

[4] The other decisions on which Marin relies involve claims in which a party did not agree to any reference at all or which had nothing to do with the agreed-upon reference clause. In *In re Edgar M*, 14 Cal. 3d 727 (Cal. 1975), a juvenile criminal case, a referee, acting without the consent of the minor or his counsel, held adjudication and disposition hearings, and the court held this was improper where the judge did not permit de novo review. In *Aetna Life Ins. Co. v. Superior Court*, 182 Cal. App. 3d 431 (1986), the court assigned all summary judgment proceedings to a referee but the parties did not agree to this reference in writing and therefore did not meet the statutory conditions yet the judge treated the referee's decision as binding, and thus the reference was invalid. In *Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (1998), a bank unilaterally changed its account agreements to include an ADR provision. The court held that the customers did not agree to this, and the standard contract language (to which they had agreed) allowing the bank to "change or terminate any terms" did not permit the bank to add this completely new term. Contrary to Marin's characterization, *General Environmental Science Corp. v. Horsfall*, 753 F. Supp. 664 (N.D. Ohio 1990), bears no resemblance to the instant case. There, the parties had a variety of business dealings and a number of contracts, only one of which (the X-O contract) included the clause at issue, which provided: "This Agreement shall be governed by the laws of Switzerland and the place of court is Rolle Switzerland in case of claims from [GES]." The court simply held that the claims asserted — including theft and use of trade secrets, breach of <u>other</u> agreements, and unspecified RICO violations — did not arise out of that contract but rather arose "out of the Plaintiff's ongoing business relationships with the

(Footnote Continued on Next Page.)

17.14(a) of the ISA, by which the parties agreed to waive rights to a jury and submit any dispute to a referee, provides:

> THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO A TRIAL BY JURY, IN ANY ACTION, PROCEEDING OR COUNTERCLAIM INVOLVING DISPUTES OF FACT OR LAW RELATING TO THIS ENGAGEMENT (EACH A "FORMAL DISPUTE"). FURTHER, THE PARTIES HEREBY AGREE TO SUBMIT ANY AND ALL FORMAL DISPUTES TO A TRIAL BY GENERAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE ("CCCP") SECTION 638(A).

Holtz Decl. Exh. A at 38 (all capitals in original). The provision broadly defines a "Formal Dispute" as "any action, proceeding, or counterclaim involving disputes of fact or law relating to this engagement." The parties agreed to submit "any and all" Formal Disputes to a trial by a referee pursuant to Section 638. The factual allegations of the complaint discussed above confirm that the claims against Deloitte Consulting are within the ISA's reference clause because they involve disputes of fact or law relating to this engagement (and, indeed, relate to the interpretation of the contract).

Under *Bagdasarian*, *Shearson/American Express*, *Simula*, *Fleet Tire* and *Manetti-Farrow*, Marin's claims against Deloitte Consulting clearly come within the ISA reference provision. This motion should be granted.

**B.  The Enforcement of the General Reference Provision Would Not be Unreasonable, and Marin's Tactical Choice to Commence a Second Duplicative Lawsuit Cannot Avoid Application of the Reference Provision**

Forum-selection clauses are considered prima facie valid and may be set aside *only* when the party challenging the enforcement can show that it is "unreasonable" under the circumstances. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citing

---

(Footnote Continued from Previous Page.)

Defendants." *Id*. at 668. "The complaint does not raise any claims based upon the alleged breach of the X-O Contract." *Id*. at 667. Here. By contrast, the only business relationship between Marin and Deloitte Consulting is the ISA, and the claims asserted relate to the ISA. In *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir. 1986), the court held that the "causes of action do not all arise directly or indirectly from the agreement."

