# EXHIBIT B

| Amended Complaint In This Action | Complaint Pending Before Referee Herlihy (Second Amended Complaint) | Relevant Contract Provisions |
|---|---|---|
| 1.  Defendants entered into an illegal and continuing scheme to defraud "in connection with the licensing and implementation of an enterprise resource planning ("ERP") software known as SAP for Public Sector."  (¶1) | Deloitte committed "fraud and other misconduct" in inducing the County to enter into a contract to implement an ERP software system specifically designed for public sector entities, developed and licensed by SAP AG and SAP America, Inc. (SAP for Public Sector).  (SAC ¶1, 2)<br><br>Deloitte engaged in a fraudulent scheme in its two years of work on the Project.  (SAC ¶7) | Implementation Services Agreement ("ISA") Section 1.1:  "The County desires to implement a comprehensive, integrated, enterprise resource planning ("ERP") system."<br><br>ISA Section 2.1:  "The Services shall consist of the planning, validation, development, implementation, configuration, customization, customization, and tuning of a comprehensive, fully-integrated ERP administrative information system." [Deloitte] shall at all times . . . implement or incorporate . . . best business practices for governmental entities that are generally consistent with those of nationally recognized SAP software implementers." |
| 2.  Deloitte falsely represented to the County that it had the requisite skills and experience in SAP for Public Sector.  (¶3, 5, 8, 25, 48) | Deloitte "repeatedly represented" to the County that the Deloitte Consultants had the requisite skills and experience to successfully implement SAP for Public Sector.  Those representations were false.  (SAC ¶4, 5) | ISA Section 1.2:  Deloitte represents to the County that it "possesses skills and experience . . . in implementing . . . products made available by SAP Public Services, Inc." and that it is "experienced in providing these types of services to governmental entities of a similar nature and size as the County," and that "all of [Deloitte's] technical personnel who will be engaged in any material performance under this Agreement have the appropriate prior experience in implementing" SAP software and "at least one of [Deloitte's] personnel who will be engaged in performance hereunder has achieved SAP's public sector academy certification." |

| | | |
|---|---|---|
| 3.   Deloitte and the SAP Defendants falsely represented that Deloitte, by virtue of its "alliance" with SAP, was uniquely qualified to properly implement SAP for Public Sector software. (¶8) | Deloitte touted its "purportedly close relationship" with SAP America and SAP AG to induce the County into believing Deloitte had a "unique partnership" with the SAP Companies.  These representations were false.  (SAC ¶50)<br><br>Deloitte falsely touted its purportedly close relationship with the SAP Companies and falsely assured the County that it would be able to secure skilled SAP consultants.  (SAC ¶88) | ISA Section 1.2:   Deloitte represents that it is "presently designated by SAP as one of its Global Services Partners and that it is experienced in working with SAP in such implementations." |
| 4.   Deloitte and the SAP Defendants engaged in "deliberate under-testing of the SAP system by Deloitte" to conceal system defects.  (¶10) | Deloitte "deliberately 'under-tested' the system to conceal defects and keep the go-live schedule intact."   (SAC  ¶93) (See generally SAC ¶90-106) | ISA Section 13 ("Acceptance Testing"):  "[Deloitte] shall utilize reasonable acceptance testing procedures, and appropriate acceptance criteria, and no such activities shall be deemed completed until all applicable acceptance criteria . . . have been successfully met in all material respects."<br><br>ISA Section 13.4 ("Testing Procedures and Criteria"):  "[T]he testing for each Software Component shall include . . . reasonable and appropriate testing in each of the following regards:  (a) unit testing . . . (b) system testing . . . and (c) volume/stress testing . . . " |
| 5.   The scheme included "attempts by Deloitte and the SAP Defendants to silence an employee who raised issues with Deloitte's deficient implementation work."  (¶10)<br><br>SAP consultant Metz criticized Deloitte's design of the "funds management module" and the "Fixed Assets Module" and | Deloitte "affirmatively misrepresent[ed] and conceal[ed] material facts," including the failure to properly design and implement the funds management system and an incorrect configuration of the Fixed Assets module (as alleged in SAC ¶111 and ¶115) while falsely assuring the County to go forward with the Release I and | ISA Section 4.1:  Project Status Reports:  "At least once each week throughout the Term, [Deloitte] shall assist . . . in delivering to the County's Project Director a written report summarizing the status and progress of the Project . . . including problems that have occurred and could delay the Project . . .[and] any failures . . . with regard to the Project, the Services, the Deliverables, or the System." |

