BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
ROBERT A. LEWIS (SBN 83630)
GEOFFREY T. HOLTZ (SBN 191370)
Three Embarcadero Center
San Francisco, CA 94111
Telephone: 415.393.2000
Facsimile: 415.393.2286
robert.lewis@bingham.com

DELOITTE LLP
KAREN KENNARD (SBN 141925)
555 Mission Street, Suite 1400
San Francisco, CA 94105-2230
Telephone: 415.783.4000

Attorneys for
DELOITTE CONSULTING LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF MARIN,<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP, SAP AMERICA, INC., SAP PUBLIC SERVICES, INC. and ERNEST W. CULVER,<br><br>Defendants. | No. 3:11-CV-381-SI<br><br>**DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE**<br><br>Date: July 15, 2011<br>Time: 9:00 a.m.<br>Place: 450 Golden Gate Ave. (Courtroom 10, 15 Floor)<br>Judge: Hon. Susan Illston |

No. 3:11-CV-381-SI

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY
PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT: A *COLORADO RIVER* STAY SHOULD ISSUE BECAUSE EVERY RELEVANT FACTOR FAVORS ABSTENTION...............................................2

    A. Marin Has Engaged in Blatant Forum Shopping That A *Colorado River* Stay Will Rectify..................................................................................................2

    B. Piecemeal Litigation — The Most Important *Colorado River* Factor — Will Occur Unless There Is A Stay ..............................................................................6

    C. The First-Filed State Action Will Resolve All Or Substantially All Of The Core Legal Issues .................................................................................................9

    D. The State Court Action Was Filed Seven Months Earlier and Substantive Progress Has Already Been Made In It............................................................... 13

    E. The Source Of Governing Law Weighs In Favor Of Granting A Stay................ 14

    F. The State Court Action Initiated By Marin Will Adequately Protect Its Rights ................................................................................................................ 14

III. CONCLUSION ................................................................................................................... 15

i     No. 3:11-CV-381-SI

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Tank Transp., Inc. v. First People's Cmty. Fed. Credit Union,*
   No. CIV. A. HAR 94-459, 1995 WL 45676 (D. Md. Jan. 11, 1995) *aff'd*, 86 F.3d
   1148 (4th Cir. 1996) ..................................................................................................... 6

*American Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.,*
   843 F.2d 1253 (9th Cir. 1988) .......................................................................... 2, 10, 13

*Amnex, Inc. v. Rowland,*
   25 F. Supp. 2d 238 (S.D.N.Y. 1998) ............................................................................ 6

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,*
   762 F.2d 205 (2d Cir. 1985) ......................................................................................... 6

*Ash v. Alexander,*
   No. 99 CIV. 3820 (JSR), 2000 WL 20704 (S.D.N.Y. Jan. 12, 2000) ..................... 6, 7

*Attwood v. Mendocino Coast Dist. Hosp.,*
   886 F.2d 241 (9th Cir. 1989) ................................................................................... 5, 9

*Boe v. Christian World Adoption, Inc.,*
   No. CIV S-10-0181 KJM-CMK, 2011 WL 158530, at *6 (E.D. Cal. Apr. 22, 2011) ........... 5

*Cerit v. Cerit,*
   188 F. Supp. 2d 1239 (D. Haw. 2002) ........................................................................ 5

*Colorado River Water Conservation District v. United States,*
   424 U.S. 800 (1976) ..................................................................................................... 8

*Coopers & Lybrand v. Sun-Diamond Growers of CA,*
   912 F.2d 1135 (9th Cir. 1990) ..................................................................................... 9

*Daugherty v. Oppenheimer & Co., Inc.,*
   No. C 06-7725 PJH, 2007 WL 1994187 (N.D. Ca. Jul. 5, 2007) ............................. 10

*Del Conte v. San Francisco Police Dept.,*
   No. C 06 06-05030 JSW, 2007 WL 1119187 (N.D. Cal. Apr. 16, 2007) .................. 9

*Doukas v. County of San Mateo,*
   No. 08-02336 SI, 2008 WL 4857489 (N.D. Cal. Nov. 10, 2008) ........................ 6, 10

*Gintz v. Jack In The Box, Inc.,*
   No. C-06-02857 CW, 2006 WL 3422222 (N.D. Cal. Nov. 28, 2006) ....................... 9

ii     No. 3:11-CV-381-SI

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY
PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

# TABLE OF AUTHORITIES
(continued)

Page

*Holder v. Holder,*
   305 F.3d 854 (9th Cir. 2002) .................................................................................................. 4

*In re Countrywide Fin. Corp. Deriv. Litig.,*
   542 F. Supp. 2d 1160 (C.D. Cal. 2008) ............................................................................. 7, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) .............................................................................................................. 2, 10

