BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
ROBERT A. LEWIS (SBN 83630)
GEOFFREY T. HOLTZ (SBN 191370)
Three Embarcadero Center
San Francisco, CA 94111
Telephone: 415.393.2000
Facsimile: 415.393.2286
robert.lewis@bingham.com

DELOITTE LLP
KAREN KENNARD (SBN 141925)
555 Mission Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.783.4000

Attorneys for
DELOITTE CONSULTING LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF MARIN,<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP, SAP AMERICA, INC., SAP PUBLIC SERVICES, INC. and ERNEST W. CULVER,<br><br>Defendants. | No. 3:11-CV-381-SI<br><br>**DEFENDANT DELOITTE CONSULTING LLP'S REPLY IN SUPPORT OF RENEWED MOTION TO REASSIGN ACTION TO REFEREE**<br><br>Date: July 15, 2011<br>Time: 9:00 a.m.<br>Place: 450 Golden Gate Ave. (Courtroom 10, 19th Floor)<br>Judge: Hon. Susan Illston |

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. THE LAW REQUIRES THAT REFERENCE PROVISIONS BE BROADLY ENFORCED ............................................................................................................................ 3

    A. The General Reference Provision Governs All Disputes Relating to the Engagement and Plainly Encompasses the Claims at Issue .................................. 3

        1. Enforceability of Reference Provisions Does Not Require Interpretation of the Contract, Although The Claims Alleged Here Do Require Such Interpretation In Any Event .......................................... 3

        2. The Reference Provision Must Be Applied Broadly to Include All Claims Relating to the Engagement, Including RICO Claims ................... 6

    B. The Enforcement of the General Reference Provision Would Not be Unreasonable ............................................................................................................. 8

        1. Marin's Tactical Choice to Commence a Second Duplicative Lawsuit Cannot Prevent Reference of the Claims Against Deloitte Consulting to the Referee Proposed by Marin ........................................... 9

        2. Marin Consented to A Jury Trial Waiver, And No Constitutional Issue Is Presented By Enforcement of the Reference Provision .............. 12

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Life Ins. Co. v. Superior Court,*
    182 Cal. App. 3d 431 (1986) .................................................................................. 8

*Applied Medical Dist. Corp. v. The Surgical Co. BV,*
    587 F.3d 909 (9th Cir. 2009) .................................................................................. 6

*Argueta v. Banco Mexicano, S.A.,*
    87 F.3d 320 (9th Cir. 1996) .................................................................................. 8, 9

*Badie v. Bank of Am.,*
    67 Cal. App. 4th 779 (1998) .................................................................................. 8

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.,*
    2010 WL 5154136 (C.D. Cal. 2010) .................................................................. 7, 8, 9, 13

*Clinton v. Janger,*
    583 F. Supp. 284 (N.D.Ill. 1984) .......................................................................... 14

*Continental Illinois Nat. Bank & Trust Co. v. Washington,*
    696 F.2d 692 (9th Cir. 1983) ................................................................................ 15

*Doe 1 v. AOL LLC,*
    552 F.3d 1077 (9th Cir. 2009) .............................................................................. 9

*E. & J. Gallo Winery v. Andina Licores, S.A.,*
    446 F.3d 984 (9th Cir 2006) ................................................................................. 9

*Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.,*
    806 F.2d 848 (8th Cir. 1986) ................................................................................ 8

*Fleet Tire Svc. of N. Little Rock v. Oliver Rubber Co.,*
    118 F.3d 619 (8th Cir. 1997) ................................................................................ 7, 8

*General Environmental Science Corp. v. Horsfall,*
    753 F. Supp. 664 (N.D. Ohio 1990) ..................................................................... 7, 8

*Grafton Partners L.P. v. Superior Court,*
    36 Cal. 4th 944 (2005) ......................................................................................... 13

*In re Edgar M,*
    14 Cal. 3d 727 (1975) .......................................................................................... 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
    858 F.2d 509 (9th Cir. 1988) ................................................................................ 4, 6, 7, 8

Reply in Support of Renewed Motion To Reassign Action To Referee

## TABLE OF AUTHORITIES
(continued)

Page(s)

*PacifiCare Health Systems, Inc. v. Book,*
   538 U.S. 401 (2003) .................................................................................................... 7, 14

*Shearson/American Express, Inc. v. McMahon,*
   482 U.S. 220 (1987) ................................................................................................ 7, 8, 14

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999) .......................................................................................... 7, 8

*SY First Family P'ship v. Cheung,*
   70 Cal. App. 4th 1334 (1999) ......................................................................................... 6, 7

*Tarrant Bell Property, LLC v. Superior Court (Abaya),*
   No. S179378, 2011 WL 446984 (Cal. Feb. 10, 2011) ................................................ 11, 12

*The Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1 (1972) ........................................................................................................ 6, 8, 9

