MATTHEW A. TAYLOR (*pro hac vice*)
PATRICK J. LOFTUS (*pro hac vice*)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: 215.979.1000
Facsimile: 215.979.1020
E-Mail:   mataylor@duanemorris.com
          pjloftus@duanemorris.com

STEPHEN H. SUTRO (SBN 172168)
JENNIFER BRIGGS FISHER (SBN 241321)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2200
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:   shsutro@duanemorris.com
          jbfisher@duanemorris.com

Attorneys for Defendants
SAP AMERICA, INC. and SAP PUBLIC SERVICES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF MARIN,<br><br>     Plaintiffs,<br><br>     vs.<br><br>DELOITTE CONSULTING LLP, SAP AMERICA, INC., SAP PUBLIC SERVICES, INC., and ERNEST W. CULVER,<br><br>     Defendants. | Case No.: 11-CV-00381-SI<br><br>**DEFENDANTS SAP AMERICA, INC. AND SAP PUBLIC SERVICES, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (FRCP RULES 9(B) AND 12(B)(6))**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Date:   September 9, 2011**<br>**Time:   9:00 a.m.**<br>**Dept.:  Courtroom 10, 19th Floor** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 4

    A. The County Does Not Allege that SAP Engaged in Racketeering Activity. ........... 4

        1. The County Fails to Allege that SAP Engaged in Mail Fraud to Induce the County to Implement SAP Software. .................................................... 4

        2. The County Fails to Allege that SAP Engaged in Wire Fraud During the Project. ................................................................................................... 6

            a. The Ramp-Up and Alleged Concealment by SAP. ......................... 6

            b. The "Muzzling" of Hans Christian Metz. ....................................... 8

        3. The County Has Not Alleged that SAP Bribed Culver. ............................. 9

        4. The County Did Not Allege that SAP Traveled in Interstate Commerce or Used a Facility of Interstate Commerce in Furtherance of Bribing Culver. ....................................................................................................... 10

    B. The County Cannot Show a Pattern of Racketeering Activity. ............................. 10

    C. The County Has Not Alleged Injury Proximately Caused by SAP's Conduct. ..... 11

    D. The County's Claim Under § 1962(d) Fails Because the County Did Not Plead a Violation of § 1962(c). ........................................................................................ 12

    E. The Court Should Dismiss the Aiding and Abetting Claims Against SAP. .......... 12

    F. The Court Should Dismiss the Common Law Conspiracy Claim Against SAP ... 13

    G. The Court Should Dismiss the Claims Against SAP Under Section 1090. .......... 14

III. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anderson v. Ayling*
  396 F.3d 265 (3d Cir. 2005) .................................................................................................. 11-12

*Ashcroft v. Iqbal*
  129 S. Ct. 1937 (2009) ................................................................................................................ 5

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................................................................... 5

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*
  911 F.2d 242 (9th Cir. 1990) .................................................................................................. 5, 7

*Henderson v. Gruma Corp.*
  2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) .......................................................... 5

*Holmes v. Secs. Inv. Protection Corp.*
  503 U.S. 258 (1992) .............................................................................................................. 11-12

*Kennedy v. Jackson Nat'l Life Ins. Co.*
  2010 U.S. Dis. LEXIS 111653 (N.D. Cal. Oct. 6, 2010) ........................................................... 8

*Lustinger v. United States*
  386 F.2d 132 (9th Cir. 1967) ...................................................................................................... 5

*Niebel v. Trans World Assurance Co.*
  108 F.3d 1123 (9th Cir. 1997) .................................................................................................. 12

*Oculus Innovative Scis., Inc. v. Nofil Corp.*
  2007 U.S. Dist. LEXIS 68535 (N.D. Cal. Sept. 10, 2007) ....................................................... 11

*Perez-Mejia v. Holder*
  641 F.3d 1143 (9th Cir. 2011) .................................................................................................... 9

*Summit Tech. Inc. v. High-Line Medical Instruments Co.*
  933 F. Supp. 918 (C.D. Cal. 1996) .......................................................................................... 5, 7

*Turner v. Cook*
  362 F.3d 1219 (9th Cir. 2004) .................................................................................................. 11

*United States v. Gay*
  967 F.2d 322 (9th Cir. 1992) ...................................................................................................... 5

**California Cases**

*City of Oakland v. California Const. Co.*
    15 Cal. 2d 573 (1940) ................................................................................................... 14-15

*Gerard v. Ross*
    204 Cal. App. 3d 968 (1988) ............................................................................................ 12

*Howard v. Superior Court*
    2 Cal. App. 4th 745 (1992) ........................................................................................... 12-13


**Federal Statutes**

18 U.S.C. § 1952 ................................................................................................................... 10

18 U.S.C. § 1962 ................................................................................................................... 12


**State Statutes**

Cal. Pen. Code §§ 7(6), 67 ................................................................................................. 3, 10

California Government Code Section 1090 ..................................................................... 14-15

- iii -                                            Case No.: 11-CV-00381-SI
SAP DEFENDANTS' REPLY MEMO ISO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

I.      INTRODUCTION.

SAP counts on partners, like Deloitte, to implement its software correctly. Without a successful implementation, the software – which is marketed and sold to improve business processes, increase user access to data, and reduce redundant activities – is of little benefit. For that reason, quite obviously, SAP wants – and *needs* – qualified implementation partners for each project where a customer invests in its software.