1  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).  The party challenging the forum
2  selection clause bears a "heavy burden of proof" and must "clearly show" that enforcement
3  would be unreasonable.  *Bremen*, 407 U.S. at 15, 17; *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083
4  (9th Cir. 2009).  A forum selection clause is unreasonable if: (1) "its incorporation into the
5  contract was the result of fraud, undue influence, or overweening bargaining power," (2) "the
6  selected forum is so gravely difficult and inconvenient that the complaining party will for all
7  practical purposes be deprived of its day in court," or (3) "enforcement of the clause would
8  contravene a strong public policy of the forum in which the suit is brought."  *Argueta*, 87 F.3d at
9  325 (internal quotations and citations omitted).
10      Conceding that it cannot meet either of the first two criteria for unreasonableness, Marin
11  argues that enforcement of the ISA reference provision "would contravene a strong public
12  policy" of California because of the risk of inconsistent verdicts and the burden of paying for
13  duplicative litigation, and because it would violate the California Constitution because Marin
14  never really consented to the provision.  Neither of these arguments has any merit.

### 1. The Consequences of Marin's Choice to Bring a Second Lawsuit Does Not Make Unreasonable Reference of the Claims Against Deloitte Consulting to the Referee Selected by Marin to Whom the Parties Contractually Agreed to Submit All Disputes

18      The policy considerations relied upon by Marin in fact go the other way.  In general, the
19  Supreme Court has "established a strong policy in favor of enforcement of forum selection
20  clauses."  *Bagdasarian Prods.*, 2010 WL 5154136, at *4 (*citing E. & J. Gallo Winery v. Andina
21  Licores, S.A.*, 446 F.3d 984, 992 (9th Cir 2006)).  That is why Marin fails to identify a "strong"
22  California public policy that would be contravened by enforcing the ISA's reference provision as
23  to the claims against Deloitte Consulting and instead resorts to vague concerns of "judicial
24  economy" and "avoiding inconsistent verdicts."
25      To be clear, Referee Herlihy will adjudicate in the State Court Action the fundamental
26  dispute underlying both the State Court Action and this lawsuit — whether Deloitte Consulting
27  installed Marin's software correctly.  That is the ultimate issue in the breach of contract claim,
28  and it is also the foundation for causation and damages for <u>all</u> of the other claims in the State

Court Action and for <u>all</u> of the claims in this lawsuit. If Deloitte Consulting installed Marin's software correctly, then all of the claims in both the State Court Action and this lawsuit necessarily will be determined in favor of Deloitte Consulting. Therefore, as long as Marin's second lawsuit remains pending, the prospect necessarily will remain of some duplication of litigation effort and the chance of verdicts that could be inconsistent in some respects. But that is the outcome Marin chose when it elected to file a second duplicative lawsuit, and it is true whether or not the claims against Deloitte Consulting in this lawsuit are referred (as they should be) to Referee Herlihy.

An example is illustrative. Marin's fraud in the inducement claim against Deloitte Consulting in the State Court Action is based on the same factual allegations as its RICO claim in this lawsuit. Thus, whether or not this Court refers the claims against Deloitte Consulting to Referee Herlihy, there will be simultaneous litigation of those duplicative claims, seeking identical damages, in two different forums. That was Marin's choice. While it is true that simultaneous litigation of those claims could result in some duplication of effort, coordination of discovery would effectively eliminate most of that and a stay of one claim while the other is resolved would eliminate all duplication. In theory, a verdict by this Court on the RICO claim could be inconsistent with a ruling by Referee Herlihy on the fraud in the inducement claim. And, if the RICO claim against Deloitte Consulting is referred to Referee Herlihy (as it should be), his consistent rulings on it and the related fraud in the inducement claim could in theory be inconsistent with a ruling by this Court on the RICO claim against the remaining defendants. But that can avoided be entirely by, for example, a stay of one claim until there is a ruling on the other.