| | | |
|---|---|---|
| advised a delay of the Project, but Deloitte "intentionally misrepresented" the extent of the problems identified by Metz, "intentionally withheld" Metz's admonitions from the County and falsely assured the County to proceed on the scheduled go-live date. (¶86-97) | Release II go-live dates. (SAC ¶126, 130)<br><br>Deloitte corruptly influenced Culver to sign off on deficient or incomplete work that, in some cases, "other County employees had rejected." (SAC ¶61) | |
| 6. The wrongful scheme involved "efforts by Deloitte and the SAP Defendants to corruptly influence defendant Culver, a County official . . . to cover up Deloitte's deficient implementation work . . . ." Deloitte "unlawfully influenced Culver to approve Deloitte's deficient work" . . . "with promises of employment at Deloitte and lavish dinners." The SAP Defendants "engag[ed] him in employment discussions" at the same time SAP "was asking him to pay Project invoices and . . . Deloitte was asking him to approve its deficient Project work." "[N]ot long after Culver approved Deloitte's defective work . . . SAP Public Services, Inc. hired Culver for a lucrative sales position . . ." (¶10-11) | Deloitte "engaged in a corrupt relationship with the County's project manager, Ernest Culver, . . .by unlawfully influencing Culver to approve Deloitte's deficient work, thereby ensuring payment of Deloitte's fees." (SAC ¶10)<br><br>As part of this scheme, Deloitte . . . influenced Culver through an offer of employment at Deloitte . . ." (SAC ¶11)<br><br>"To unlawfully induce and improperly influence Culver to sign off on Deloitte's deficient and/or incomplete work, Deloitte . . . 'wined and dined' Culver and repeatedly represented . . . that Deloitte wanted to hire him for a lucrative position. The employment offers and expensive dinners . . . were intended to . . . corruptly entic[e] Culver into approving Deloitte's deficient work product, so that Deloitte would be able to collect fees to which it was not entitled." (SAC ¶134)<br><br>"On or about July 6, 2007, Culver left the County and went to work for SAP America, Inc." (SAC ¶141, 133-142) | ISA Section 4.5: Conflicts of Interest<br><br>"[Deloitte] shall not, at any time during the Term, employ or otherwise engage any employee of the County's for any purpose in any way related to [Deloitte's] performance of its obligations hereunder. [Deloitte] shall at all times exercise reasonable care and diligence to prevent any actions, circumstances, or conditions that could result in a conflict between [Deloitte] . . . and the best interests of the County. **Such efforts by [Deloitte] include establishing reasonable precautions to prevent its employees, agents, and subcontractors from making, receiving, providing, or offering to any employees of the County any gifts, entertainment, payments, loans or other considerations that could** appear to or be deemed to, or create the impression of an attempt to, **influence individuals to act in a manner contrary to the best interests of the County."** |

| | | |
|---|---|---|
| 7. The fraudulent scheme that Deloitte and the SAP Defendants perpetrated on the County is "consistent with a pattern and practice of similar misconduct that they have perpetrated on other public entities, including those in Los Angeles, San Antonio, Colorado and Miami-Dade in connection with the implementation of SAP for Public Sector software."  (¶14) | "Unbeknownst to the County at the time it retained Deloitte, . . . Deloitte was . . . engaging in a pattern and practice of misconduct in connection with its SAP public sector implementation practice.  In California, Deloitte was the systems integrator on the problem-plagued project for the Los Angeles Unified School District. . . . Similar implementation problems were experienced by the City of San Antonio . . .  More recently, there have been additional media reports concerning implementation problems at the Miami-Dade School District . . . " (SAC ¶143-144) | ISA Section 1.2:  Deloitte represents that it is "presently designated by SAP as one of its Global Services Partners and that it is experienced in working with SAP in such implementations." |
| 8. Alleged RICO "predicate acts":<br><br>a) Deloitte's 6/7/04 and 11/6/04 responses to the County's Request for Proposal in connection with the Project (¶220(a));<br><br>b) communications regarding design changes to the County's SAP system and criticisms of the implementation (¶220(b));<br><br>c) meal invitations to Culver and communications with Culver regarding employment and sign-offs of Project deliverables (¶220(b))<br><br>d) "bribery" allegations (meal invitations to Culver and communications with Culver regarding employment and sign-offs of Project deliverables) (¶220(c)) | a) Deloitte made false representations in its 6/7/04 and 11/6/04 responses to the County's Request for Proposal in connection with the Project. (SAC ¶33, 36-38)<br><br>b) Deloitte "affirmatively misrepresent[ed] and conceal[ed] material facts" (including the failure to properly design and implement the funds management system and an incorrect configuration of the Fixed Assets module as alleged in SAC ¶111 and ¶115). (SAC ¶126, 130)<br><br>c), d) Deloitte communicated offers of employment and expensive dinners to Culver to "unlawfully induce and improperly influence Culver to | a) ISA Section 1.2:  Vendor's Experience "[Deloitte] has represented to the County and hereby reaffirms . . . that [Deloitte] is a timely, competent, qualified, experienced provider of the types of related services that are required by the County . . ."<br><br>b) ISA Section 4.1:  Project Status Reports:   "At least once each week throughout the Term, [Deloitte] shall assist . . . in delivering to the County's Project Director a written report summarizing the status and progress of the Project . . . including problems that have occurred and could delay the Project . . ."<br><br>c), d) ISA Section 4.5:  Conflicts of Interest:  "[Deloitte] shall not, at any time during the Term, employ or otherwise engage any employee of the County's for any purpose in any way related to [Deloitte's] performance of its |