*Motor Club of Am. v. Weatherford,*
   841 F. Supp. 610 (D.N.J. 1994) .............................................................................................. 3

*Nakash v. Marciano,*
   882 F.2d 1411 (9th Cir. 1989) ............................................................................... 2, 4, 5, 9, 14

*Romine v. Compuserve,*
   160 F.3d 337 (6th Cir. 1998) .................................................................................................. 7

*Ross v. U.S. Bank Nat'l Ass'n,*
   542 F. Supp. 2d 1014 (N.D. Cal. 2008) ................................................................................. 5

*Silvaco Data Sys., Inc. v. Tech. Modeling Assoc., Inc.,*
   896 F. Supp. 973 (N.D. Cal. 1995) ...................................................................................... 10

*Thiam v. Fillmore Props., L.L.C.,*
   No. C 05-01874 JSW, 2005 WL 3357134 (N.D. Cal. Dec. 9, 2005) ..................................... 9

*Travelers Indem. Co. v. Madonna,*
   914 F.2d 1364 (9th Cir. 1990) ............................................................................................ 5, 6

*Waterbury v. Safeway Inc.,*
   No. C 06-02072 JL, 2006 WL 3147687 (N.D. Cal. Oct. 31, 2006) ..................................... 10

**STATUTES**

Cal. Government Code
   § 1090 ................................................................................................................................... 12

iii     No. 3:11-CV-381-SI

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY
PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

## I. INTRODUCTION

The County of Marin ("Marin") "does not contest" that the two lawsuits it filed are "substantially similar" parallel actions, a proposition so obvious that Marin buries its admission in a footnote. (Marin Opposition ("Opp.") 7, fn. 1) Indeed, there is no dispute that Marin's two lawsuits are virtually identical and involve: (1) the same subject matter and transaction — Marin's engagement of Deloitte Consulting to help implement a new computer system; (2) the same contracts — the ISA and Statement of Work; (3) the same factual allegations — the same purported misconduct on the project by the same individuals and entities, including the SAP defendants and Ernest Culver, and (4) the same causation and damages — damages in excess of $30 million that Marin claims were caused by Deloitte Consulting's allegedly subpar work.

With the prerequisite for *Colorado River* doctrine abstention — two proceedings that are "substantially similar" — conceded, this Court is to weigh the factors that have been identified to determine *Colorado River* abstention. All of the relevant *Colorado River* factors favor a stay.

In filing this second lawsuit, Marin engaged in blatant forum shopping to evade an adverse ruling in the State Court Action and to avoid Judge Herlihy. Although Marin now dissembles to try to convince this Court otherwise, it revealed its true motivation in its opposition to Deloitte Consulting's alternative motion for reassignment. There, Marin admits that it "does not want" to try this action before Judge Herlihy, because it would prefer to bring these claims "before a public jury in a public forum." (Opposition to Reassignment Motion at 2 fn. 2; 7) That alone is sufficient to justify a stay. In addition, because Marin's forum shopping has created two parallel lawsuits relating to the exact same subject matter, piecemeal litigation is guaranteed, with the high risk of inconsistent and contradictory determinations if two different triers of fact separately adjudicate the same complicated technology issues. This factor, too, is by itself sufficient to justify a stay. The other factors also favor a stay. The rulings Judge Herlihy will make in the State Court Action will resolve, or substantially resolve, the subsidiary issues in this lawsuit. Substantive progress has already been made in litigating the State Court Action. Seven of the nine claims here are California state law claims. Marin cannot seriously argue that the State Court Action it filed first and that is being adjudicated by the referee Marin

1    No. 3:11-CV-381-SI

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

1  itself nominated will not adequately protect its rights.

2      This is not a close case. The circumstances here are precisely why *Colorado River*

3  abstention exists. A stay should issue in favor of the first-filed State Court Action.

## II. ARGUMENT: A *COLORADO RIVER* STAY SHOULD ISSUE BECAUSE EVERY RELEVANT FACTOR FAVORS ABSTENTION

    The parties agree as to the factors this Court is to consider in determining whether to apply the *Colorado River* doctrine to issue a stay here.[1] (Opp. 7:21-8:12, 8 n.3) "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *American Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). "The weight to be given to any one factor may vary greatly from case to case . . . ." *Moses H. Cone*, 460 U.S. at 16.

    Deloitte Consulting has established that every relevant *Colorado River* factor weighs in favor of *Colorado River* abstention. Marin's opposition arguments are meritless, as we discuss.

### A. Marin Has Engaged in Blatant Forum Shopping That A *Colorado River* Stay Will Rectify

    The procedural history of Marin's two lawsuits demonstrates that Marin has engaged in blatant forum shopping. Marin is willing to dissemble to try to deny this, but the facts speak (loudly) for themselves.