*United States v. Crockett,*
   979 F.2d 1204 (7th Cir. 1992) ............................................................................................ 12

*United States v. Davis,*
   707 F.2d 880 (6th Cir. 1983) .............................................................................................. 12

*United States v. Fernandez,*
   388 F.3d 1199 (9th Cir. 2004) ............................................................................................ 12

*United States v. Mason,*
   1994 U.S. App. LEXIS 19198 (9th Cir. June 15, 1994) ..................................................... 12

*Woodside Homes v. Superior Court,*
   142 Cal. App. 4th 99 (2006) .............................................................................................. 13

## I. INTRODUCTION

Plaintiff County of Marin ("Marin") entered into a contract with Deloitte Consulting in 2005 (the "ISA") in which Marin agreed that all proceedings against Deloitte Consulting "involving disputes of fact or law relating to" the engagement of Deloitte Consulting by Marin would be resolved by a retired judicial officer. Marin admits that it would now prefer a jury trial in a more public forum. (Opposition Brief ("Opp.") at 2 fn.2) But Marin's change of heart doesn't change the law, which requires enforcement of the reference provision here.

Marin offers two arguments for not enforcing the reference provision in the ISA. First, Marin argues that its claims in this action are not subject to the terms of the reference provision. But the claims here mirror the claims in the State Court Action to which Marin has already stipulated the reference provision <u>does</u> apply. And Marin simply cannot escape the plain language of the provision, which requires that "<u>any</u> action, proceeding, or counterclaim" against Deloitte Consulting "involving disputes of fact or law <u>relating to this engagement</u>" must be tried by a referee. Marin's claim that Deloitte Consulting and the SAP Defendants engaged in a "racketeering scheme" to misrepresent and then cover up the fact that Deloitte Consulting was allegedly unqualified to perform the engagement "relates to the engagement." Likewise, Marin's claim that Deloitte Consulting tried to improperly influence or "bribe" Ernest Culver to sign off on defective deliverables and change orders during the engagement "relates to the engagement."

Second, Marin contends it would be "unreasonable" to enforce the provision because it would cause litigation burdens on Marin and because Marin never "consented" to waive a jury for its claims in this action. But Marin's litigation burdens, if any, were caused by its own tactical decision to bring two duplicative lawsuits rather than joining all parties and all claims in a single action. Marin cannot seek protection from a burden it imposed upon itself. And Marin's claim that it would be "unconstitutional" to enforce the reference provision because Marin didn't consent to its application in these circumstances is simply untrue. Marin expressly consented to the broad reference provision when it signed the ISA in 2005. And in May 2010, when Marin filed its initial complaint in the State Court Action and stipulated to have those claims referred to Judge Herlihy, Marin consented to have the referee resolve its allegations that: (a) Deloitte

Reply in Support of Renewed Motion To Reassign Action To Referee

Consulting hid its alleged lack of qualifications and falsely "touted its purportedly close relationship" with the SAP Defendants in order to win the Marin engagement (State Court Complaint at ¶¶ 7, 42, 63-66, 77); (b) that these alleged misrepresentations were part of a nationwide "pattern and practice of misconduct" reflected in other "problem-plagued" SAP implementation projects around the country, including Los Angeles, San Antonio, and Miami-Dade (*id.* ¶¶ 11, 116-117); and (c) that Deloitte Consulting breached the provision in the ISA that prohibits attempts to improperly influence County personnel by coercing Ernest Culver into approving and covering up Deloitte Consulting's "substandard" work during the engagement (*id.* ¶¶ 51-52, 114-115). Those are the same claims in this case (under different names). Thus, it is not unreasonable or unconstitutional to enforce the reference provision here.

Marin's opposition also proceeds from a demonstrably false premise: that by bringing its second lawsuit Marin was not forum shopping to avoid further adverse rulings by Judge Herlihy and to gain the "public forum" it now desires. Marin claims it was "compelled" to bring a second lawsuit because of "newly discovered evidence" and because it could "not have filed this RICO action before Judge Herlihy." Opp. at 2, 6-8, 15 & n.10. Both statements are false.

Nothing prevented Marin from amending its State Court Action to add all nine claims asserted in this second lawsuit and to add the SAP Defendants and Mr. Culver as defendants. Marin could have done that when it filed its first amended complaint in the State Court Action on November 2, 2010 or its second amended complaint ("SAC") in January 2011. Had Marin done so, the Marin Superior Court (for whom Judge Herlihy serves as a referee as to claims against Deloitte Consulting) would have referred the claims against Deloitte Consulting to Judge Herlihy under the terms of the ISA and retained for its own adjudication the claims against SAP and Mr. Culver. But Marin did not do that because it was seeking a more favorable forum for its allegations against Deloitte Consulting, given that Judge Herlihy had by then shown he was skeptical of those allegations. That is blatant forum shopping.