Notwithstanding, the gravamen of the County's theory in this RICO action – as reflected in the Amended Complaint's ["FAC"] legal theories and the argument in the Opposition Memorandum – is that SAP <u>knew</u> that Deloitte lacked "consultants with the requisite skill and experience to successfully implement SAP software for all potential clients," and despite this knowledge, promoted Deloitte's capabilities because it benefitted SAP. Opp. 1. It's a "'win-win' scenario for SAP," the County explains, because if a project fails, then SAP can "conceal and obfuscate problems" and "obtain even more fees by having its own consultants attempt to remedy the problems caused by Deloitte's incompetence." *Id.*

This makes <u>no</u> sense and only reinforces that the County is willing to make <u>any</u> allegation – no matter how silly – in order to justify this ill-conceived suit.[1]

To wit, in its Opposition, the County argues that an alleged "joint" submission by "the Enterprise" in response to the County's RFP demonstrates SAP's culpability in a scheme to defraud through use of mails. Opp. 11. The County claims that the purpose of the fraudulent submission was to induce the County to enter into an implementation contract with Deloitte. Opp. 11, *citing* FAC ¶¶47-48; 55-57, 75, and 220(a); *see also* Opp. 3. County records show, however, that at the same time SAP supposedly was scheming to induce the County to award the implementation

---

[1] The County argues that this case is not a contractual suit "disguised" as a RICO claim. Opp. 10, fn. 5. The briefing regarding Deloitte's pending Motion to Stay indicates otherwise. Deloitte argued in support of a stay that the County's breach of contract action against it and this action "are more than just substantially similar; they are exactly parallel except for the names of the legal theories and the addition of defendants." Dkt. 66, at 10:4-5; *see generally* pp. 9-11. In response, the County conceded that it did "not contest that the actions are parallel for *Colorado River* purposes or that they share some common factual issues, as reflected by the Notice of Related Case it filed." Dkt. 84, p. 5, fn. 1. Indeed, as set forth herein, the County has failed to transform a contract dispute about Deloitte's alleged breach under the Implementation Services Agreement into a RICO case predicated on mail fraud, wire fraud, and bribery.

contract to Deloitte (so that, according to the County, SAP could benefit because the project would fail), SAP likewise supported the selection of <u>three</u> other implementation firms (Siemens, EA Consulting, and Ariston & EPI-USE) to be hired by the County.[2] The County selected Deloitte, not one of these three firms, of course. But these competing proposals submitted with SAP's blessing are totally inconsistent with any supposed scheme by SAP to make the County select Deloitte as its implementation partner – or to somehow "benefit" SAP because SAP wanted the implementation to fail. In truth, and in fact, SAP wanted the project to succeed; it is common sense in any business to have customers who are satisfied with your product. The County has not provided a <u>single</u> allegation from which to draw a reasonable inference that SAP held any desire to the contrary.

The County claims to identify "at least 11 discrete predicate acts of mail fraud, wire fraud and bribery" by SAP. Opp. 2. In addition to supposedly "initiating the Enterprise" through the aforementioned RFP response, SAP is accused of: "perpetuating the Enterprise by (a) concealing the inevitable problems from the County, including "white-washing" reports to the County; (b) censuring employees who threatened to reveal problems to the County; (c) fraudulently inducing the County to become a testing laboratory for SAP's new and untested software; and (d) bribing the County's Project Director, Ernest Culver, to disregard problems with the Project, serve as a reference for SAP and authorize the payment of additional fees to SAP." *Id.* These allegations, however, do not allege mail fraud, wire fraud, or bribery any more than the fictional allegations regarding SAP's desire to see the project fail as a result of Deloitte's selection.

<u>First</u>, it is conceded that SAP <u>disclosed</u> to the County that it had identified problems with Deloitte's design during the blue printing phase. Section II.A.2.a., *infra*. The County claims fraud anyway, not because <u>facts</u> were not disclosed, but because today – six years later – the County does not agree with SAP's conclusions at the time that the project was making reasonable progress. *Id.*

---

[2] Public records maintained on the County's website show that SAP partnered in "joint" submissions with three implementation firms (in addition to Deloitte) that SAP represented to the County were certified to implement its software. Supplemental RJN, Fisher Decl., ¶¶ 3-5, Exs. B, C, D. SAP submitted these competing "joint" proposals because the County's bid guidelines required that SAP participate in <u>every</u> response where an implementor proposed to implement its software. Supplemental RJN, Fisher Decl., ¶ 2, Ex. A, RFP at § 1.7.2. It mattered not to SAP who won, however, as SAP was required to submit the same pricing "regardless of Implementor." Supplemental RJN, Fisher Decl., ¶ 2, Ex. A, RFP at Addendum 3.