Indeed, contrary to Marin's protestations, granting this motion will <u>reduce</u> the risk of inconsistent verdicts and <u>increase</u> judicial efficiency. As noted above, whether or not this motion is granted, two parallel lawsuits will proceed because Marin chose to file two lawsuits. Referral of the claims here against Deloitte Consulting to Referee Herlihy will mean that one trier of fact will adjudicate all of the claims against Deloitte Consulting in a consistent and efficient manner. The claims against the other defendants will remain before this Court. Discovery can be

1 effectively coordinated by this Court and Referee Herlihy, as can staging of determinations of
2 claims or the staying of claims so that the cases are resolved most efficiently. Collateral estoppel
3 will apply to Marin.

4 In short, if there is a prospect for judicial diseconomy and a risk of inconsistent verdicts,
5 it was created by Marin, which cannot now hide behind the risk it knowingly assumed in its
6 effort to evade the reference provision to which it agreed. Moreover, any such case management
7 issues can be rectified by coordination of the parties, this Court and the Referee.

8 Marin also cites *Tarrant Bell Property, LLC v. Superior Court (Abaya)*, No. S179378,
9 2011 WL 446984 (Cal. Feb. 10, 2011), the California Supreme Court decision issued after
10 Deloitte Consulting filed this motion. That decision, holding that a court may in the exercise of
11 discretion decline to enforce a valid Section 638 reference provision, provides no support for
12 Marin's argument against enforcing the ISA's provision.

13 In *Tarrant Bell*, 120 current and former lessees and residents of a mobile home park sued
14 the park's owners for failing to maintain the park's common areas and for otherwise subjecting
15 residents to substandard living conditions. *Id.* at *1. About 100 of the plaintiffs had lease
16 agreements providing for arbitration or, if the arbitration provisions were held unenforceable, for
17 hearing and decision by a referee under Section 638. *Id.* The court held that the trial court had
18 discretion not to enforce a valid reference agreement in these circumstances because (1) ordering
19 the reference only as to those plaintiffs who had signed a pre-dispute reference agreement raised
20 the possibility of inconsistent judgments, and (2) ordering two groups of plaintiffs to try their
21 cases in separate but parallel proceedings would result in a duplication of effort, increased costs
22 and delays. *Id.* at *3.

23 By declining to refer some plaintiffs to a referee, the result in *Tarrant Bell* will be a
24 single lawsuit involving multiple plaintiffs. Here, by contrast, there is just one plaintiff, and
25 unlike many of the plaintiffs in *Tarrant Bell*, the sole plaintiff here agreed to and is bound by the
26 reference provision. But in light of Marin's decision to file duplicative cases, there cannot be
27 just one lawsuit like there will be in *Tarrant Bell*. While Marin argues that it should not have to
28 litigate in two forums, its choice to file a second lawsuit makes that unavoidable. Thus, this

case is the flipside of *Tarrant Bell*.  Here, unlike *Tarrant Bell*, <u>enforcing</u>—not disregarding—the reference provision is the only way to ensure there are no inconsistent judgments as between Marin and Deloitte Consulting because all of these related factual allegations will then be before a single judge (Referee Herlihy).  And unlike *Tarrant Bell,* there is no risk here of forcing a party to abide by a reference provision to which it never agreed, because Marin did agree to the reference provision in the ISA.  In addition, referring the claims against Deloitte Consulting to the referee will reduce costs for this Court because all claims against Deloitte Consulting will then be before Referee Herlihy rather than split between the referee and this Court.  Marin chose to bring two separate lawsuits, and the way to avoid duplicative discovery and to reduce costs is to refer the second action to the stipulated referee adjudicating the first.

It is not unreasonable to enforce the ISA reference provision, and Deloitte Consulting's motion should be granted.