| | | |
|---|---|---|
| | sign off on Deloitte's deficient and/or incomplete work . . ." (SAC ¶133-142) | obligations hereunder.  [Deloitte] shall at all times exercise reasonable care and diligence to prevent any actions, circumstances, or conditions that could result in a conflict between [Deloitte] . . . and the best interests of the County.  Such efforts by [Deloitte] shall include establishing reasonable precautions to prevent its employees, agents, and subcontractors from making, receiving, providing, or offering to any employees of the County any gifts, entertainment, payments, loans or other considerations that could appear to or be deemed to, or create the impression of an attempt to, influence individuals to act in a manner contrary to the best interests of the County." |
| 9.   Deloitte "aided and abetted" Culver in committing fraud and breaching his fiduciary duty by bribing and unlawfully inducing Culver to conceal Deloitte's deficient work and assisting Culver in taking actions that were against the best interests of the County. (¶238-240; 252-259) | Deloitte "engaged in a corrupt relationship with the County's project manager, Ernest Culver, . . . by unlawfully influencing Culver to approve Deloitte's deficient work, thereby ensuring payment of Deloitte's fees." (SAC ¶10) | ISA Section 4.5:  Conflicts of Interest

 "[Deloitte] shall not, at any time during the Term, employ or otherwise engage any employee of the County's for any purpose in any way related to [Deloitte's] performance of its obligations hereunder. [Deloitte] shall at all times exercise reasonable care and diligence to prevent any actions, circumstances, or conditions that could result in a conflict between [Deloitte] . . . and the best interests of the County.  Such efforts by [Deloitte] shall include establishing reasonable precautions to prevent its employees, agents, and subcontractors from making, receiving, providing, or offering to any employees of the County any gifts, entertainment, payments, loans or other considerations that could appear to or be deemed to, or create the impression of an attempt to, influence  individuals to act in a manner contrary to the best interests of the County." |
| 10.  The County has incurred "more than $30 million in damages (including paying | The County has suffered more than $30 million in damages as a result of Deloitte's misconduct, | ISA Section 12:   "Limitation of Liability"

ISA Section 12.1:  Maximum Liability of |

| | | |
|---|---|---|
| Deloitte more than $11 million in consulting fees . . . )  Accordingly, the County seeks to recover the damages that defendants inflicted on the County . . . as well as punitive damages for defendants' egregious conduct." (¶13) | [including] $11,384.994 in fees to Deloitte . . . "   (SAC ¶124)<br><br>"In addition . . . the County is entitled to recover punitive damages in an amount to be determined by the trier of fact." (SAC ¶188) | <u>Vendor</u>.  "Except as otherwise expressly provided in this Section 12, [Deloitte's] and its affiliates', and their respective personnel's and subcontractors', maximum, cumulative, and aggregate monetary liability for all claims of any kind of the County arising out of or relating to this Agreement or a Statement of Work at any time or times, including claims regarding [Deloitte's] performance or nonperformance of the Services or of any other work or obligations set forth in this Agreement, whether based on contract, warranty, tort (including negligence), strict liability, statute, or otherwise, shall in no event exceed . . . an amount equal to the amount of fees that have been paid by the County under the applicable Statement of Work."<br><br><u>ISA Section 12.3:   Exclusion of Indirect Damages</u>:   Except for claims of the types described in Section 12.4 (which includes claims for losses arising out of willful misconduct, or reckless, wanton or bad faith conduct), "in no event shall either Party  . . . be liable to the other Party for any special, incidental, exemplary, consequential, punitive, or other indirect damages, indirect losses or indirect expenses.  The limitation on the types of recoverable damages set forth in this Section 12.3 shall apply irrespective of whether the possibility of any such damages was known or had been disclosed to a Party in advance, or could have reasonably been foreseen by such Party, and notwithstanding the form in which any claim or action is brought." |