    Deloitte Consulting set out the indisputable facts establishing that Marin's second lawsuit was an obvious act of forum shopping: (1) on May 28, 2010, Marin filed its first lawsuit containing tort claims it hoped would allow it to evade the strict limitation of liability provisions in its contract with Deloitte Consulting (the ISA), *including allegations that Deloitte Consulting*

---

[1] Two of the factors are not relevant. Marin concedes the factor of jurisdiction over property is inapplicable since there is no *res* over which any court has jurisdiction. (Opp. 7-8, n.2) While Marin argues the factor of inconvenience of the federal forum militates against a stay because the two forums are equally convenient (Opp. 15-16), the Ninth Circuit ruled that this factor is "irrelevant" where, as here, "the forums are equally convenient." *Nakash v. Marciano*, 882 F.2d 1411, 1415 n.6 (9th Cir. 1989).

*had attempted to improperly influence Marin employee Ernest Culver and had engaged in a pattern of misconduct involving other public entities across the country*; (2) on October 11, 2010 Judge Herlihy, the judicial referee that Marin nominated and to whom the parties stipulated under the requirements of the ISA, dismissed Marin's tort claims; (3) on November 1, 2010 Marin filed an amended complaint in the State Court Action; (4) on December 16, 2010 Marin filed this second lawsuit alleging facts no different from those in the first lawsuit, but alleging different tort claims that mimic the claims Judge Herlihy dismissed; (5) on January 3, 2011 Marin filed a second amended complaint in the State Court Action, and (6) Marin now contends that the claims against Deloitte Consulting in this lawsuit should not go to Judge Herlihy. That constitutes clear forum shopping by Marin.[2]

What is Marin's response to those facts? Two false assertions (and a lot of strained rhetoric). Marin claims that its actions in filing the second separate lawsuit "were dictated entirely by newly discovered evidence and the jurisdictional restriction of the judicial reference," and not by forum shopping. (Opp. 2:5-7) Marin's claims are fabrications.

First, Marin says that it "brought this action in a separate forum because it could not bring it in the same forum as its prior action." (Opp. 22:7-8) That's false. Nothing prevented Marin from amending its first lawsuit to add all nine claims that comprise its second lawsuit and to add the SAP Defendants and Mr. Culver as defendants. Marin could have done that when it filed its amended complaint in November 2010 or its second amended complaint ("SAC") in January 2011. Marin dissembles when it argues "the County could not have brought this RICO action before Judge Herlihy" because it and the SAP Defendants would not have agreed and could not be compelled to trial before Judge Herlihy. (Opp. 1:17-25; 5:23-28) That's not the issue. The issue is whether there is any justification for filing a separate, second lawsuit, and there is none. Had Marin amended its first lawsuit to add nine claims and new defendants, the

---

[2] To distract from its forum shopping, Marin points out that the served defendants removed this action to federal court. However, it is well-established that a party can seek abstention notwithstanding its removal of the case to federal court. *See, e.g., Motor Club of Am. v. Weatherford*, 841 F. Supp. 610, 627 (D.N.J. 1994).

Marin Superior Court (the original forum) would have referred the claims against Deloitte Consulting to the referee, Judge Herlihy, under the terms of the ISA and retained for its own adjudication the claims against SAP and Culver.[3] But Marin did not want its tort claims against Deloitte Consulting to go to Judge Herlihy, who could be expected to be as skeptical of them as the tort claims he had already dismissed. Marin admits as much in its other reply brief – it filed a second lawsuit to get "before a public jury in a public forum." That is blatant forum shopping – filing a new lawsuit to evade an adverse ruling in the first lawsuit and to avoid the judicial officer who made the adverse ruling.

Second, Marin's assertion that its decision to file a separate second lawsuit was "dictated ... by newly discovered evidence" is also false, and nonsensical. Even if Marin actually obtained "newly discovered evidence," it was aware of it before December 16, 2010 when it filed its second lawsuit allegedly as a result of the "newly discovered evidence." Therefore, nothing prevented Marin from using its "newly discovered evidence" in an amendment to its first lawsuit (either in its amended complaint on November 1, 2010 or its second amended complaint on January 3, 2011). No "newly discovered evidence" justified a second, separate lawsuit.

But the assertion of "newly discovered evidence" is a fabrication, in any event. Marin fails to offer any declaration supporting its claim of "newly discovered evidence," and its second lawsuit contains no "new" fact allegations that do not appear in Marin's first complaint filed seven months earlier in the State Court Action.[4] To the contrary, Marin plainly knew the facts

---

[3] Marin's citation to *Holder v. Holder*, 305 F.3d 854, 871 (9th Cir. 2002), is inapposite because it has not asserted any claim over which the federal courts have exclusive jurisdiction. *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (California courts have concurrent jurisdiction over RICO claims).