As to "newly discovered evidence," Marin's second lawsuit contains no "new" allegations that do not appear in Marin's original May 2010 complaint in the State Court Action. Marin claims it recently discovered facts "reflecting that the County was not the only victim of

Reply in Support of Renewed Motion To Reassign Action To Referee

Deloitte's misconduct" (Opp. 6:16-18), but its original State Court Action complaint accuses Deloitte Consulting of "a pattern and practice of misconduct" involving governmental entities in Los Angeles, San Antonio and Miami. *Compare* May 2010 State Court Complaint at ¶¶ 116-117 *with* Amended Complaint in this action ("AC") at ¶¶ 183-210). Moreover, the evidence of this supposed nationwide "scheme" is far from "new," but is based on media reports and public documents issued in 2007-2008 (Los Angeles Unified School District; *see* AC ¶ 192); 2003-2005 (San Antonio, *see id.* at ¶¶ 198-201), and 2008-2009 (Miami-Dade, *see id.* at ¶¶ 208-210). Even if Marin actually obtained "newly discovered evidence" — and it offers no support for this claim — it was aware of it before December 16, 2010 when it filed this second lawsuit. Thus, nothing prevented it from using its "new evidence" to amend its State Court complaint. No "newly discovered evidence" justified a second, separate lawsuit. This was blatant forum shopping.

In a rare moment of candor, Marin concedes its true motivation in filing this second lawsuit: It believes "it is critical and appropriate to litigate its racketeering and corruption claims ... before a public jury in a public forum." (Opp. 7; 2: fn. 2) In other words, Marin wants to avoid Judge Herlihy and obtain publicity for tactical reasons. That is admitted forum shopping.

In negotiating the ISA, both parties agreed to waive a jury trial and submit any disputes relating to the engagement to an independent referee as the trier of fact. This provision is particularly appropriate when the alternative is to present such a dispute to a jury of Marin citizens in a Marin County courtroom who are asked by their county officials to award money to their own county. Thus, if it does not grant Deloitte Consulting's stay motion, the Court should enforce the reference provision and refer the claims against Deloitte Consulting to Judge Herlihy.

## II. THE LAW REQUIRES THAT REFERENCE PROVISIONS BE BROADLY ENFORCED

### A. The General Reference Provision Governs All Disputes Relating to the Engagement and Plainly Encompasses the Claims at Issue

#### 1. Enforceability of Reference Provisions Does Not Require Interpretation of the Contract, Although The Claims Alleged Here Do Require Such Interpretation In Any Event

Marin argues that the ISA reference provision cannot be enforced because "resolution of the claims asserted against Deloitte in this action does not relate to interpretation of the ISA."

(Opp. 9:22-23) That's wrong, both as a matter of law and fact.

Marin argues that *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988), holds that a claim must require interpretation of the contract to fall within the scope of a forum-selection provision. (Opp. at 9:19-20) As Deloitte Consulting explained in its opening brief, that is not the holding of *Manetti-Farrow*. (Memo. at 12:12-24) *Manetti-Farrow* turned on the narrow language of the forum-selection clause at issue there, which applied only to controversies "regarding interpretation or fulfillment of the present contract." That is why the *Manetti-Farrow* court held that only claims that required interpretation of the contract fell within that clause. The ISA provision here, unlike the clause in *Manetti-Farrow,* is not limited to disputes requiring interpretation of the underlying contract. It is far broader. Section 17.14 of the ISA requires that "any and all" disputes "relating to this engagement" be assigned to a referee. There is no limitation, as in *Manetti-Farrow*, that the dispute must relate to "interpretation of the contract."

But the issue is academic, because even if Marin's view of the law were correct and the *Manetti-Farrow* analysis were applied to the broad reference provision here, the ISA's reference provision must be enforced because the claims alleged in this lawsuit cannot be adjudicated without interpreting the ISA. There is no reasonable dispute about that. The foundation of all of the claims in this lawsuit is that Deloitte Consulting's wrongful acts allowed it to secure and then proceed with the project, which it then allegedly botched and covered up, causing damages. That issue requires interpretation of the ISA and is the lynchpin of all of Marin's claims.

Examples abound in Marin's own allegations. Marin's claim that Deloitte Consulting failed to provide "sufficiently skilled consultants to the Project" (AC ¶ 60) requires the interpretation of the provisions of the ISA that specifically cover the personnel to be assigned (ISA ¶ 3.1 - 3.1.7) and their qualifications (ISA ¶ 1.2). Marin's claim that "Deloitte and the SAP Defendants . . . intentionally concealed problems on and risks to the County's Project…until after the SAP system, defectively designed and implemented by Deloitte, went live" (AC ¶ 31) requires the interpretation of the provisions of the ISA that cover all design and implementation work (ISA ¶ 2.1). The determination of whether there is any "problem" or "defect" in the computer system necessarily requires a determination of the parties' contractual obligations.