<u>Second</u>, the County <u>never</u> has alleged that the supposedly "censured" employee's report contained any omission or "half-truth" regarding the Project. Section II.A.2.b., *infra*.

<u>Third</u>, there is nothing misleading about SAP's alleged statements that the Ramp-Up program was a "special offering" or that the software had "'new' and 'enhanced' functionality" that would make the County a "'first mover in your industry.'" Section II.A.2.a., *infra*.

<u>Fourth</u>, the County admits that SAP obtained written consent from the County to interview Culver. Opp. 7:3-5 (citing Ex. A to the SAP Defendants' Request for Judicial Notice [Docket Entry 50-1] and conceding that "[o]n or about May 22, Culver informed the County's Director of HR ("HR") that he was pursuing employment opportunities with SAP America, Inc."). The County spins this consent as "compelling evidence of SAP's bribery" that was intended to "inoculate" Culver's "improper" prior discussions with SAP. Opp. 17. Of course, nothing in the letter supports this speculation. And even if we accept as true that "discussions" between SAP and Culver occurred before the letter was signed, they are not themselves a bribe because they are not an offer of "something of value or advantage." *See* Cal. Pen. Code §§ 7(6), 67. The letter does not serve as "compelling evidence" of bribery; it is evidence that bribery did not occur. Section II.A.3., *infra*.

<u>Finally</u>, if we assume, *arguendo*, that the County adequately has alleged any of the claimed predicate acts, the County has not alleged a pattern of racketeering activity or a *direct* relationship between the injury claimed here and the racketeering activity. Sections II.B. and II.C., *infra*.

Otherwise, with regard to the non-RICO claims under state law, the County's Opposition does not even attempt to demonstrate that it adequately has alleged the elements required for the causes of action. The County fails to allege any facts that demonstrate SAP knew that Culver somehow was committing fraud or a breach of duty to the County, that SAP substantially assisted in the alleged fraud and duty breaches, or that SAP acted with the specific intent to facilitate the alleged wrongful conduct. Sections II.E., *infra*. The County's Opposition also fails to explain how it is that it has alleged either a claim for civil conspiracy or contracts in which Culver had a financial interest that would cause a violation of the California Government Code. Sections II.F. and II.G., *infra*.

Accordingly, we respectfully request that this implausible suit be dismissed in its entirety.

## II. ARGUMENT.

### A. The County Does Not Allege that SAP Engaged in Racketeering Activity.

#### 1. The County Fails to Allege that SAP Engaged in Mail Fraud to Induce the County to Implement SAP Software.

SAP's moving papers show that the FAC does not allege a scheme to defraud the County through the mail. Mot. at 6-9. The Opposition does not undermine that showing.

The County claims that "SAP helped Deloitte induce the County to implement SAP software by falsely representing that Deloitte had the ability to implement SAP software properly." Opp. 9. But the County does not identify a single actionable misrepresentation by SAP that induced the County to implement the SAP software.

First, the FAC does not allege that SAP employees made oral misrepresentations to the County or were aware of oral misrepresentations by Deloitte employees during the selection process. *See* Mot. 6; FAC ¶¶ 51-54. Instead of conceding this point, the County argues that Deloitte's alleged oral misrepresentations "do[] not absolve SAP for its own misconduct." Opp. 12. The point, however, is that the County fails to identify any misconduct through oral misrepresentations by SAP.

Second, the County argues that the alleged "joint" submission by Deloitte and SAP in response to the RFP – containing allegedly false statements about Deloitte's skill and experience – properly alleges SAP's role in the scheme to defraud through use of the mails. Opp. 11, *citing* FAC ¶¶47-48; 55-57, 75, and 220(a); *see also* Opp. 3. But, as explained previously, County records show that, at the same time of the alleged submission, SAP partnered in "joint" submissions with three other implementation firms that were in direct competition with the Deloitte proposal. Supplemental Request for Judicial Notice, Fisher Decl., ¶¶3-5, Exs. B, C, D. SAP was required by the bid guidelines to participate with any implementor proposing to implement its software, including Deloitte (and the three other competitor implementation firms). *Id.* It mattered not to SAP who won; SAP was required to submit the same pricing "regardless of Implementor." *Id.* So, while the County wants to isolate SAP's "joint" submission with Deloitte – and attempt to demonstrate that SAP schemed with Deloitte to "induce" the County to award the implementation services contract to Deloitte – such an alleged scheme cannot be reconciled with SAP's three other "joint" competing

proposals, for which SAP would receive the same profit irrespective of which implementation firm won. There simply is no reasonable inference that SAP is liable for the misconduct alleged. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