**2. Marin Consented to Irrevocably Waive All Rights to a Trial by Jury and to Submit to a Referee Any and All Disputes of Fact or Law, and No Constitutional Issue Is Presented By Enforcement of the Reference Provision**

Marin's argument that it did not "consent" to having the claims in this lawsuit heard by a referee is similarly meritless.  Nor does Marin's effort to clothe its argument in the California Constitution pass muster.[5]

First, Marin argues that the "engagement" to which the reference clause refers does not include "the wrongful conduct that underlies the County's claims against Deloitte here."  (Opp. at 12:8-20)  That is refuted by the broad language — in all capital letters — of Section 17.14: "THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO A TRIAL BY JURY, IN ANY ACTION, PROCEEDING OR COUNTERCLAIM INVOLVING DISPUTES OF FACT OR LAW

---

[5] The California Supreme Court has expressly held that pre-dispute jury trial waivers with a reference provision under Section 638 are enforceable and infringe upon no constitutional jury trial right.  *Grafton Partners L.P. v. Superior Court*, 36 Cal. 4th 944, 959-60 (2005); *Woodside Homes v. Superior Court*, 142 Cal. App. 4th 99, 104 (2006).

1  RELATING TO THIS ENGAGEMENT.  FURTHER, THE PARTIES HEREBY AGREE TO
2  SUBMIT ANY AND ALL FORMAL DISPUTES TO A TRIAL BY GENERAL REFERENCE
3  PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE ('CCCP') SECTION
4  638(A)."  That broad language admits no exceptions.  As discussed above, all of the claims in
5  this lawsuit clearly "involve disputes of fact or law relating to" Deloitte Consulting's
6  engagement by Marin.  The strong public policy favoring the enforcement of reference clauses
7  like this one would be severely eroded if a party were later permitted to claim that certain causes
8  of action were unforeseen and/or not covered by the provision.

9        Moreover, Marin previously stipulated that all of the claims in the State Court Action,
10 and all of the fact allegations in each cause of action, come within the ISA's reference provision
11 and are to be adjudicated by Referee Herlihy.  That concession resolves the "consent" issue,
12 because all of the factual allegations against Deloitte Consulting in this action also appear in the
13 complaint now pending before Judge Herlihy.  For the Court's convenience, a comparison of the
14 allegations against Deloitte Consulting in this action, with cross-references to the most recent
15 operative complaint in the State Court Action, is attached as Exhibit A to the accompanying
16 supplemental Holtz declaration.  Thus, Marin has already "consented" to the resolution of these
17 allegations by Referee Herlihy pursuant to the reference provision.  That concession must apply
18 equally to the claims Marin asserts in this lawsuit since the allegations of the State Court Action
19 and this lawsuit largely are identical.  The fraud in the inducement claim in the State Court
20 Action replicates the RICO claim; the fraud in the performance claim in the State Court Action
21 replicates the conspiracy and aiding and abetting claims here, and both actions seek the same $30
22 million in damages, plus punitive damages, from Deloitte Consulting.

23       Nor is there any support for the contention that RICO claims, by their nature, fall outside
24 the scope of reference clauses in general or this clause in particular.  A RICO claim is among
25 those types of claims expressly held to come within a broad clause like paragraph 17.14.
26 *Shearson/American Express*, 482 U.S. at 239-42 (enforcing an arbitration clause in a RICO
27 action, holding that arbitration is capable of addressing the complexity of RICO claims and
28 adequately protects the incentives of private plaintiffs to pursue RICO claims); *PacifiCare*

12

1 *Health Systems*, 538 U.S. at 403-06; *Clinton*, 583 F. Supp. at 287-88.

2 Second, Marin argues that Section 17.14 should be construed to apply to claims filed in state court, but not to claims in federal court. This argument is nonsensical from the outset, because these claims <u>were</u> filed by Marin in state court. Thus, Marin concedes, apparently unintentionally, that they are subject to the reference clause. The fact that the case was subsequently and legitimately removed to federal court cannot possibly transform claims that Marin admits are subject to the reference clause into claims that are not. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (removal of a case to federal court does not constitute an implicit waiver of the right to compel arbitration); *Saint Agnes Med. Ctr. v. PacificCare of Calif.*, 31 Cal. 4th 1187, 1205 (2003) (a party does not waive its arbitration rights merely by seeking to change judicial venue).