[4] Marin vaguely suggests that its discovery of "new evidence" was recent, claiming that "[t]hrough its continued investigation, the County discovered new facts that made clear that the County was not the only victim.... Rather, the County learned that it was one of several public entities that were victims...." (Opp. 5:6-9) That's another fabrication. In its original State Court Action complaint filed in May 2010, Marin alleged (at ¶¶ 116-117) that Deloitte Consulting was engaging in "a pattern and practice of misconduct" involving governmental entities in Los Angeles, San Antonio and Miami, the same allegations as in its Amended Complaint here (¶¶ 183-210). Moreover, the evidence cited in the complaint before this Court is far from "new," but is based on media reports and public documents issued in 2007-2008 (Los Angeles Unified School District; *see* Am. Compl. ¶ 192); 2003-2005 (San Antonio, *see id.* at ¶¶

(Footnote Continued on Next Page.)

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY
PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

(and suppositions) supporting this second lawsuit before it filed the first complaint in May, 2010. Marin knew from the time of its RFP that SAP approved Deloitte Consulting as a partner for system installations. (SAC ¶ 50) Marin knew that Mr. Culver, the person who approved the allegedly defective work, was hired by SAP on July 6, 2007 after SAP obtained Marin's written consent to interview him, and Marin since July 2007 has possessed the "Culver diary" that it references as support for its claims of improper efforts to influence Mr. Culver, which first appeared in the May 2010 State Court Action complaint. (*See* SAC ¶ 10, 11, 141; [Docket 50-1] (Declaration of Jennifer Fisher, Exh. A))

Marin's brand of forum shopping — seeking to avoid an adverse ruling and the judicial officer who made the ruling — "weighs strongly in favor of abstention." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (stay granted where plaintiffs sought a new forum after "becom[ing] dissatisfied with the state court"). "[F]orum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court . . . ." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990) (The "prevention of forum shopping would promote wise judicial administration . . . ."). *See also Cerit v. Cerit*, 188 F. Supp. 2d 1239, 1251 (D. Haw. 2002) (stay issued in circumstance of "classic" forum shopping where plaintiff brought second lawsuit because of "unhapp[iness] with the proceedings in state court"); *Boe v. Christian World Adoption, Inc.*, No. CIV S-10-0181 KJM-CMK, 2011 WL 158530, at *6 (E.D. Cal. Apr. 22, 2011) (stay issued in later-filed action because it "sounds of forum shopping, born of an apparent desire to avoid arbitration and the South Carolina forum").[5]

This Court has taken a strong stance against forum shopping. In *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1022 (N.D. Cal. 2008), this Court announced that it would "not encourage forum shopping by allowing a substantially similar federal action to proceed." And in

---

(Footnote Continued from Previous Page.)
198-201), and 2008-2009 (Miami-Dade, *see id.* at ¶¶ 208-210).
[5] The Ninth Circuit also recognizes that "*Colorado River* helps combat forum-shopping by providing a mechanism for avoiding duplicative litigation." *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 245 (9th Cir. 1989).

*Doukas v. County of San Mateo*, No. 08-02336 SI, 2008 WL 4857489 (N.D. Cal. Nov. 10, 2008), this Court discouraged forum shopping in a claim much like this one. There the plaintiff first brought tort claims against San Mateo County in the Superior Court and then brought related claims, plus a federal Section 1983 claim, in this Court. *Id.* at *1. This Court abstained because it was evident the plaintiff "decided that federal court would be a more desirable forum to litigate her claims," noting that "Plaintiff's change of heart is not a valid justification for the considerable waste of judicial resources in allowing two parallel matters involving the same parties and arising from the same facts." *Id.* at *2.

Marin's change of heart, once the referee ruled against it, to find a more desirable forum for its claims against Deloitte Consulting is not a valid justification for a second wasteful lawsuit. Marin's blatant forum shopping (and its dissembling to cover it up) should not be rewarded. This Court should stay this action.

**B.     Piecemeal Litigation — The Most Important *Colorado River* Factor — Will Occur Unless There Is A Stay**

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers*, 914 F.2d at 1369. Avoidance of piecemeal litigation is "the most critical factor" in determining abstention and "particularly important where the issues in the parallel proceedings are the same or substantially similar" or "where similarity among parties is such that it risks inconsistent and mutually contradictory determinations that could cause friction between state and federal courts." *Ash v. Alexander*, No. 99 CIV. 3820 (JSR), 2000 WL 20704, at *3 (S.D.N.Y. Jan. 12, 2000); *Amnex, Inc. v. Rowland*, 25 F. Supp. 2d 238, 245 (S.D.N.Y. 1998) (piecemeal litigation is "the most important factor"); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210-11 (2d Cir. 1985) ("danger of piecemeal litigation is the paramount consideration"); *Am. Tank Transp., Inc. v. First People's Cmty. Fed. Credit Union*, No. CIV. A. HAR 94-459, 1995 WL 45676, at *7 (D. Md. Jan. 11, 1995) *aff'd*, 86 F.3d 1148 (4th Cir. 1996) ("desirability to

avoid piecemeal litigation favor[ed] dismissal [because] at issue in both suits [was] the same scheme...").[6]