Marin's claim that "Deloitte also engaged in 'under-testing' to ensure that system defects did not come to light prior to the go-live" (AC ¶ 31) requires the interpretation of the provisions of the ISA governing testing (ISA ¶¶ 13-13.5). Marin's claim regarding performance problems (AC ¶¶ 105-110), again, requires a determination of Deloitte Consulting's contractual obligations. Marin's claim that those problems were "concealed" requires a determination of the ISA provisions requiring notice of any system deficiencies. (ISA ¶ 2.10, 13-13.5) Marin's claim that Deloitte Consulting improperly influenced Culver and "obtained Culver's 'sign-off' approval for various work that Deloitte had failed to properly perform" (AC ¶ 127) requires interpretation of the provisions of the ISA for reviewing and approving deliverables (ISA ¶ 13-13.5) as well as the provision prohibiting any improper attempts to influence County personnel "to act in a manner contrary to the best interests of the County" (ISA ¶ 4.5).

      Marin's RICO claims are no different. To adjudicate whether there was "[a] conspiracy between Deloitte and the SAP Defendants to violate RICO through misrepresentations as to skills, silencing an SAP employee, and bribing and otherwise corrupting a County employee" (Opp. at 10:10-12), the trier of fact would have to determine, for example, whether the qualifications of Deloitte Consulting personnel met the contract requirements, whether there was "under-testing" as opposed to the testing agreed upon in the ISA, and whether Deloitte Consulting violated the "conflict of interest" provision of the ISA by improperly influencing Mr. Culver. Similarly, to adjudicate the Ninth Claim for "Return of Monies Received in Violation of Gov't Code § 1090 [which] . . . requires proof of Deloitte's [alleged] bribery scheme with Culver as a conflicted County employee who was signing contracts in which he had a financial interest" (Opp. 10-11), the trier of fact would have to determine whether Deloitte Consulting violated the "Conflicts of Interest" provision of the ISA (ISA ¶ 4.5) in seeking to improperly influence Mr. Culver by offering "gifts, entertainment, payments, loans or other considerations."[1] The list goes on. It would be nearly impossible to adjudicate Marin's claims without interpreting the ISA.

---

[1] The Opening Brief at page 3 fn. 1 and page 4:15-20 sets out additional examples, as does the chart at Exhibit B to the Declaration of Geoffrey Holtz filed with the Opening Brief.

Marin's only response to the fact that its allegations require interpretation of the ISA is to summarily assert that its claims here are "plainly different" from those in the State Court Action. (Opp. at 10) That is refuted by comparing the complaints in the two cases, as Deloitte Consulting has done. *See* Exhibit B to Holtz Declaration. And it's not the issue even if the *Manetti-Farrow* analysis were applicable. But Marin asserts (based on a misreading of *Manetti-Farrow*) that the issue is whether the allegations require an interpretation of the ISA, and they do. The provision must be enforced.

### 2. The Reference Provision Must Be Applied Broadly to Include All Claims Relating to the Engagement, Including RICO Claims

It is well-settled that contract provisions for referral are to be broadly applied with all doubts resolved in favor of enforcing the terms of the reference provision. There is nothing unique about Marin's claims here, including its RICO allegations, that changes this result.

Marin's attempt to distinguish the controlling authorities fails. Forum selection clauses, whether for general reference or arbitration, are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is "unreasonable" under the circumstances, as narrowly construed by the Supreme Court in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). This is the standard for determining the enforceability of both reference provisions and arbitration clauses. The fact that federal policy encourages arbitration does not change the analysis of when a forum selection clause may be enforced. Indeed, the Ninth Circuit has expressly recognized the "strong policy favoring robust forum selection clauses," even enjoining a suit in a forum that was inconsistent with such a clause *Applied Medical Dist. Corp. v. The Surgical Co. BV*, 587 F.3d 909, 918-19 (9th Cir. 2009).

Marin relies on *SY First Family P'ship v. Cheung*, 70 Cal. App. 4th 1334, 1341-44 (1999), for the proposition that "arbitration and judicial reference differ in material respects." (Opp. 12:5-6) Marin's citation of *SY First Family* is misleading. The court in that case was not addressing the relative enforceability of reference versus arbitration provisions. Rather, the court was differentiating between the procedures involved in general references and arbitrations because the terms of the agreement before it were unclear as to whether the parties intended to

engage in a reference or contractual arbitration as it used the term "reference" in its title, but also called for "arbitrators." *Id.* at 1342. Thus, the case has nothing to do with the standard of enforceability for general reference provisions versus arbitration clauses. Moreover, the court ruled that whether the agreement called for reference or arbitration, the stipulation was enforceable, and the parties were bound by the forum selection clause. *Id.* at 1343-44.