Moreover, even if the alleged statements are attributed to SAP and divorced from what actually occurred, the alleged statements in the written response to the County's RFP are not actionable because they are puffing, not "false statements of fact." *United States v. Gay*, 967 F.2d 322, 329 (9th Cir. 1992). The County claims that this argument is "absurd," Opp. 12, but it does not cite authority supporting its claim that SAP made misrepresentations of <u>fact</u> in the RFP response. The alleged misrepresentations—that Deloitte was "uniquely qualified," "highly skilled and experienced," had "a seasoned team," an "unmatched" understanding of the County, and a "deep bench" (FAC ¶ 56)—are all classic examples of puffing because they involve subjective claims and opinions. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (finding the defendant's claim to be "the low cost commercial collection experts" was puffing because it was "a general assertion of superiority rather than factual misrepresentations"); *Summit Tech. Inc. v. High-Line Medical Instruments Co.*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (holding that an assertion that a product is "perfectly reliable" is puffing). The County points to no "specific and measurable claim" in the RFP response that was false, only puffing on which the County could not reasonably rely and cannot base allegations of mail fraud. *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, at *30 (C.D. Cal. Apr. 11, 2011).[3]

In sum, the County's Amended Complaint does not properly allege mail fraud by SAP.

/ / /

---

[3] The County cites *Lustinger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967) and argues that the Court should be "circumspect in applying the puffing defense" because the "consumer lack[ed] relevant expertise." Opp. 12-13. As the Court can see from reviewing the County's Request for Proposal, however, prior to bid the County performed a "Technology Needs Assessment" and formed "an ERP Executive Steering Committee, co-chaired by the County Administrator and the Auditor-Controller," in addition to already having a full-time "Information and Systems Technology (IST) Department that was responsible for processing, maintaining and ensuring the security of the County's business applications and network infrastructure." Supplemental RJN, Fisher Decl., ¶2, Ex. A, RFP, at §1.3 and 1.4. The County is no ordinary consumer, but was well advised and well informed before and throughout the bid process.

### 2. The County Fails to Allege that SAP Engaged in Wire Fraud During the Project.

The County claims that, after it entered into agreements with SAP and Deloitte, SAP engaged wire fraud by: (i) duping the County to become a "Ramp-Up" customer; (ii) providing false and misleading reports about the Project; and (iii) silencing SAP employee Hans Christian Metz. Opp. 13-16.[4] None of these allegations set forth a scheme to defraud sufficient to establish wire fraud.

#### a. The Ramp-Up and Alleged Concealment by SAP.

The County claims that SAP "sent a series of deliberately misleading emails and reports representing the purported benefits of becoming a Ramp-Up customer, while concealing the extraordinary risks known exclusively to SAP, including the fact that the Project already was experiencing 'severe problems,' and, crucially, the known risk that Deloitte lacked the necessary skills to implement the new Ramp-Up software." Opp. 14. The corresponding allegations of the FAC do not support a claim for wire fraud.

First, *before* the County elected to become a Ramp-Up customer, it is alleged that SAP disclosed to the County that it had identified problems with Deloitte's design during the blue printing phase. FAC ¶¶ 73-74. Although the County claims in its Opposition that SAP provided a "white-washed" (Opp. 2:15) and "false and misleading report" concerning the Project's status (Opp. 9:24-25), the FAC provides otherwise. Specifically, the County alleges that SAP told the County in October 2005 – before it elected to proceed with the Ramp-Up – that "the overall system design and integration was so deficient that 'the County is at risk of an improperly designed system which could lead to substantial rework during the Project or a re-implementation after go live.'" FAC ¶ 73. The County characterizes this evaluation as "sugar-coated" and a "glowing endorsement," *id.*, but it is precisely the type of warning that the County now claims SAP should have given.

---

[4] The County also states – in support of what predicate act we are not sure – that SAP is culpable for fraud because it obtained "references" from the County before the Project commenced. Opp. 9:22-24. Even under the County's implausible theory, however, the County does not allege that it gave SAP a reference because it was deceived by SAP. To the extent that the County argues that SAP obtained two references by bribing Culver, it ignores that SAP asked for these references in September 2005 and December 2006, long before SAP offered a purported "bribe" of employment in April/May 2007. FAC ¶¶ 76, 123, 158, 179.

Indeed, the County claims fraud not because <u>facts</u> were not disclosed, but because today – six years later – the County's lawyers do not agree with SAP's conclusions and recommendations. Specifically, the County alleges fraud with respect to SAP's assessment that "the project [is] making reasonable progress toward the completion of the blueprint design" (Opp. 14, fn. 14), and claims that SAP's report should have included statements: (i) that "significant problems were likely to occur"; (ii) that the project should have been "halted"; (iii) that a "redesign of the blueprint" was needed; (iv) that the project timeline should be "revised"; and (iv) that an overhaul of Deloitte's team was required. FAC ¶ 74. Second-guessing SAP's conclusions and recommendations with the benefit of hindsight, of course, does not show fraud. On the other hand, the County's failure to allege <u>any</u> material facts that were known to SAP and that were not disclosed is fatal to its claim.