Moreover, the reference clause makes no such distinction, and such an interpretation makes no sense. On what does Marin rely? Only that Section 17.14(b) twice mentions the undefined term "Superior Court" when paraphrasing the procedures for reference under Cal. Code of Civ. Proc. §§ 640, 641 and 643. But Section 17.14(b) also says "the Court shall make the appointment," thereby negating any special meaning for "Superior Court." And all that comes only after Section 17.14(a) specifies the parties' agreement to submit <u>any</u> dispute in *<u>any</u> <u>action or proceeding</u>* to a referee under Cal. Code Civ. Proc. § 638, which makes no distinction between claims filed in state or federal court. Indeed, as Marin recognizes, federal courts routinely enforce motions to refer under Section 638. *William S. Gray & Co. v. Western Borax Co.*, 99 F.2d 239, 240-41 (9th Cir. 1938); *Day Mgmt. Corp. v. Mobex Commc'ns., Inc.*, 2004 WL 906366, at *4 (D. Or. Apr. 28, 2004); *Bagdasarian Prods.*, 2010 WL 5154136, at *5. Certainly, if the parties had intended this peculiar distinction between claims in state and federal court, they would have stated it directly.[6]

---

[6] Marin claims its proposed dichotomy "makes sense" because contract claims would be expected to be brought in state court while "more remote claims" and claims the parties "could not know, at the time of contracting" would be expected to be brought in federal court. (Opp. 14:19-25) How can that make any sense? There is no "remote and unknown claim" federal

(Footnote Continued on Next Page.)

Finally, Marin argues that its state/federal dichotomy is further supported by the ISA's forum selection language in Section 17.5, in which the parties agreed that "<u>all actions</u> or proceedings arising out of, <u>or related to</u>, this Agreement shall be in either a state court located in the County of Marin, California <u>or a federal court located in the Northern District of California</u>." But that provision supports just the opposite, because it indicates that the parties contemplated that federal actions would be within the scope of the reference provision.

It would be nonsensical and absurd to interpret the reference and forum selection clauses of the ISA—in which the parties agreed to federal court jurisdiction for <u>all</u> actions and agreed that <u>any</u> dispute be submitted to a referee—to apply only to actions pending in state court. Clauses such as paragraph 17.14 are to be broadly interpreted, and the absurd interpretation Marin proposes, in which a party could alter the effect of paragraph 17.14 after the fact simply by filing in or removing to federal court, is to be avoided. *Simula*, 175 F.3d at 721 ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly"); *Continental Illinois Nat. Bank & Trust Co. v. Washington*, 696 F.2d 692, 698 (9th Cir. 1983) (rejecting proposed interpretation of a contract as an absurdity that would give one party the power "to deny or change the effect of the promise").

Marin well knows that it consented, both at the time it signed the ISA in 2005 and again in 2010 in filing the claims now pending before Referee Herlihy, to have any dispute about facts or law relating to Deloitte Consulting's work referred to a referee for adjudication. Its tortured arguments to evade its contract obligations fail. Deloitte Consulting's motion must be granted.

## III. CONCLUSION

For the reasons set forth above and in the motion, Deloitte Consulting respectfully requests that the Court enforce the general reference provision of ISA Section 17.14, grant this

---

(Footnote Continued from Previous Page.)

jurisdiction. Therefore, only matters of exclusive federal jurisdiction could be contemplated under this tortured reasoning, and no such claims are contained in Marin's lawsuit (which was filed in state court). And of course, there is no "remote and unknown claim" exception to a reference provision that by its terms includes all claims relating to an engagement.

Motion to Reassign to Referee, and refer the claims against Deloitte Consulting in this action to Judge Herlihy at JAMS for all purposes including trial.

DATED: March 11, 2011

                                        BINGHAM McCUTCHEN LLP


                        By:          /s/ *Robert A. Lewis*
                                     Robert A. Lewis
                             Attorneys for Deloitte Consulting LLP