There is no question that permitting this lawsuit to proceed in parallel with the State Court Action before Judge Herlihy guarantees piecemeal litigation because two fact finders would make the same determinations. Judge Herlihy will decide the complex technical issues of whether Deloitte Consulting breached its contract or warranty and, if so, whether that caused harm to Marin and, if so, the amount of damages. Absent a stay, this Court must make exactly the same complex determinations to resolve the causation and damages elements of the First through Seventh Claims.[7] In addition, Judge Herlihy will decide fraud in the inducement, while this Court would make parallel rulings on the same evidence for the RICO claims. And Judge Herlihy will decide whether Deloitte Consulting breached the ISA (which expressly prohibits any attempt to improperly influence County officials in Section 4.5) and whether Deloitte Consulting and/or Mr. Culver engaged in fraud in the context of whether Deloitte Consulting committed "willful misconduct" or "reckless, wanton or bad faith conduct" under Section 12.4 of the ISA, while this Court would make parallel rulings.

The risks of "inconsistent and mutually contradictory determinations" are therefore particularly high in these circumstances. *Romine v. Compuserve*, 160 F.3d 337, 341 (6th Cir. 1998) ("In this case, the outcome of both the consolidated federal class actions and the *Greenfield* state court action depend on the resolution of the exact same issue" and therefore "[t]he threat of piecemeal results is thus especially high.") Moreover, parallel lawsuits would also guarantee a waste of duplicative judicial resources and additional costs for the parties. *See In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008) (several courts "have observed the need to proceed expeditiously in this matter, and multiple courts

---

[6] Marin argues that *Ash* only implied that the "piecemeal litigation" factor was the most important in the circumstances of that case. (Opp. 16, n.13) Even if that were true, the circumstances here and in *Ash* are the same.

[7] Marin appears to believe these complex technical determinations would be left to a jury. (Opp. 1) However, because the jury trial waiver in the ISA applies to any claims against Deloitte Consulting, this Court (or the Referee) would decide these issues as to Deloitte Consulting.

7   No. 3:11-CV-381-SI

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

proceeding apace on these substantially similar claims is a considerable waste of judicial resources in light of the significant complexity of the litigation").

What is Marin's response? First, it proclaims that "there are two suits in two forums out of necessity." (Opp. 17:10-11) That's false, as Marin well knows. As discussed above, nothing prevented Marin from including all nine causes of action and its additional defendants in an amendment to its State Court Action, rather than filing a second lawsuit. These two parallel lawsuits exist only because Marin decided to shop for a more favorable (and public) forum and a different judge. And it's no answer in any event. A stay should issue to avoid piecemeal litigation even if there are two forums by "necessity."

Second, Marin says that a stay would "encourage the creation of duplicate efforts by the litigants" because "joint discovery becomes impossible." (Opp. 18:3-8) That's no answer. The determinative issue is the inevitable piecemeal litigation creating "risks of inconsistent and mutually contradictory determinations," and the prospects for "joint discovery" have no bearing on that. The objective of the *Colorado River* doctrine is to conserve judicial resources and comprehensively dispose of litigation. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). With a stay, only the necessary discovery proceeds, and "joint discovery" (if it would make sense at all) should not be necessary once Judge Herlihy rules.

Finally, Marin presents a convoluted argument that "this action . . . encompasses a broader and more complete picture of the various relationships in controversy in these lawsuits" and therefore determinations here "are more likely to fully encompass claims in the State Court Action, and are more likely to have collateral estoppel effect against all parties in the State Court Action, thus limiting the risk of inconsistent verdicts." (Opp. 18:11-15) Marin's argument makes no sense. The State Court Action, with the foundational claims for breach of contract and breach of warranty, is the broader lawsuit, and this action is comprised of claims that are only subsets of the State Court Action. If Deloitte Consulting did everything properly in helping implement Marin's computer system, then there can be no fraudulent inducement, no RICO conspiracy, and no bribery/influence scheme. To the extent Marin is suggesting this action should proceed to trial before the first-filed State Court Action (in which substantive progress

has been made), no law supports such a result. This factor heavily weighs in favor of a stay.