Marin does not, and cannot, refute the controlling decisions holding that expansive provisions such as Section 17.14 must be applied broadly and encompass RICO claims. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) (finding RICO claim subject to arbitration clause); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) (holding that the "all disputes" clause encompassed claims based on antitrust violations, misappropriation of trade secrets and defamation); *Fleet Tire Svc. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619 (8th Cir. 1997) (holding that the broad arbitration clauses encompassing claims "relating to" the contract require reference of all disputes, "including collateral disputes that relate to the agreement"); *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 403-07 (2003) (reversing denial of request to compel arbitration in a RICO case).

Marin concedes that *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, 2010 WL 5154136 (C.D. Cal. 2010), applies to the facts of this case. There, the court upheld the enforceability of a reference provision although there was a copyright claim, and the Copyright Act provides for exclusive federal court jurisdiction. *Id.* at *5. Marin's effort to distinguish *Bagdasarian* because the clause at issue required the interpretation of the terms the contract fails for the same reason its analysis of *Manetti-Farrow* fails, as noted above. And Marin's claim that the *Bagdasarian* court "did not address the constitutional issue of whether the parties to the agreement consented to the general reference -- an issue of paramount importance to this action" is nonsensical. (Opp. 12 n.8) The sole issue in *Bagdasarian* was whether the parties consented to, and were bound by, the reference as applied to the claims at issue.

Furthermore, contrary to Marin's characterization, *General Environmental Science Corp. v. Horsfall*, 753 F. Supp. 664 (N.D. Ohio 1990), bears no resemblance to this case. There, the parties had a variety of business dealings and a number of contracts, only one of which (the X-O

contract) included the clause at issue, which provided: "This Agreement shall be governed by the laws of Switzerland and the place of court is Rolle Switzerland in case of claims from [GES]." The court held that the claims asserted — including theft and use of trade secrets, breach of <u>other</u> agreements, and unspecified RICO violations — did not arise out of that contract but rather arose "out of the Plaintiff's ongoing business relationships with the Defendants." *Id.* at 668. "The complaint does not raise any claims based upon the alleged breach of the X-O Contract." *Id.* at 667. Likewise, in *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir. 1986), the court held that the "causes of action do not all arise directly <u>or indirectly</u> from the agreement."[2] *Id.* at 852. By contrast, here, the only business relationship between Marin and Deloitte Consulting stems from the ISA, and each of Marin's claims directly relates to the ISA.

Under *Bagdasarian, Shearson/American Express, Simula, Fleet Tire* and *Manetti-Farrow*, Marin's claims against Deloitte Consulting clearly come within the ISA reference provision. This motion should be granted.

### B. The Enforcement of the General Reference Provision Would Not be Unreasonable

Forum-selection clauses are considered prima facie valid and may be set aside *only* when the party challenging enforcement can show that it is "unreasonable" under the circumstances. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citing *Bremen*, 407 U.S.

---

[2] The other decisions on which Marin relies involve claims in which a party did not agree to any reference at all or which had nothing to do with the agreed-upon reference clause. In *In re Edgar M*, 14 Cal. 3d 727 (1975), a juvenile criminal case, a referee, acting without the consent of the minor or his counsel, held adjudication and disposition hearings, and the court held this was improper where the judge did not permit *de novo* review. In *Aetna Life Ins. Co. v. Superior Court*, 182 Cal. App. 3d 431 (1986), the court assigned all summary judgment proceedings to a referee but the parties did not agree to this reference in writing and therefore did not meet the statutory conditions, yet the judge treated the referee's decision as binding, and thus the reference was invalid. In *Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (1998), a bank unilaterally changed its account agreements to include an ADR provision. The court held that the customers did not agree to this, and the standard contract language (to which they had agreed) allowing the bank to "change or terminate any terms" did not permit the bank to add this completely new term.

1). The party challenging the forum selection clause bears a "heavy burden of proof" and must "clearly show" that enforcement would be unreasonable. *Bremen*, 407 U.S. at 15, 17; *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). A forum selection clause is unreasonable if: (1) "its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power," (2) "the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court," or (3) "enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta*, 87 F.3d at 325 (internal quotations and citations omitted).

Conceding that it cannot meet either of the first two criteria for unreasonableness, Marin argues that enforcement of the ISA reference provision "would contravene a strong public policy" of California because of the risk of inconsistent verdicts and the burden of paying for duplicative litigation, and would violate the California Constitution because Marin never really consented to the provision. Neither of these arguments has any merit.

### 1. Marin's Tactical Choice to Commence a Second Duplicative Lawsuit Cannot Prevent Reference of the Claims Against Deloitte Consulting to the Referee Proposed by Marin

The policy considerations relied upon by Marin in fact compel enforcement of the reference provision. In general, the Supreme Court has "established a strong policy in favor of enforcement of forum selection clauses." *Bagdasarian Prods.*, 2010 WL 5154136, at *4 (*citing E. & J. Gallo Winery v. Andina Licores, S.A.*, 446 F.3d 984, 992 (9th Cir 2006)). That is why Marin fails to identify a "strong" California public policy that would be contravened by enforcing the ISA's reference provision as to the claims against Deloitte Consulting and instead resorts to vague concerns of "judicial economy" and "avoiding inconsistent verdicts."