<u>Second</u>, the allegations with regard to SAP's presentation to the County on the Ramp-Up do not indicate that SAP spoke "half-truths" or that still other information should have been provided. Statements that the Ramp-Up program was a "special 'offering, available only to selected number of customers'" (FAC ¶ 68), or that the software had "'new' and 'enhanced' functionality" that would make the County a "'first mover in your industry'" (FAC ¶ 70) are puffing, *see Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246. The County does not deny this,[5] but nonetheless claims that the statements somehow give rise to a duty to disclose. The County cites no authority to support its claim that puffing can create a duty to disclose. By its nature, puffing is an unverifiable statement of opinion that cannot be reasonably relied upon. *See Summit Tech. Inc.*, 933 F. Supp. at 931. It necessarily follows that puffing is not a "half-truth" that give rise to a duty to disclose material facts.

The County cites a number of California state cases to argue that SAP has a duty to disclose because it has a contractual relationship with the County. *See* Opp. 13-14 & n.13. However, these cases deal with common law fraud claims under state law, not violations of the federal wire fraud statute. There is no authority in this Circuit stating that one party has a duty to disclose under the wire fraud statute merely because it has a contractual relationship with another party. To the contrary, the County itself cites authority to support SAP's argument that non-disclosure may serve

---

[5] The County states that the FAC "does not allege wire fraud based on SAP's claims about the capabilities of its new software." Opp. 14:17-18.

as a basis for wire fraud only if there is an independent duty to disclose in the form of a fiduciary duty or a statutory duty. *See Kennedy v. Jackson Nat'l Life Ins. Co.*, 2010 U.S. Dis. LEXIS 111653, at *19-20 (N.D. Cal. Oct. 6, 2010).[6]

Third, with regard to SAP's alleged failure to disclose that Deloitte lacked the necessary skills to complete the implementation, the County still has not provided any allegation from which it would be fair to draw a reasonable inference that SAP held such a belief. Indeed, there is no plausible explanation of why SAP would attempt to create "market demand" by recommending that the County implement software destined to fail. Opp. 15. The County argues that, even if problems occurred, SAP could obtain references before the projects went live and conceal defects as they arose. But the County does not, and cannot, allege that SAP could somehow conceal a system-wide failure of core software functions. *See* FAC ¶¶ 105-10. Nor is it plausible that SAP would induce the County to become a Ramp-Up customer knowing that the County would need to replace the software with non-SAP software afterward. FAC ¶ 13. Common sense dictates that the public, system-wide failure to implement the software that the County claims occurred would only undermine market demand. The County's argument to the contrary is not plausible.

### b. The "Muzzling" of Hans Christian Metz.

As further evidence that SAP violated the wire fraud statute, the County argues that SAP allowed one of its employees, Hans Christian Metz, to present some of his findings to the County about Project implementation problems, but "obfuscate[d] Metz's conclusions." Opp. 15-16. Once again, the County's argument is unmoored from the actual allegations of the FAC.

The County alleges that "Metz documented the problems he found with Deloitte's work in an 11-page report (the 'Solution Review'), which he submitted to his superiors at SAP." FAC ¶ 90. The Complaint alleges that "the SAP Defendants made several rounds of edits to the Solution

---

[6] Moreover, it is not clear what the County believes should have been disclosed. The Opposition says that "the wire fraud claims are based on SAP making misleading statements concerning the success of the Project to date and the benefits of Ramp-Up, while simultaneously omitting the considerable known risks." Opp. 14:18-20. As discussed above, to the extent there was any duty to disclose, (i) there were no misleading statements of fact about the status of the project, (ii) the described benefits were "puffery," and (iii) the FAC alleges only that SAP "downplay[ed] many of the attendant Ramp-Up risks" (¶69), not that the risks were not disclosed.

Review" before they released it to the County. FAC ¶ 91. But importantly, the County <u>never</u> has alleged that the Solution Review contained any misrepresentation, omission, or "half-truth" regarding the Project. By arguing this point in its Opposition, without actually pleading facts in support, the County tacitly acknowledges that its allegations, as pled, do not establish wire fraud.

### 3. The County Has Not Alleged that SAP Bribed Culver.

In the Opposition, the County states that it alleged "that the Enterprise improperly influenced Culver . . . by treating Culver to expensive meals and promising Culver employment." Opp. 16. Neither claim is correct.

While the County alleges that Deloitte paid for meals with Culver, it does not allege that <u>SAP</u> paid for or attended a single meal.