### C. The First-Filed State Action Will Resolve All Or Substantially All Of The Core Legal Issues

Marin distorts the case law when it suggests that no stay may issue unless it is certain that the State Court Action will resolve every issue and claim in this case. (Opp. 9-15) The rule that Marin proffers would limit *Colorado River* to cases of exact duplication between the state and federal lawsuits or where the state action encompasses absolutely every claim and issue in the federal action. That is not the law. The Ninth Circuit recognizes, as does all *Colorado River* jurisprudence, that a stay may issue even if there is a possibility (or certainty) that additional proceedings will be required in the federal forum. As the court stated in *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243-45 (1989):

> Indeed, the choice of a stay rather than a dismissal will have no practical effect if all issues are in fact resolved by the state court proceeding. Where those issues are not resolved, however, only a stay ensures that the federal court will meet its 'unflagging duty' to exercise its jurisdiction, in case the state proceedings do not reach the expected resolution.

*see also Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990) (accord). Numerous decisions demonstrate that a *Colorado River* stay may issue in such circumstances:

- In *Attwood*, the Ninth Circuit held the district court should have issued a *Colorado River* stay even though the duplicative federal action contained a Section 1983 claim and additional defendants in connection with a wrongful termination suit that were not present in the state court action. 886 F.2d at 243-44.

- In *Nakash*, the Ninth Circuit held that a stay should have issued in a case involving a stock purchase agreement even though there was incomplete parallelism between the parties and claims, including a RICO claim in the federal court action that was not included in the state court action. 888 F.2d at 1412-15.

- In *Del Conte v. San Francisco Police Dept.*, No. C 06 06-05030 JSW, 2007 WL 1119187, at *1-4 (N.D. Cal. Apr. 16, 2007), the district court held a *Colorado River* stay was appropriate even though the federal action contained additional defendants in connection with an unlawful detainer action.

See also *Thiam v. Fillmore Props., L.L.C.*, No. C 05-01874 JSW, 2005 WL 3357134, at *2 (N.D. Cal. Dec. 9, 2005) (federal action had civil rights claims not in state court action); *Gintz v. Jack In The Box, Inc.*, No. C-06-02857 CW, 2006 WL 3422222 at *2, 4 (N.D. Cal. Nov. 28, 2006)

(federal court action had FLSA claims not in state court action); *Waterbury v. Safeway Inc.*, No. C 06-02072 JL, 2006 WL 3147687, at *1 (N.D. Cal. Oct. 31, 2006) (same); *Silvaco Data Sys., Inc. v. Tech. Modeling Assoc., Inc.*, 896 F. Supp. 973, 975-76 (N.D. Cal. 1995) (federal court action had Lanham Act claim not in state court action).

These decisions display courts weighing all of the factors "in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist,'" *American Int'l Underwriters,* 843 F.2d at 1257, and recognizing that the "weight to be given to any one factor may vary greatly from case to case." *Moses H. Cone*, 460 U.S. at 16. *See also Daugherty v. Oppenheimer & Co., Inc.*, No. C 06-7725 PJH, 2007 WL 1994187, at *6 (N.D. Ca. Jul. 5, 2007); *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1170-71.

Indeed, this Court has recognized that a stay may issue even where matters can be expected to remain after the resolution of the other action. In *Doukas v. County of San Mateo*, No. 08-02336 SI, 2008 WL 4857489 at *1-2 (N.D. Cal. Nov. 10, 2008), this Court granted a *Colorado River* stay even though it was a certainty that plaintiff's Fourth Amendment claim would not be decided in the state case, noting that the state court's factual determinations would be "highly relevant" to that issue.

Marin argues that Judge Herlihy's rulings in the State Court Action will not be determinative and that, if Marin prevails, the parties must return to this Court "to fully litigate every claim in the federal action as to Culver and the SAP Defendants." (Opp. 11:17-19) That's not true. Judge Herlihy's rulings will likely resolve all the issues, certainly will resolve Marin's compensatory damages (if any) and, at a minimum, will be "highly relevant" to any issues left for this Court. We explain why that is so, after noting two predicates.

First, the Court must understand that Marin's second lawsuit is truly the tail of the dog. In the State Court Action, Judge Herlihy must adjudicate the breach of contract and breach of warranty causes of action: (1) whether there is anything wrong with Marin's SAP computer system; (2) if there is, whether Deloitte Consulting is responsible; (3) if so, whether that constitutes a breach of contract or warranty; (4) if so, whether it caused any harm to Marin, and (5) if so, the amount of damages. Because the SAP computer system is highly technical and

because the installation work was performed over a period of two years, involving more than a hundred persons and generating well over a million documents, Judge Herlihy's adjudication will be highly technical and time-consuming. Judge Herlihy will also determine whether Deloitte Consulting breached the Conflicts of Interest provision in Section 4.5 of the ISA, which prohibited Deloitte Consulting from offering County personnel (like Mr. Culver) present or prospective financial benefits (as alleged in the Eighth and Ninth Claims in this case). In addition, Judge Herlihy will also make rulings about the alleged fraud involving Mr. Culver in the context of whether Deloitte Consulting committed "willful misconduct" or "reckless, wanton or bad faith conduct" under Section 12.4 of the ISA, the exception to the limitation of liability provision. Finally, Judge Herlihy must adjudicate, on the fraud in the inducement claim, whether Deloitte Consulting made misstatements during the RFP process that caused Marin to choose it.