To be clear, Judge Herlihy will adjudicate in the State Court Action the fundamental dispute underlying both the State Court Action and this lawsuit — whether Deloitte Consulting installed Marin's software correctly. That is the ultimate issue in the breach of contract claim, and it is also the foundation for causation and damages for <u>all</u> of the other claims in the State Court Action and for <u>all</u> of the claims in this lawsuit. If Deloitte Consulting installed Marin's software correctly, then all of the claims in both the State Court Action and this lawsuit

Reply in Support of Renewed Motion To Reassign Action To Referee

necessarily will be determined in favor of Deloitte Consulting. While it is true that as long as Marin's second lawsuit remains pending, the prospect necessarily will remain of some duplication of litigation effort and risk of inconsistencies, that has nothing to do with the decision on this motion. That is the outcome Marin chose when it elected to file a second duplicative lawsuit, and it is true whether or not the claims against Deloitte Consulting in this lawsuit are referred (as they should be) to Judge Herlihy.[3]

An example is illustrative. Marin's fraud in the inducement claim against Deloitte Consulting in the State Court Action is based on the same factual allegations as its RICO claim here. Thus, <u>whether or not</u> this Court refers the claims against Deloitte Consulting to Judge Herlihy, there will be simultaneous litigation of those duplicative claims, seeking identical damages, in two different forums, which could result in inconsistent outcomes. That was Marin's choice. While simultaneous litigation of those claims could result in some duplication of effort, coordination of discovery would effectively eliminate most of that, and a stay of one claim while the other is resolved would eliminate all duplication. In theory, a verdict by this Court on the RICO claim could be inconsistent with a ruling by Judge Herlihy on the fraud in the inducement claim. And, if the RICO claim against Deloitte Consulting is referred to Judge Herlihy (as it should be), his consistent rulings on it and the related fraud in the inducement claim could in theory be inconsistent with a ruling by this Court on the RICO claim against the remaining defendants. But that can be avoided entirely by, for example, a stay of one claim until there is a ruling on the other, or by coordination between this Court and Referee Herlihy.

Indeed, contrary to Marin's protestations, granting this motion will <u>reduce</u> the risk of inconsistent verdicts and <u>increase</u> judicial efficiency. As noted above, whether or not this motion is granted, two parallel lawsuits will proceed because Marin chose to file two lawsuits rather than

---

[3] Marin's argument (Opp. at fn 15) that Deloitte Consulting "does not insist on trial by reference" is absurd. By this motion, Deloitte Consulting seeks assignment of the claims against it to the referee under the parties' contract. If this action is stayed pending the outcome of the State Court Action, then the reference Deloitte Consulting now seeks would follow the conclusion of that action, should there be anything left here to adjudicate as against Deloitte Consulting, and the case would simply be dismissed if there were nothing left to adjudicate.

one. Referral of the claims here against Deloitte Consulting to Judge Herlihy will mean that one trier of fact will adjudicate all of the claims against Deloitte Consulting in a consistent and efficient manner. The claims against the other defendants will remain before this Court. Discovery can be effectively coordinated by this Court and Judge Herlihy, as can staging of determinations of claims or the staying of claims so that the cases are resolved most efficiently. Collateral estoppel will apply to Marin. The reference of this matter would advance "the policy of reducing 'court congestion'" which, as pointed out by Marin in its brief, was the explicit intent in the enactment and amendment of Section 638. (Opp. at 14:4-5, *citing* Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3657, (1981-82 Reg. Sess.), April 28, 1982, p. 2).

In short, if there is a prospect for judicial diseconomy and a risk of inconsistent verdicts, it was created by Marin, which cannot now hide behind the risk it knowingly created in its effort to evade the reference provision to which it agreed. Moreover, any such case management issues can be rectified by coordination between the parties, this Court and the Referee.

Marin also cites *Tarrant Bell Property, LLC v. Superior Court (Abaya)*, No. S179378, 2011 WL 446984 (Cal. Feb. 10, 2011), the California Supreme Court decision issued after Deloitte Consulting initially filed this motion (prior to Marin filing its Amended Complaint). That decision, holding that a court may in the exercise of discretion decline to enforce a valid Section 638 reference provision under some circumstances, provides no support for Marin's argument against enforcing the ISA's provision here.

In *Tarrant Bell*, which involved over a hundred separate plaintiffs, only some of whom were bound by reference agreements, the court held that the trial court had discretion not to enforce a reference agreement where two specific circumstances were present: (1) ordering the reference only as to the plaintiffs who had signed a reference agreement raised the possibility of inconsistent judgments, and (2) ordering two groups of plaintiffs to try their cases in separate but parallel proceedings would result in a duplication of effort, increased costs and delays. *Id.* at *3.