Likewise, while SAP purportedly "engaged Culver in discussions concerning future employment" beginning in April 2007, according to the allegations in the FAC, SAP did not promise Culver employment until May 29, 2007, when he notified the County that he was leaving to pursue an employment opportunity with SAP. FAC ¶¶ 158, 179. The timing alleged is critical because the County <u>admits</u> that it provided Culver with a letter on May 22, 2007 <u>acknowledging</u> that Culver intended to pursue employment opportunities with SAP. *See* Opp. 7, fn. 3 (*citing* Ex. A to the SAP Defendants' Request for Judicial Notice [Docket Entry 50-1] and conceding that "[o]n or about May 22, Culver informed the County's Director of HR ("HR") that he was pursuing employment opportunities with SAP America, Inc.").[7] The County not only failed to object to Culver's employment discussions with SAP, it affirmatively stated in the letter that, "should a job offer result . . . , it will not affect the current contractual relationship between SAP America, Inc. and Marin County." RJN, Fisher Decl., Ex. A (Docket Entry 50-1).

The County spins the letter by arguing that it was only intended to "inoculate [Culver's] improper discussions with SAP" that allegedly occurred in the month preceding the letter. Opp. 17.

---

[7] The County's admission of the existence and contents of the letter is binding. *Perez-Mejia v. Holder*, 641 F.3d 1143, 1151 (9th Cir. 2011) ("As we have held, [j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them." [internal quotations and citations omitted]).

Nothing about the letter supports this speculation. According to the FAC, SAP and Culver had engaged in nothing more than "discussions" prior to Culver's receipt of the letter. FAC ¶ 158. Such "discussions," for all we know, could have been SAP informing Culver that he needed to disclose and obtain the County's consent to potential employment. In any event, without more, the "discussions" are not themselves a bribe because they are not an offer of "something of value or advantage." *See* Cal. Pen. Code §§ 7(6), 67.

Simply stated, because SAP offered employment to Culver only after the County had blessed the potential employment, that offer cannot possibly be a bribe.

### 4. The County Did Not Allege that SAP Traveled in Interstate Commerce or Used a Facility of Interstate Commerce in Furtherance of Bribing Culver.

The County alleged in the FAC that SAP "traveled in interstate commerce with the intent to commit or otherwise promote the commission of bribery," in violation of 18 U.S.C. § 1952. FAC ¶ 220(d). Because the County failed to make a single allegation that SAP traveled to bribe Culver, it switched directions entirely in its Opposition. The County now argues that SAP violated § 1952 by using a facility of interstate commerce, such as the internet, telephone, or mail. Opp. 18. Assuming that the County is permitted to change the basis of its claim in a brief, the FAC does not allege SAP's use of a facility of interstate commerce any more than it alleges interstate travel.

The County points to an allegation that, in April 2007, Culver attended "an SAP-related conference in Atlanta, Georgia for which Deloitte was a co-sponsor." FAC ¶ 165. The County does not allege, however, that SAP employees attended the conference or that anyone from SAP discussed employment with Culver at the conference. The County also suggests that a fax from Culver to Hugh Curran of SAP is evidence of a § 1952 violation. Opp. 18 n.17. But this fax is Culver's transmission to SAP of the May 22, 2007 letter from the County confirming that the County did not object to the employment discussions between SAP and Culver. Far from promoting bribery, the fax is evidence that bribery did not occur.

### B. The County Cannot Show a Pattern of Racketeering Activity.

SAP showed in its Motion that the County did not allege a pattern of racketeering activity because any predicate acts did not amount to or pose a threat of continued criminal activity. *See*

*Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). The County alleged (1) "one scheme, perpetrated on one victim," which is insufficient to establish open-ended continuity in the Ninth Circuit, *Oculus Innovative Scis., Inc. v. Nofil Corp.*, 2007 U.S. Dist. LEXIS 68535, at *8-9 (N.D. Cal. Sept. 10, 2007), and (2) predicate acts during an insufficient period of time to establish closed-ended continuity, *Turner*, 362 F.3d at 1231. In its Opposition, the County focuses almost exclusively on showing open-ended continuity. It fails to do so.

The County argues that the misconduct alleged "by its nature projects into the future with a threat of repetition," *Turner*, 362 F.3d at 1229, because the Enterprise was "forward-looking" in that it sought to expand the market for SAP software by defrauding public entities. Opp. 18. Thus, the County's entire theory of open-ended continuity rests on its wholly implausible allegation that SAP and Deloitte attempted to increase market share by intentionally orchestrating unsuccessful implementations of SAP software. Again, this theory simply makes no sense and cannot be a basis to suggest that the Enterprise poses a threat of continuing racketeering activity.

The County also cannot satisfy the continuity requirement through allegations that other government entities experienced implementation problems with SAP software. *See* FAC ¶¶ 185-210. The County admits in its Opposition that it does not allege that the Enterprise actually directed racketeering activity toward other governmental entities. Opp. 20. That these entities experienced implementation problems does not threaten future misconduct prohibited by RICO.