By contrast, Marin's claims in this lawsuit are limited subsets of what Judge Herlihy will adjudicate. The First and Second Claims for RICO violation and conspiracy allege that the SAP Defendants helped enable Deloitte Consulting to make misstatements in the RFP process. The Third through Seventh Claims, for Mr. Culver's alleged fraud and fiduciary duty breaches and the aiding, abetting and conspiracy regarding them, allege that for a three month period Mr. Culver was improperly influenced to give project approvals to Deloitte Consulting. Similarly, the Eighth and Ninth Claims for return of monies received allege that Mr. Culver had a financial interest in the same time period in some unspecified contract change orders. The adjudication of all of those issues is a minor undertaking in comparison to adjudication of the State Court Action.

Second, the Court should appreciate the utter implausibility of Marin's nine claims, to which the SAP Defendants and Mr. Culver have filed motions to dismiss. Marin alleges (as to the First and Second Claims, for RICO violation and conspiracy) that one of the world's largest and most respected business software developers, SAP, and one of the largest and most respected consulting firms, Deloitte Consulting, engaged in a scheme whereby SAP repeatedly helped Deloitte Consulting lie about its lack of SAP competence so that Deloitte Consulting (rather than an allegedly competent firm) could obtain a contract with a governmental entity, like Marin, and

then helped Deloitte Consulting cover up the inevitable botched installations. Such allegations might make some sense only if the defendants were Fly-by-Night Software Company and No-Name Consulting, whose plan was to take the money and disappear before Marin inevitably realized its expensive system didn't work. They make no sense applied to business entities who rely on their reputations to obtain future business. The remainder of Marin's claims allege that its long-time employee Mr. Culver, the person Marin chose to be its manager for the SAP project, lied and fraudulently approved work in exchange for a couple of nice meals from Deloitte Consulting and a job with SAP (which Marin permitted Mr. Culver to pursue), apparently never considering the obvious fact that Marin would subsequently notice that the computer system he approved doesn't work. Marin's allegations are not plausible claims, but lawyer-fueled stratagems designed to attempt to evade the limitations provisions of the contract between Marin and Deloitte Consulting.

With those predicates in mind, what can Judge Herlihy's adjudications be expected to resolve if this lawsuit is stayed?

If Deloitte Consulting prevails before Judge Herlihy on the breach of contract/breach of warranty claims, that effectively terminates the stayed federal lawsuit. Because causation and damages for each of the First through Seventh Claims require proof that Deloitte Consulting breached its contract and caused damages, no basis would exist for pursuing those claims. In addition, a finding for Deloitte Consulting on the breach of contract claims would mean Deloitte Consulting did not breach the Conflicts of Interest provision in Section 4.5 of the ISA by offering Culver any present or prospective financial benefits, thereby resolving Marin's Eighth and Ninth Claims for return of money under Government Code Section 1090 as well.[8]

If Marin prevails before Judge Herlihy on the breach of contract/breach of warranty claims, that adjudication will establish the compensatory damages for each of the First through

---

[8] Thus, Marin is flatly wrong when it asserts, without any support, that "even if Deloitte were to prevail in the State Court Action, the County nevertheless could prevail on its claim in the federal action under Government Code Section 1090." (Opp. 15:8-10)

12     No. 3:11-CV-381-SI

DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF MOTION FOR STAY
PURSUANT TO *COLORADO RIVER* ABSTENTION DOCTRINE

A/74311110.8

Seventh Claims in this action (Marin's damages resulting from the allegedly botched work). That is much more than just "highly relevant" evidence. In addition, if Judge Herlihy finds that Deloitte Consulting breached ISA Sections 4.5 or 12.4, those rulings would be "highly relevant" to the claims against Mr. Culver and the SAP Defendants.

If Deloitte Consulting prevails before Judge Herlihy on the fraud in the inducement claim, that effectively terminates the RICO claims.[9] There can be no RICO claim involving the SAP Defendants if Marin's predicate for that claim — that Deloitte Consulting committed fraud in the inducement, which fraud SAP facilitated — is disproved.

If Marin prevails before Judge Herlihy on the fraudulent inducement claim, that would be "highly relevant" evidence to the RICO claims, assuming they could survive motions to dismiss.

Therefore, Judge Herlihy's adjudication of the overarching claims in the State Court Action would resolve, or largely resolve, the subsidiary claims of this action. The stay should issue.