Marin notes only the discussion of inconsistent judgments in the *Tarrant Bell* decision. But *Tarrant Bell* was able to exercise its discretion to yield a single lawsuit – an outcome Marin has made impossible here because it chose to file two separate lawsuits. In light of Marin's

Reply in Support of Renewed Motion To Reassign Action To Referee

decision to file duplicative cases, there cannot be just one lawsuit, as in *Tarrant Bell*. Thus, there is a risk of inconsistencies regardless of the outcome of this motion. But that risk is <u>reduced</u> by referring the claims against Deloitte Consulting to the referee. While Marin says it should not have to litigate in two forums, its own choice to file a second lawsuit makes that unavoidable.

Thus, this case is the flipside of *Tarrant Bell*. Here, unlike *Tarrant Bell*, <u>enforcing</u>—not disregarding—the reference provision is the best way to ensure there are no inconsistent judgments as between Marin and Deloitte Consulting because all claims against Deloitte Consulting will be before a single judge (Judge Herlihy). And unlike *Tarrant Bell*, there is no risk here of forcing a party to abide by a reference provision to which it never agreed, because Marin did agree to the reference provision in the ISA. In addition, referring the claims against Deloitte Consulting to the referee will reduce costs for this Court because all claims against Deloitte Consulting will then be before Judge Herlihy rather than split between the referee and this Court. Marin chose to bring two separate lawsuits, and the best way to avoid duplicative discovery and to reduce costs is to refer the claims against Deloitte Consulting in the second action to the stipulated referee adjudicating the first.[4]

It is not unreasonable to enforce the ISA reference provision, and none of the discretionary considerations that persuaded the Court in *Tarrant County* not to enforce the parties' agreement are present here. Deloitte Consulting's motion should be granted.

> 2. **Marin Consented to A Jury Trial Waiver, And No Constitutional Issue Is Presented By Enforcement of the Reference Provision**

Marin's argument that it did not "consent" to having the claims in this lawsuit heard by a

---

[4] In support of its judicial economy argument, Marin cites cases in which joint trials for co-defendants in <u>criminal</u> RICO actions were upheld. (Opp. at 16) (*citing United States v. Fernandez*, 388 F.3d 1199, 1241-46 (9th Cir. 2004); *United States v. Mason*, 1994 U.S. App. LEXIS 19198, at *6-10 (9th Cir. June 15, 1994); *United States v. Crockett*, 979 F.2d 1204, 1217-18 (7th Cir. 1992); *United States v. Davis*, 707 F.2d 880, 882-83 (6th Cir. 1983)). Each of these criminal cases is inapposite. None involved referee provisions in contracts or forum selection clauses governing <u>civil</u> litigation, and the considerations regarding joint trials of criminal defendants have no bearing on those governing the enforcement of bargained-for contract terms.

referee is similarly meritless. Nor does Marin's effort to clothe its argument in the California Constitution pass muster.[5]

First, Marin argues that the "engagement" to which the reference clause refers does not include "the wrongful conduct that underlies the County's claims against Deloitte here." (Opp. at 20:6-8) That is refuted by the broad language — deliberately set apart in all capital letters — of Section 17.14: "THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO A TRIAL BY JURY, IN ANY ACTION, PROCEEDING OR COUNTERCLAIM INVOLVING DISPUTES OF FACT OR LAW RELATING TO THIS ENGAGEMENT. FURTHER, THE PARTIES HEREBY AGREE TO SUBMIT ANY AND ALL FORMAL DISPUTES TO A TRIAL BY GENERAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE ('CCCP') SECTION 638(A)." That broad language admits no exceptions. The *Bagdasarian* court rejected the identical argument. *Bagdasarian*, 2010 WL 5154136 at *3 (rejecting argument that claims of copyright infringement did not arise out of parties' contract). As discussed above, all of the claims in this lawsuit clearly "involve disputes of fact or law relating to" Deloitte Consulting's engagement by Marin. The strong public policy favoring the enforcement of reference clauses like this one would be severely eroded if a party were later permitted to claim that certain causes of action were unforeseen and/or not covered by such an intentionally broad provision.

Moreover, Marin previously <u>stipulated</u> that all of the claims in the State Court Action, and all of the fact allegations in each cause of action, come within the ISA's reference provision and are to be adjudicated by Judge Herlihy. That concession resolves the "consent" issue, because all of the factual allegations against Deloitte Consulting in this action also appear in the complaint pending before Judge Herlihy. For the Court's convenience, a comparison of the allegations against Deloitte Consulting in this case, with cross-references to the operative Second

---

[5] The California Supreme Court has expressly held that pre-dispute jury trial waivers with a reference provision under Section 638 are enforceable and infringe upon no constitutional jury trial right. *Grafton Partners L.P. v. Superior Court*, 36 Cal. 4th 944, 959-60 (2005); *Woodside Homes v. Superior Court*, 142 Cal. App. 4th 99, 104 (2006).