### C. The County Has Not Alleged Injury Proximately Caused by SAP's Conduct.

The County's claims fundamentally reduce to an allegation that the County was harmed as a result of Deloitte's purported failures to implement SAP's software correctly. *See* FAC ¶¶ 105-10, 137-38. While the County attempts through its RICO claims to attribute these failures to SAP's so-called predicate acts, they are directly attributable to the implementation process, not SAP. The County argues that SAP's conduct can be the proximate cause of its injury without being the sole cause. Opp. 21. But "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 271 (1992). The Court cannot overlook that Deloitte's alleged intervening failure to implement the software correctly, not SAP's alleged misconduct, directly caused the County's alleged injury. *See Anderson v. Ayling*, 396

F.3d 265, 270 (3d Cir. 2005) (dismissing for lack of RICO standing based on intervening causes of alleged injury). Because proximate causation under RICO requires a *direct* relationship between the injury and the racketeering activity, the Court should dismiss the RICO claims for lack of causation. *Holmes*, 503 U.S. at 272.

### D. The County's Claim Under § 1962(d) Fails Because the County Did Not Plead a Violation of § 1962(c).

The County accuses SAP of "falsely represent[ing] the law" by arguing that a well-pled violation of § 1962(c) is necessary to plead a conspiracy to violate RICO under § 1962(d). Opp. 21. The County is not only wrong, it actually cites precedent that supports SAP's position. In *Niebel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997), the Court of Appeals reaffirmed the rule that, if a plaintiff's "section 1962(c) claim does not state an action upon which relief could *ever* be granted, regardless of the evidence, then the section 1962(d) claim cannot be entertained." This rule requires the Court to dismiss the County's claim under § 1962(d) because the County failed to plead a violation of § 1962(c).

### E. The Court Should Dismiss the Aiding and Abetting Claims Against SAP.

Apart from its failure to state a RICO claim, the County has failed to show that the FAC alleges facts sufficient to state a claim against SAP for aiding and abetting Culver's alleged fraud and fiduciary breaches. As set forth in the moving papers, the County must allege that SAP knew Culver was committing fraud or a breach of duty, that SAP substantially assisted in the fraud and duty breaches, and that SAP acted with the specific intent to facilitate the wrongful conduct. *See Howard v. Superior Court,* 2 Cal. App. 4th 745, 749 (1992); *Gerard v. Ross,* 204 Cal. App. 3d 968, 983 (1988). The County has alleged none of these elements.

In its Opposition, the County claims that it has plead a claim for aiding and abetting Culver's fraud and fiduciary breaches because SAP promised employment to Culver in April-May 2007 while seeking his assistance in "getting their invoices paid and obligating the County to pay them still more fees." Opp. 22, FAC ¶¶ 158-160 The County's Opposition makes it clear that its entire aiding and abetting theory rests on these allegations. But the County fails to acknowledge that the referenced invoices were issued by Deloitte (FAC ¶ 159), and the additional fees were paid to

1  Deloitte through a contractual amendment to the ISA (FAC ¶ 162).  Even if these allegations were
2  enough to state a claim for aiding and abetting, which they clearly are not, the allegations themselves
3  do not even relate to SAP.
4        Nothing in the FAC, or in the County's Opposition, alleges or even "demonstrates" SAP's
5  knowledge of Culver's allegedly tortious conduct.[8]  Baldly claiming that SAP employees were aware
6  of problems with the Project is not enough.  There are no allegations that anyone at SAP knew what
7  representations were being made by Culver – or that those representations were false.[9]  No plausible
8  inference can be made from the FAC that SAP had knowledge of Culver's alleged wrongful conduct.
9        The County also fails to address how SAP substantially assisted in the fraud or fiduciary
10 breaches, which must be alleged to sustain a claim for aiding and abetting.  The County has thus
11 conceded that there are no allegations of substantial assistance by SAP.
12       Finally, there are no allegations showing that SAP acted with the intent to facilitate Culver's
13 conduct or that SAP "reach[ed] a conscious decision to participate in tortious activity." *See Howard*,
14 2 Cal. App. 4th at 749.  The County merely references the fact that SAP engaged Culver in
15 discussions regarding future employment.  The fact that SAP eventually hired Culver in no way
16 shows that SAP intended or consciously decided to participate in his alleged conduct.  Indeed, before
17 doing so, SAP obtained the County's consent to Culver's potential employment.
18       In sum, the County does not properly allege a claim against SAP for aiding and abetting.
19       **F.**    **The Court Should Dismiss the Common Law Conspiracy Claim Against SAP.**
20       The FAC draws legal conclusions not based in any fact to support the County's claim for
21 civil conspiracy against SAP.  The County asks the Court to infer from SAP's role as the software
22 licensor on the Project that SAP shared a conspiratorial objective to defraud the County and then

---

[8] The County argues that allegations of knowledge may be averred generally, so long as the net effect of the allegations demonstrate knowledge. (Opp. 22, fn. 26). The FAC does not directly state that SAP had knowledge of Culver's alleged torts, nor do the allegations demonstrate any knowledge on behalf of SAP.