### D. The State Court Action Was Filed Seven Months Earlier and Substantive Progress Has Already Been Made In It

The substantive progress that has already been made in the State Court Action filed seven months before this action also weighs in favor of a stay. *See Am. Int'l Underwriters*, 843 F.2d at 1258-59 ("Where 'substantive progress' has occurred in the state court litigation, '[h]aving elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum'").

The State Court Action has fully settled its pleadings with the dismissal of three tort causes of action. Judge Herlihy has held eight case management conferences, and a ninth

---

[9] Therefore, if Deloitte Consulting prevails on any of the claims in the State Court Action, the RICO claims are eliminated, and it makes no difference that the State Court Action will not reach the questions Marin hypothesizes in its opposition. (Opp. 12:6-17) Marin is also wrong when it asserts (Opp. 15:10-15) that Deloitte Consulting could prevail on the contract/warranty claim, but Marin could still prevail on the RICO claims, since the ruling for Deloitte Consulting would eliminate the causation and damages elements for RICO.

conference is scheduled.[10] Deloitte Consulting has propounded, and Marin has responded to, two sets of interrogatories and a comprehensive document request. (Supp. Holtz Decl. ¶ 3) Marin has produced more than one million pages of documents and has committed to producing additional project files (a much larger quantity of documents) in the near future. (Supp. Holtz Decl. ¶ 3) Marin has propounded, and Deloitte Consulting has responded to, a set of interrogatories and a comprehensive document request, and Deloitte Consulting has produced more than 1,155,000 pages of documents. (Supp. Holtz Decl. at ¶4) Depositions are expected to commence soon.

By contrast, this action has just commenced. Motions to dismiss were filed by the SAP Defendants and Mr. Culver to be heard on August 12. Deloitte Consulting has 30 days after an order is entered on its reference motion to file a pleadings challenge. Thus, the pleadings in this case will not be settled until the State Court Action has progressed a great deal more.

Because substantive progress has been made in the State Court Action, Marin should be bound by its original choice of that forum, and a stay should issue.

### E. The Source Of Governing Law Weighs In Favor Of Granting A Stay

All of the claims here are California state law claims, except for the two RICO claims which are a subset of the fraud in the inducement claim in the State Court Action. Because "this factor becomes less significant" where, as here, "the state and federal courts have concurrent jurisdiction over a claim" and "state courts have concurrent jurisdiction over RICO claims," *Nakash*, 882 F.2d at 1416, it weighs in favor of abstention.

### F. The State Court Action Initiated By Marin Will Adequately Protect Its Rights

Instead of conceding this obvious point, Marin takes up the herculean task of arguing that

---

[10] A scheduled June 14 case management conference and hearing on discovery motions could not go forward because of a family illness involving counsel for Deloitte Consulting. Counsel for Marin represented that they could not be available to reset the CMC and hearing until late July, and so those dates have been rescheduled to July 26. (Supplemental Declaration of Geoffrey T. Holtz ("Suppl. Holtz Decl.") at ¶ 2)

the lawsuit it brought in its own Superior Court on May 28, 2010 (and amended twice in November 2010 and January 2011) and that is being adjudicated by the referee Marin itself nominated will not adequately protect its rights. Marin fails utterly.

Marin recycles two earlier arguments: (1) the claims in this action cannot be asserted in the State Court Action because Marin will not agree to have them heard by Judge Herlihy, and (2) there is doubt that this Court will grant preclusive effect to Judge Herlihy's rulings.[11] Even if true, neither argument establishes that Marin's rights cannot be protected by its first lawsuit and Judge Herlihy.

But neither argument is true. As discussed above, Marin could have brought the claims in this lawsuit as an amendment to its first lawsuit, and Marin can choose to have the new claims heard by Judge Herlihy. Marin did not do so because, as it now admits, it hopes to get "before a public jury in a public forum." Also, this Court can be expected to grant the maximum preclusive effect to Judge Herlihy's rulings. Thus, Marin has not shown that its first lawsuit will not protect its rights. This factor weighs strongly in favor of abstention.

## III. CONCLUSION

For all the reasons stated here and in the moving papers, Deloitte Consulting asks the Court to recognize the exceptional circumstances here and grant a stay under the *Colorado River* doctrine.

DATED: June 24, 2011

BINGHAM McCUTCHEN LLP

By: /s/ Robert A. Lewis
Robert A. Lewis
Attorneys for Deloitte Consulting LLP

Pursuant to General Order 45.X.B., the filer hereby attests that concurrence in the filing of the document has been obtained from the signatory.

---

[11] Marin's reliance on *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002) (Opp. 21:3-13) is wholly misplaced since that case involved Hague Convention claims within the exclusive jurisdiction of the federal court. *Holder* is therefore not "instructive," but irrelevant.