Amended Complaint in the State Court Action, is attached as Exhibit B to the Holtz Declaration accompanying Deloitte Consulting's opening brief. Thus, Marin has already "consented" to the resolution of these allegations by Judge Herlihy pursuant to the reference provision. That concession applies equally to the claims Marin asserts in this lawsuit because the allegations of the State Court Action and this lawsuit largely are identical. The fraud in the inducement claim in the State Court Action replicates the RICO claim; the improper influence allegations in the State Court Action replicate the conspiracy and aiding and abetting claims here; and both actions seek the same $30 million in damages, plus punitive damages, from Deloitte Consulting.

Nor is there any support for Marin's contention that RICO claims, by their nature, fall outside the scope of reference clauses in general or this clause in particular. A RICO claim is among those types of claims expressly held to come within a broad clause like Section 17.14. *Shearson/American Express*, 482 U.S. at 239-42 (enforcing an arbitration clause in a RICO action, holding that arbitration is capable of addressing the complexity of RICO claims and adequately protects the incentives of private plaintiffs to pursue RICO claims); *PacifiCare Health Systems*, 538 U.S. at 403-06; *Clinton v. Janger*, 583 F. Supp. 284, 287-88 (N.D.Ill. 1984).

Marin's constitutional claim relies on the bizarre argument that the ISA contemplated a different forum depending on whether the action "aris[es], or relate[s] to, this *Agreement*," under ISA ¶ 17.5, or whether the action relates to "this *engagement*" under ISA ¶ 17.14. (Opp. at 21) (italics in original). If it arose under the agreement, Marin argues that the ISA dictates that the action should be brought in either Marin Superior Court or the District Court for the Northern District of California; if the action relates to the engagement, Marin claims it should be submitted to trial by general reference under Section 638(a). (Opp. 21:2-8). This is nonsensical.

To begin with, there is no distinction between an action arising under the agreement and an action that relates to the engagement. Any action relating to the ISA will necessarily relate to the engagement, and vice versa. Moreover, even if such a distinction could somehow be made, Marin's claims here certainly could not fit it. As noted above, Marin's claims are inextricably tied to the performance of the engagement. The Court need look no further than the nearly identical allegations in the two lawsuits. Marin makes no effort — nor could it — to show how

1  the facts alleged in the State Court Action arise from the engagement, but the facts alleged in this
2  action arise from the agreement. This distinction Marin fabricates has no basis in reality.
3        Furthermore, Marin cannot seriously argue that it filed this lawsuit in the Superior Court
4  because it was somehow qualitatively different than the first lawsuit it filed (also in the Superior
5  Court) or that filing in the Superior Court somehow insulates it from the general reference
6  provision in Section 17.14. Section 17.5 dictates that "<u>all actions</u> or proceedings arising out of,
7  <u>or related to</u>, this Agreement shall be in either a state court located in the County of Marin,
8  California or a federal court located in the Northern District of California." This does not in any
9  way alter the ISA's provision that any case *relating to the engagement* shall be referred to a
10 referee. No case can be filed directly in front of a general reference referee, which is what
11 Marin's argument seems to contemplate. Reference to a referee under Section 17.14 necessarily
12 follows filing in one of the appropriate forum courts under Section 17.5, as Marin did in both
13 cases here. Marin's suggestion that filing its case in the agreed-upon forum court is somehow
14 different than or prevents the agreed-upon reference to a referee is absurd and therefore is
15 entitled to no weight. *Continental Illinois Nat. Bank & Trust Co. v. Washington*, 696 F.2d 692,
16 698 (9th Cir. 1983) (rejecting proposed interpretation of a contract as an absurdity that would
17 give one party the power "to deny or change the effect of the promise").
18       Marin well knows that it consented, both at the time it signed the ISA in 2005 and again
19 in 2010 in filing the claims now pending before Judge Herlihy, to have any dispute of fact or law
20 relating to Deloitte Consulting's engagement referred to a referee for adjudication. Its tortured
21 arguments to evade its contract obligations fail. Deloitte Consulting's motion must be granted.

## III. CONCLUSION

For the reasons stated, Deloitte Consulting requests that the Court grant this motion and refer the claims against Deloitte Consulting to Judge Herlihy for all purposes including trial.

DATED: June 24, 2011        BINGHAM McCUTCHEN LLP

By: /s/ Robert A. Lewis
Robert A. Lewis
Attorneys for Deloitte Consulting LLP

Pursuant to General Order 45.X.B., the filer hereby attests that concurrence in the filing of the document has been obtained from the signatory.