[9] The FAC does not allege that SAP had anything to do with getting Deloitte's Project Deliverable Forms or Change Orders signed by Culver or securing additional fees for Deloitte. The County's fraud claim against Culver rests almost entirely on alleged misrepresentations made in connection with these Deliverables, which did not involve SAP at all. See County's Opposition to Culver's Motion to Dismiss, Dkt. 99, at 14-18.

actively participated in such a scheme. FAC ¶¶ 262-63. As SAP made abundantly clear, this alleged scheme is implausible.

Tellingly, the County simply dismisses SAP's argument that the elements of a conspiracy theory have not been plead, without providing any justification for its blanket assertion that SAP engaged in the scheme. Opp. 23. The County refers without explanation to allegations in the FAC related to the "Ramp-Up" program and SAP's discussions with Culver about his eventual employment with SAP. Opp. 23, FAC ¶¶ 67-96, 158, 179. These allegations do not reflect any agreement, tacit or otherwise, to participate in a conspiracy to defraud the County. The County also points to Deloitte's implementation problems, payments made to Deloitte for work that was allegedly performed improperly or not at all, and a subsequent budget increase made in a contractual amendment to the ISA with Deloitte. Opp. 23, FAC ¶¶ 159-163, 262-65. There is nothing about the allegations that shows that SAP was part of a conspiracy.

The County has simply cobbled together a number of disparate and unrelated facts in an attempt to allege a conspiracy. No "concurrence or knowledge for civil conspiracy" may be inferred. The County's civil conspiracy claim should be dismissed.

### G. The Court Should Dismiss the Claims Against SAP Under Section 1090.

The County has failed to state a claim against SAP for a violation of California Government Code Section 1090. The FAC does not clearly identify which SAP contracts Culver was "financially interested" in, but instead only vaguely refers to "various contracts" made from November 2006 through July 2007. FAC ¶¶ 269-70. In its Opposition, the County attempts to clear the confusion by stating that these "various contracts" include a January 29, 2007 contract to "retain SAP fund management and inventory management consultants," and "additional contracts with Deloitte and SAP in April 2007 worth nearly $3 million." Opp. 24.

The County fails to allege any facts identifying the January 29, 2007 contract. The County does not explain whether the contract was entered into with SAP or consultants specializing in SAP software. We should not need to guess at whether this contract qualifies as a contract with SAP.

In any event, it is well settled under California law that the acceptance of employment with a contracting party after the award of a contract does not violate Section 1090. *City of Oakland v.*

*California Const. Co.,* 15 Cal. 2d 573, 577 (1940). Contrary to the County's assertion, this is not a "hyper-technical reading of Section 1090" – it is the law. Opp. 24. Under the facts alleged in the FAC, Culver did not engage in discussions concerning future employment until April 2007 and did not begin working for SAP Public Services until July 2007. FAC ¶¶ 158, 180. The County claims that it is "irrelevant" that Culver did not engage in employment discussions until at least four months *after* the award of the January 2007 contract. But under California law, this is a threshold question as to whether or not a violation of Section 1090 has occurred. It could not be more relevant. The fact that SAP was collaborating with Deloitte on the Project in January 2007 does not establish that Culver had a "financial interest" in awarding contracts to SAP. The County's claim that Section 1090 was violated is simply not plausible on its face.

The County also claims that Culver was financially interested in "contracts with Deloitte and SAP in April 2007 worth nearly $3 million." Opp. 24. But the FAC makes it clear that the $3 million contract was actually a budget increase approved by the Board of Supervisors and included in an amendment to the ISA on or about May 1, 2007. FAC ¶ 162. The ISA was a contract the County entered into with Deloitte and SAP is not a party to that contract or any amendments thereto. FAC ¶ 58. The County, therefore, has not alleged that Culver had any interest in any contract entered into with SAP.

### III. CONCLUSION

In sum, notwithstanding substantial and very imaginative efforts, the County has failed to transform a contract dispute about Deloitte's alleged breach under the Implementation Services Agreement into a RICO case predicated on mail fraud, wire fraud, and bribery. No plausible claim is stated by the County and none can be stated. This suit should be dismissed.

**DUANE MORRIS LLP**

Dated: July 29, 2011   By: _____/s/ *Stephen H. Sutro*_____
Matthew A. Taylor
Patrick J. Loftus
Stephen H. Sutro
Jennifer B. Fisher
**Attorneys for Defendants SAP America, Inc. and SAP Public Services, Inc.**