Thomas B. Mayhew (State Bar No. 183539)
tmayhew@fbm.com
Christina Hollander (State Bar No. 267292)
chollander@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant
ERNEST W. CULVER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| COUNTY OF MARIN,<br><br>Plaintiff,<br><br>vs.<br><br>DELOITTE CONSULTING LLP, SAP AMERICA, INC., SAP PUBLIC SERVICES, INC. and ERNEST W. CULVER,<br><br>Defendants. | Case No. CV11-0381-SI<br><br>**DEFENDANT ERNEST W. CULVER'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT (FRCP 9(b) AND 12(b)(6))**<br><br>Date: September 9, 2011<br>Time: 9:00 a.m.<br>Place: Courtroom 10, 19th Floor,<br>450 Golden Gate Avenue<br>Judge: Hon. Susan Illston |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI

26482\2704616.1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1
II. ARGUMENT ........................................................................................................... 2
    A. GOVERNMENT CODE SECTIONS 820.2 AND 821.2 PROVIDE IMMUNITY FOR THE CLAIMS AGAINST CULVER. ................................ 2
        1. Culver Is Immune Under Section 820.2 ............................................. 2
        2. Culver Is Immune Under Section 821.2 ............................................. 4
    B. THE COUNTY FAILED TO STATE ITS FRAUD CLAIMS WITH THE REQUIRED PARTICULARITY UNDER RULE 9(B). ....................................... 6
        1. The "Project Deliverable Approval Forms." ...................................... 7
        2. Oral Misrepresentations ..................................................................... 8
        3. Non-Disclosure/Concealment ........................................................... 10
            a. Culver Was Not Obligated To Disclose Who He Ate Dinner With Or That He Was Considering Other Job Options. ............... 10
            b. The County Does Not Allege That They Would Have Acted Differently If They Knew Of The Alleged Omissions .................. 12
            c. The County Does Not Explain How Culver's Non-Disclosure Rendered Any Deliverables, Change Orders or Statements False ............................................................................ 12
    C. THE SECTION 1090 CLAIMS FAIL BECAUSE THEY SEEK NO RECOVERY FROM CULVER AND DO NOT IDENTIFY THE REQUISITE CONTEMPORANEOUS FINANCIAL INTEREST .................... 13
        1. The County May Recover Under Their Section 1090 Claim Without Bringing The Claim Against Culver. ................................................. 13
        2. The FAC Does Not Identify The Requisite Financial Interest ................ 14
III. CONCLUSION ..................................................................................................... 15

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abarca v. Merck & Co.*,
 1:07-CV-00388 OWW DLB, 2010 U.S. Dist. LEXIS 26423 (E.D. Cal. Mar. 16, 2010) ......... 8

*Ackerman v. Northwestern Mut. Life Ins. Co.*,
 172 F.3d 467 (7th Cir. 1999) .................................................................................................. 1

*In re GlenFed, Inc. Sec. Litig.*,
 42 F.3d 1541 (9th Cir. 1994) .............................................................................................. 6, 7

*Fetch v. Price Co.*,
 70 F.3d 1078 (9th Cir. 1995) .................................................................................................. 9

*Gregoire v. Biddle*,
 177 F.2d 579 (2d Cir. 1949) ................................................................................................... 3

*Harmston v. City and County of San Francisco*, No. C 07-01186 SI,
 2007 U.S. Dist. LEXIS 74891 (N.D. Cal. Sept. 25, 2007) ................................................. 3, 4

*Rubke v. Capitol Bancorp Ltd*,
 551 F.3d 1156 (9th Cir. 2009) ........................................................................................... 6, 13

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
 927 F. Supp. 1297 (C.D. Cal. 1996) ....................................................................................... 6

*Moore v. Kayport Package Exp., Inc.*,
 885 F.2d 531 (9th Cir. 1989) .................................................................................................. 8

*United States v. Albinson*,
 Civ. No. 09-1791, 2010 U.S. Dist. LEXIS 83644 (D. N.J. Aug. 16, 2010) ............................ 8

*Wessa v. Watermark Paddlesports, Inc.*,
 No. C06-5156 *FDB*, 2006 U.S. Dist. LEXIS 32412 (W.D. Wash. May 22, 2006) ............ 7, 13

**STATE CASES**

*Bancroft-Whitney Co. v. Glen*,
 64 Cal. 2d 327 (1966) ........................................................................................................... 11

*Carson Redevelopment Agency v. Padilla*,
 140 Cal. App. 4th 1323 (2006) ............................................................................................. 13

*City of Oakland v. California Constr. Co.*,
 15 Cal. 2d 573 (1940) ........................................................................................................... 14

*Colome v. State Athletic Comm'n of California*,
 47 Cal. App. 4th 1444 (1996) ................................................................................................. 5

*Curcini v. County of Alameda*,
 164 Cal. App. 4th 629 (2008) ......................................................................................... 2, 3, 4

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI

- ii -

26482\2704616.1

**TABLE OF AUTHORITIES**
(continued)

Page

*Fowler v. Varian Associates, Inc.*,
   196 Cal. App. 3d 34 (1987) .................................................................................... 11

*Huong Que, Inc. v. Luu*,
   150 Cal. App. 4th 400 (2007) .................................................................................. 11

*Johnson v. California*,
   69 Cal. 2d 782 (1968) ......................................................................................... 3, 4

*Klistoff v. Super. Ct.*,
   157 Cal. App. 4th 469 (2007) .................................................................................. 14

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ............................................................................ 10, 12

*Lipman v. Brisbane Elementary Sch. Dist.*,
   55 Cal. 2d 224 (1961) ......................................................................................... 2, 3

*People v. Wong*,
   186 Cal. App. 4th 1433 (2010) ............................................................................ 14, 15

**FEDERAL STATUTES**

Federal Rules of Civil Procedure
   9(b) ....................................................................................................... *passim*
   12(b)(6) ....................................................................................................... 15

**STATE STATUTES**

California Business & Professions Code
   § 16600 ....................................................................................................... 11
   § 18711 ........................................................................................................ 5

California Government Code
   § 820.2 .................................................................................................... 2, 3, 4
   § 821.2 .................................................................................................... 2, 4, 5, 6
   § 822.2 ........................................................................................................ 4
   § 1090 ................................................................................................. 13, 14, 15
   § 1092 ........................................................................................................ 14
   § 23004(c) .................................................................................................... 5
   § 23005 ....................................................................................................... 5

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI

- iii -

26482\2704616.1

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

With a barrage of ad hominem and overwrought language leveled at Culver and his counsel,[1] the County's Opposition largely avoids, rather than addresses, Culver's criticisms of the Amended Complaint ("FAC"). When the dense underbrush is cleared away, there are three issues for the Motion to Dismiss, which the County's Opposition does not successfully address:

1. The FAC alleges that Culver was delegated the responsibility to exercise judgment and sign "approvals." The Government Code says that government employees who make discretionary decisions and/or sign approvals are immunized. The County's response is to assert that there is a fraud or corruption exception to each of these provisions, which finds no support in the statutory language, and to say that Culver did not make a discretionary decision because he was corrupt. These arguments fail.

2. The FAC does not say what was false about the Deliverable Approval Forms, does not plead facts showing Culver's duty to disclose or what he failed to disclose in violation of his duty, and does not say who, if anyone, was misled, or heard or read anything Culver said or wrote. These particulars are required by Rule 9(b), and the County's reference to 82 paragraphs

---

[1] The County is not content to simply defend the adequacy of its pleading, or to assert that Culver's legal position is erroneous, but instead devotes an inordinate amount of the brief to asserting that counsel are making arguments in bad faith. *See e.g.*, Opp. 2:4-5 ("Culver's response . . . is frivolous"), 2:5 ("Above and beyond the absurdity . . ."), 7:11-12 ("his arguments misrepresent the law and ignore the FAC's allegations."), 7:13 ("bizarrely ignores . . ."), 8 n.5 ("Culver intentionally (and misleadingly) omits . . ."), 11:10-11 ("Culver's plainly incorrect interpretation . . ."), 11:18-12:2 ("Culver's argument . . . is absurd . . ."), 11 n.10 ("illustrate the fallacy of Culver's contention, which borders on frivolous."), 12:13-15 ("Culver's argument . . . fundamentally misconstrues what Rule 9(b) requires, and ignores . . . allegations . . ."), 14:2-3 ("Culver ignores . . ."), 16 n.21 ("This is nonsensical."), 18:7-8 ("Culver's argument . . . is not only baseless . . ."), 19:3-4 ("This is false, as Culver simply disregards . . ."), 19:25-26 ("Culver . . . ignores . . ."), 20:7-8 ("Culver completely ignores . . ."), 21:12 ("This argument ignores . . ."). As the Court noted at the hearing on the Deloitte motions, such language is inappropriate. Insulting or excoriating the other side in the briefs detracts from reasoned analysis, and the lack of civility demeans the profession.

The same overly dramatic approach, unfortunately, also applies to the allegations against Culver as a whole. Instead of simply complaining that Culver went out to dinner, and talked about jobs, with consultants working on a County contract, the County has dressed up their complaint and Opposition with the ill-fitting clothing of bribery, corruption, racketeering, and fraud. *See, e.g.,* Opp. 1:24-25 ("Culver plunged into this bribery scheme with a literal vengeance . . ."). The point of Rule 9(b) is in part to look through the drama of such language and see whether the facts pleaded justify the charge. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (9(b) helps "assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."). As explained below, in this case they do not.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI — - 1 - — 26482\2704616.1

does not show that the 82 paragraphs contained the details that are required by the rule.

3. The FAC does not plead a claim for relief against Culver in its Eighth and Ninth claims, because it identifies no relief sought against him and seeks to void contracts to which Culver is not a party. The County's apparent argument that Culver is a necessary party for these claims is unsupported by citation to authority and is incorrect as a matter of law.

## II. ARGUMENT

### A. GOVERNMENT CODE SECTIONS 820.2 AND 821.2 PROVIDE IMMUNITY FOR THE CLAIMS AGAINST CULVER.

The County's claims boil down to allegations that Culver signed off on Deliverables and Change Orders and approved work by Deloitte and/or SAP Public Services that he should not have approved because the work was "defective" and the ERP software was not working well, and that he had a conflict of interest because he had some nice dinners and job discussions. As the Project Director, the County had delegated Culver the responsibility of overseeing the Project and exercising his "judgment" and "objective, good-faith assessment" in evaluating whether it was appropriate to approve Deloitte's work. Am. Compl. ¶ 131. He exercised such discretion in deciding to execute the cited Deliverables and Change Orders, and in expressing his opinions about the Project. The County now clearly disagrees with Culver's decisions to approve these Deliverables and Change Orders, and wishes it had not enlarged the Project budget. But California Government Code sections 820.2 and 821.2 are meant to protect against liability for exactly this kind of after-the-fact second-guessing. Culver's decisions to enter into additional contracts and to advocate for enlargement of the Project budget are protected by section 820.2, and his signing of approval forms is protected by section 821.2.

#### 1. Culver Is Immune Under Section 820.2.

Section 820.2 immunizes Culver from liability for damages flowing from his discretionary decisions to enter into contracts and participate in the decision to increase the budget for the Implementation Services Agreement ("ISA"). Under *Curcini v. County of Alameda*, "the award of a public contract involves the exercise of discretion." 164 Cal. App. 4th 629, 648 (2008).[2]

---

[2] Plaintiff makes much of Culver's citation to *Lipman v. Brisbane Elementary Sch. Dist.*, 55

Here, the breach of fiduciary duty and fraud claims are necessarily predicated on the assertion that Culver was given a high degree of discretionary decision-making authority. The FAC details how the County was depending on Culver to exercise his "judgment" to guide the Project through to a successful completion, including by recommending that the County sign new contracts and increase the project budget; in so doing, the FAC shows that Culver had discretion (which means he also has immunity). Am. Compl. ¶¶ 131, 160-61, 248.

The County attacks this analysis in the following passage – which is important not because of what it says, but because of what it lacks: a citation to any paragraph in the FAC.

> Here, the FAC does not allege that Culver made *bad* or *thoughtless* decisions with respect to the Project. Rather, it alleges that Culver made *no* decisions with respect to the Project, and instead, abdicated the discretion vested in him by the County and acted on behalf of Deloitte and SAP in exchange for bribes to further the interests of the Enterprise defendants. The fact that the County asked Culver to exercise judgment with regard to Deloitte's work on the Project [] is immaterial, because the FAC alleges that Culver ignored the County's request and simply did what Deloitte and SAP asked in exchange for lavish dinners and promises of employment. . . . Culver's bad faith decisions are therefore not protected by Section 820.2.

Opp. 9: 1-17 (emphasis in original). This argument fails for two reasons. First, despite purporting to describe in three sentences what the FAC alleges, it does not. The FAC lacks the allegations that Plaintiff now asserts are the legal basis for overriding Culver's discretionary immunity. Second, the argument is based on phrasing rather than substance. Any plaintiff could allege that a discretionary decision was not merely "bad or thoughtless" but in fact was "no decision" because it was motivated by some external animus. Discretionary immunity does not turn on a turn of phrase. If Culver made a decision to sign off on project documents or authorize contracts, as the County entrusted him with the responsibility to do (Am. Compl. ¶ 131) and alleges he did (*see, e.g.,* Am. Compl. ¶ 249), he is immune. He cannot be sued simply by

---

Cal. 2d 224, 229 (1961). The proposition for which *Lipman* was cited in our opening brief – concerning the general purpose of discretionary immunity, a policy that traces back yet further to Judge Learned Hand's decision in *Gregoire v. Biddle*, 177 F.2d 579 (2d Cir. 1949) – is undisturbed by this Court's statement in *Harmston v. City and County of San Francisco*, No. C 07-01186 SI, 2007 U.S. Dist. LEXIS 74891 (N.D. Cal. Sept. 25, 2007) that *Johnson v. California*, 69 Cal. 2d 782, 794 (1968) is a seminal case in deciding which acts constitute discretionary ones. The cases relied on by the motion to define discretionary immunity are *Chih Cheng*, *Curcini*, and *Rubino*, each post-date, and are consistent with, *Johnson*.

asserting in a brief that he did it unthinkingly.

The County next suggests that *Curcini* does not apply because the FAC alleges corruption and fraudulent intent. Opp. 9:13-16, 9 n.7. The County's argument attempts to import into section 820.2 an exception to a different statutory immunity by quoting a portion of *Curcini* that discussed section 822.2 (immunity for misrepresentation, except if the employee "is guilty of actual fraud, corruption or actual malice."). In *Curcini*, the court expressly held that allegations of fraud or concealment of motive did not change the section 820.2 analysis. 164 Cal. App. 4th at 648 ("To immunize respondent County Sheriff's Office employees for an alleged abuse of discretion in awarding the bid, but allow a cause of action based upon their allegedly false representations or promises that they would evaluate the bids fairly or upon their alleged concealing of their intent not to evaluate the bids fairly, but rather to 'rig' the bid, would eviscerate the immunity provided by Government Code section 820.2 for the public employees' exercise of discretion."). After determining that section 820.2 immunity did extend to the alleged behavior, the court went on to separately evaluate the allegations under section 822.2. This is where the language quoted by the County appears, and where the allegations of corruption and actual malice came into play. *Id.* at 649 ("Nor are conclusory allegations of corruption or malice sufficient to bring a fraud action within the exception of *Government Code section 822.2*.") (emphasis in original). The fraud/corruption/malice exception to section 822.2 does not appear in the separate immunity provided by section 820.2, and the analysis in *Curcini* shows that fraud/corruption/malice is not part of the section 820.2 analysis. Accordingly, under *Curcini,* Culver's decisions to enter into additional contracts and to support the ISA budget increase are protected by § 820.2 notwithstanding the allegations of corruption.[3]

### 2. **Culver Is Immune Under Section 821.2.**

Section 821.2 provides a separate immunity for signing approval documents. The County claims it does not apply here because approval must be authorized by enactment. Opp. 11.

---

[3] Culver satisfies the requirements of *Harmston* and *Johnson* because his decisions to enter into additional contracts and support the budget increase are basic policy decisions and because the County has failed to effectively distinguish *Curcini*, which is a post-*Johnson* case. *See Johnson*, 69 Cal. 2d at 797; *Harmston*, 2007 U.S. Dist. LEXIS 74891 at *7-8.

The Government Code expressly provides that counties may "[m]ake contracts." Cal. Gov't Code § 23004(c). It also states that a county may exercise its powers through the board of supervisors or through agents or officers acting under the authority of the board or authority conferred by law. *Id.* at § 23005. These enactments make clear that counties have the power to enter into contracts, and separately to delegate exercise of its powers to agents or officers.[4]

Here, the County used its contracting authority to enter into the ISA with Deloitte, and within the ISA, Deloitte and the County created a process for the County's accepting and testing of Deloitte's work, that Culver was to administer. *See* Request for Judicial Notice; Declaration of Jennifer Briggs Fisher in Support Thereof ("Fisher Decl."), May 20, 2011, Dkt. No. 75, Ex. C at § 13; *see also* Am. Compl. ¶ 131. Pre-live acceptance and non-software acceptance are two illustrative acceptance testing categories.[5] *Id.* at § 13.1, 13.3. The pre-live and non-software acceptance procedures dictate that Deloitte would provide written notice that a Deliverable had been completed, the County would test the Deliverable, and deliver written acceptance of the Deliverable, or a written report describing any deficiencies. *Id.*

The ISA specifically identified Culver as the Project Director, and provides that the Project Director would: 1) act as the primary liaison between the County and Deloitte; 2) have the responsibility of directing all of the County's activities and the Project as a whole; and 3) have the necessary authority to coordinate and arrange for executions of amendments to the ISA, as permitted. *Id.* at § 3.2, Schedule 3.1.1. Furthermore, the sample form of invoice attached to the ISA is addressed to Culver's attention, also indicating that the County intended to identify Culver as the County employee who would handle the invoice and Deliverable aspects of the project. *Id.* at Schedule 6.2. The County used its authority to contract to create a testing acceptance system and identified Culver as the agent who would represent the County in such matters. Accordingly, Culver was authorized by "enactment" to carry out the delegated authority to effectuate the ISA

---

[4] The "enactment" itself need not individually name the individual authorized to sign the approvals. *See Colome v. State Athletic Comm'n of California*, 47 Cal. App. 4th 1444, 1456-57 (1996) (finding that the individual employees of the State Athletic Commission of California were protected by section 821.2 immunity even though Business and Professions Code section 18711 simply provides authority for "the commission" to prepare standards for licensing).

[5] There is also post-live acceptance testing, which permits the County to use the system in a live environment and provide written notice of acceptance or deficiencies. *Id.* at § 13.2.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1  by signing Deliverables.[6] Culver's authority as alleged in paragraph 131 was thus "authorized by
2  enactment." Cal. Gov't Code § 821.2.

### B. THE COUNTY FAILED TO STATE ITS FRAUD CLAIMS WITH THE REQUIRED PARTICULARITY UNDER RULE 9(B).

In its FAC, the County overwhelmingly relies on the assumption that because the ERP software did not perform as the County expected (or in the words of the FAC, was "defective"), Culver committed fraud in signing Deliverables and Change Orders regarding discrete elements of the ERP implementation. *See e.g.,* Am. Compl. ¶¶ 131, 149, 166 (using the term "defective"); Opp. 16:18-17:18. Where fraud is alleged, more than assumptions are required. The County is obligated to plead the details of the misrepresentation, and to explain why the misrepresentations identified are false. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds as stated in *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D. Cal. 1996)).

To satisfy the heightened pleading requirements of Rule 9(b), "[g]enerally, a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *In re GlenFed*, 42 F.3d at 1547 n.7. Because Rule 9(b) requires that the plaintiff aver with particularity the "circumstances" constituting fraud, the details of the time, place and content of the fraud are not enough. "The statement in question must be false to be fraudulent." *Id.* at 1548. Thus, the plaintiff must set forth an explanation as to why the statement or omission identified was actually false or misleading. *Id; see also Rubke v. Capitol Bancorp Ltd,* 551 F.3d 1156, 1161 (9th Cir. 2009) ("the complaint must 'set forth what is false or misleading about a statement, and why it is false.'"). These pleading rules apply to all averments of fraud, including omissions. Plaintiffs

---

[6] To the extent that the County argues that Culver did not have authority to sign approvals after responsibility for the Project was transferred to David Hill, the County has not alleged that it was reasonable in relying on any Deliverables signed after this point. *See* Opp. 13:4-9 (citing "justifiable reliance" as a necessary element of fraud). The County indicated in its Opposition that unnamed employees in the accounting department relied on the Deliverables. Opp. 18:7-12. It would be unreasonable for these unidentified County employees to rely on representations made by someone within the County who did not have authority to make such a representation.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI       - 6 -                        26482\2704616.1

pleading fraud by omission must set forth "the type of facts omitted and the way in which the facts made the representations misleading." *Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB, 2006 U.S. Dist. LEXIS 32412, *10-11 (W.D. Wash. May 22, 2006).

The County has failed to plead what was false about Culver's non-disclosures, written representations and oral statements and has failed to meet the heightened pleading requirements of Rule 9(b). As a result, its fraud claim and its breach of fiduciary duty claim (to the extent it is based on fraud) must be dismissed.

### 1. The "Project Deliverable Approval Forms."

Even with the gloss that the Opposition puts on the FAC, the fraud claim based on Project Deliverable Approval Forms is still deficient. Culver is not being sued for breach of contract. He is being sued for fraud, which means that the County must specify what was wrong with the aspects of the project that it claims Culver defrauded it about.[7] If the County truly intends to accuse Culver of having committed fraud with respect to 25 separate deliverables, it must provide the details about what was false about each one.

For example, the County complains that Culver signed a document titled "Project Scope" – for work "purportedly completed in January 2006" – during late December 2006. Am. Compl. ¶ 127, 132. What was the problem with the Project Scope document? The FAC does not say. And even if the County did experience problems with functionality after the initial "go-live" in July 2006, this does not mean that anything about the "Project Scope" deliverable was false and known by Culver to be false. Opp. 16:18-17:6 (citing Am. Compl. ¶¶ 106, 110, 123, 130-132, and arguing that July 2006 technical problems relate to DED 33). What was wrong with the work allegedly approved by DED 07 (attached to the Mayhew Decl. as Exh. C)? Were change readiness recommendations not made? And if some were, what was so wrong about them that Culver should stand trial for allegedly defrauding his employer about them? The FAC's

---

[7] The County also suggests that it is not required to plead "detailed evidentiary matter" and as a result does not have to explain why the work underlying the Deliverables was defective. Opp. 18 n.29. As explained by the court in *In re GlenFed*, plaintiffs are required to plead some evidentiary facts because they must plead the details of the fraud. *In re GlenFed*, 42 F.3d at 1547 n.7 ("Rule 9(b) requires particularity as to the circumstances of the fraud - this requires pleading facts that by any definition are 'evidentiary':time, place, persons, statements made, explanation of why or how such statements are false or misleading.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1 reference to a menu of possibilities – that the work was "sub-standard, delinquent, deficient, and
2 incomplete" does not say what aspect of each deliverable was, or whether the Deliverable
3 contained material errors or defects, failed to meet Acceptance Criteria, or if training and other
4 services required in connection with that deliverable had been completed. Am. Compl. ¶ 130.[8]
5 More is required for fraud pleadings.

6 In the motion Culver pointed out that the FAC also lacks particularity because it never
7 says who read the document. "The County and the public" (Am. Compl. ¶ 130) does not work.
8 If the County means to say that these forms were delivered to a person in the accounting
9 department, it should allege the name of the recipient. If these forms were never read by anyone,
10 or never believed to mean what the County says was false about them, then there is no fraud
11 claim. Where multiple representations are alleged, the recipient of each must be pleaded. *Moore*
12 *v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("The complaint does not
13 specify which plaintiff received which prospectus . . ."); *Abarca v. Merck & Co.*, 1:07-CV-00388
14 OWW DLB, 2010 U.S. Dist. LEXIS 26423, *35 (E.D. Cal. Mar. 16, 2010) ("Plaintiffs must
15 specifically articulate which [of the 291 individual] Plaintiffs received which allegedly
16 misleading, half-truth communications and how each Plaintiff relied upon those communications
17 to their detriment.").

18 The County also has not provided a complete list of whatever documents it claims were
19 fraudulent. It uses the word "included" as a hedge. Mot. 12:16-12:25. The County does not
20 respond to this argument or say what "included" means here; the fraud claim should only go
21 forward with full notice to Culver of which statements are the basis of the claim.

### 2. **Oral Misrepresentations.**

23 The sole oral misrepresentation alleged in the FAC is that Culver told Matthew Hymel on
24 or about December 29, 2006 that "generally things were going well" and then described the

---

[8] The County asks the Court to consider *United States v. Albinson,* Civ. No. 09-1791, 2010 U.S. Dist. LEXIS 83644, *1 (D. N.J. Aug. 16, 2010). This opinion is marked "NOT FOR PUBLICATION" and under Civil L.R. 3-4(e), should not be considered by the Court. In any event, this case does not present the same factual scenario as the FAC. In *Albinson*, the Government sued an Army employee for signing invoices for payment for computer installation work that *he had acknowledged was never completed. Id.* at *10-11. Here, nothing in the FAC identifies what incomplete work Culver "approved." That distinction makes all the difference.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI - 8 - 26482\2704616.1

project as "hell" in purportedly contemporaneous writing. Am. Compl. ¶ 135. The County has not alleged any facts illustrating how this is a false or inconsistent statement.

The County argues that their allegations that (1) Culver approved defective work by Deloitte the week before making this representation; (2) the Project experienced problems within hours of "going live" the *following week*; and (3) Culver's "describing the Project as a 'shopping cart careening down the hill'" *sometime in or about December 2006* illustrates that he was lying when he said on December 29, 2006 that "generally things were going well." Opp. 19:16-24. None of these facts show fraud. The bare allegation that Culver approved defective work is insufficient because nothing in the FAC articulates how the work Culver approved was defective. The statement quoted by the County from *Fetch v. Price Co.,* that, "[f]or purposes of Rule 9(b), allegations of specific problems undermining a defendant's optimistic claims suffice to explain *how* the claims are false" is inapplicable for this reason; the County has not alleged any specific problems, relating to the Deliverables or the project generally, that Culver knew about at the time he made this statement. 70 F.3d 1078, 1083 n.5, 6 (9th Cir. 1995)(emphasis in original). Allegations that the Project experienced problems a week later likewise fail to establish falsity at the time the statement was made. Finally, the assertion that Culver described the project as "a 'shopping cart careening down the hill'" sometime in December 2006 or thereabouts, does not show that Culver committed fraud when he said things were generally going well on December 29.[9] None of these statements show why the statement is false.

The County argues in its Opposition that the FAC actually contains allegations of another oral misrepresentation: that Culver made false statements to County executives to deceive them into advocating for the approval of additional fees for Deloitte and SAP Public Services. Opp. 19:25- 20:8; Am. Compl. ¶¶ 160-61. However, the details of this alleged misrepresentation are not stated, and the FAC is impermissibly vague about the subject of the communication. Am. Compl. ¶ 160 (alleging Culver deceived the County into enlarging the Project budget for

---

[9] What does "shopping cart careening down a hill" even mean here? Was Culver merely complaining – to himself, in a diary – that he felt the County's management of the project was sometimes ineffective? Or was he talking about Deloitte? Or SAP? Or the software? This out-of-context quote tells us nothing about why Culver's statement to Hymel was false, or if it was.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO DISMISS/Case No. CV11-0381-SI - 9 - 26482\2704616.1

1  "services that Culver knew had been improperly performed, would be improperly performed or
2  not performed at all.") Nowhere does the County identify what Culver said that was false, who it
3  was said to, or whether it was oral or written. Thus, the County has failed to plead any oral
4  misrepresentations with the required particularity.

### 3. Non-Disclosure/Concealment.

Under California law, the elements of a cause of action for fraud based on concealment are: (1) the defendant concealed or suppressed a material fact, (2) the defendant had a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression, the plaintiff sustained damage. *Linear Tech. Corp. v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 131 (2007) (citations omitted). The County's fraud by non-disclosure claim[10] fails because (1) the County has not adequately alleged Culver's obligation to disclose his dinners and job discussions; (2) the County does not allege that they would have acted differently if they knew of the concealed facts; and (3) the County has not alleged how Culver's omissions made his representations misleading.

#### a. Culver Was Not Obligated To Disclose Who He Ate Dinner With Or That He Was Considering Other Job Options.

The County has not demonstrated that Culver had a duty or obligation to disclose dinners with colleagues and his discussions with Deloitte about potentially leaving his employment at the County. The County alleges that Culver had a fiduciary duty, but fails to show how his fiduciary duty required him to disclose these facts the County.

An employee has *no* duty to report to his or her employer that he or she is considering leaving, or is interviewing elsewhere. California has a strong policy concerning employee mobility, and imposing a duty on employees to self-report every time that they consider a job

---

[10] The County suggests in a footnote that they have also plead fraud by active concealment. We disagree. The FAC does not "allege that Culver took active steps to hide his misconduct from the County" or contain facts indicating that he did so. *See* Am. Compl. ¶ 230-237. The single paragraph cited by the County (¶ 165) alleges merely that Culver did not believe "we could talk openly if we invited [County employee] Cathy [Boffi]."

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

change – on the theory that they have a fiduciary duty to do so, even in the absence of any express policy requiring disclosure – would undermine this policy. *See e.g.,* Cal. Bus. & Prof. Code § 16600. At-will employees are free to leave at any time, just as their employers may fire them at any time. Thus, job interviews do not breach the employee's duty of loyalty – only an actual transfer of loyalty (such as stealing a customer list, or refusing to provide information about a competitor on request) will do so:

> While California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning . . ., California law does not authorize an employee to transfer his loyalty to a competitor.

*Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 406 (2007) (quoting *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 41(1987)). Preparations to leave, and even to compete with one's employer are actionable as a breach of the duty of loyalty only if the failure to disclose harms the company. *Fowler*, 196 Cal. App. 3d at 42 (citing *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 346 (1966)).

The County undoubtedly responds that its claims are based on an actual transfer of loyalty that harmed it, and thus argues they are within the rule of *Huong Que*, *Fowler*, and *Bancroft-Whitney*. But the County never pleads specific facts to show that Culver did more than just interview with Deloitte, and seems to complain about his signing of documents even after he had told his boss that he was leaving to go to SAP.[11] It claims he signed fraudulent deliverable forms, but does not identify what about them was fraudulent or who read them and was misled. It claims he misled Hymel by telling him things were going well, but does not identify why that oral statement was fraudulent. The dinners and job talks alone cannot be sufficient to impose liability for fraud, because an employment relationship alone does not impose a duty on employees to

---

[11] There is a disconnect between the allegations of the FAC and the Opposition. The FAC alleges that, after some informal questions about opportunities (Am. Compl. ¶¶ 118, 125), Culver was asked to send Deloitte a resume in late January 2007. *Id.* ¶ 150. In late February, Culver had an interview. *Id.* ¶¶ 152, 154, 155. The County never alleges that Deloitte offered Culver a job. Yet, in the Opposition, the County upgrades Culver's interview to a job offer, asserting that he received "promises of employment by Deloitte and SAP (which Culver ignores) . . . ." Opp. 15: 1-2.

With respect to the SAP job offer, the FAC alleges that Culver first told his boss about it on May 29, 2007. Am. Compl. ¶ 179. Alleged fraud-by-non-disclosure after May 29, 2007, at a minimum, must fail, though the County seems to nevertheless rely on Culver's actions during June to support its claim. *See* Am. Compl. ¶¶ 172-177.

1  report what they ate for dinner, who they ate with, or whether they are interviewing elsewhere.[12]
2  If the County has facts to support its conclusion that Culver had a duty to report the dinner, it
3  should allege them.  If there was a written County policy that required such disclosure, the
4  County should allege it.   Failure to disclose job interviews or dinners is not a breach of an
5  employee's duty of loyalty.  More is required under California law, but the FAC does not allege
6  facts showing more.

b. The County Does Not Allege That They Would Have Acted Differently If They Knew Of The Alleged Omissions.

To allege a cause of action for fraud by omission, the County must allege, *inter alia*, that, it was unaware of the omitted fact and would not have acted as it did if it had known about the concealed fact.  *Linear Tech. Corp.,* 152 Cal. App. 4th at 131.  Here, the County does not allege that it would have acted differently if Culver had disclosed that he had dinner with Deloitte employees and was considering changing jobs.  They do not explain what Deliverables and Change Orders they would have refused to sign, or how such refusal would have any impact on the amount due to Deloitte under the ISA.  The ISA declares that if the County has not accepted or rejected work within 10 days "the County shall be deemed to have issued its Acceptance of such Deliverable . . . ."  *See* Fisher Decl. at Ex. C, § 13.3.  Given that Culver signed many of these Deliverables months after the work was completed, his signature appears to have no relationship to the County's payment obligations.  Am. Compl. ¶ 129.  The FAC fails to explain how the outcome would have been different for the County even if Culver had complied with his alleged disclosure obligations.

c. The County Does Not Explain How Culver's Non-Disclosure Rendered Any Deliverables, Change Orders or Statements False.

Additionally, even if Culver was required to disclose his dining companions and plans to

---

[12] This is the most exaggerated part of the County's claim.  The County seems to contend that if a person is treated to dinner, that means they now act on their dining host's behalf in all subsequent matters.  *See* Opp. 14:20-15:6 ("The FAC alleges a fraud by non-disclosure based on Culver's *failure to disclose* 'these dinners,' and the promises of employment by Deloitte and SAP (which Culver ignores), to the County.  These non-disclosed facts were unquestionably material because, while the County believed that Culver, its Project Director, was acting on the County's behalf, Culver was in fact acting on behalf of Deloitte and SAP.") (emphasis in original).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI  - 12 -  26482\2704616.1

1  find another job, the County has not alleged with particularity how his failure to do so caused any
2  of the Deliverables or Change Orders he signed, or statements he made about the project, to be
3  false. *See Rubke v. Capitol Bancorp LTD,* 551 F.3d 1156, 1161 (9th Cir. 2009) ("the complaint
4  must 'set forth what is false or misleading about a statement, and why it is false.'"); *Wessa,* 2006
5  U.S. Dist. LEXIS 32412, at *10-11 ("To the extent the Plaintiffs allege an omission (failure to
6  disclose intent to change business location) as a fraudulent inducement or negligent
7  misrepresentation, *Rule 9(b)* mandates the pleading set forth the type of facts omitted and the way
8  in which the facts made the representations misleading."). The County alleges broadly that the
9  software did not work as expected, but does not explain how Culver is responsible for the defects,
10 or how any of the work listed in the Deliverables or Change Orders he signed related to the
11 software problems. Culver cannot effectively defend himself against allegations that his non-
12 disclosures caused the County damage, without understanding how his omissions allegedly
13 caused a Deliverable, Change Order or statement to approve work that was defective.

### C. THE SECTION 1090 CLAIMS FAIL BECAUSE THEY SEEK NO RECOVERY FROM CULVER AND DO NOT IDENTIFY THE REQUISITE CONTEMPORANEOUS FINANCIAL INTEREST

#### 1. The County May Recover Under Their Section 1090 Claim Without Bringing The Claim Against Culver.

18  In the moving papers, Culver showed that the FAC fails to state a claim for relief against
19 him in the Eighth and Ninth claims because no relief is sought against him. The County does not
20 respond to this argument or identify any relief that it seeks from Culver in these claims.
21 Accordingly, the Court should dismiss these claims for failure to plead an entitlement to any
22 relief against Culver.
23     The County responds by arguing that Culver is a proper defendant because the facts it will
24 prove for those claims relate to him. Opp. 20:25-21:3 ("any action by the County to avoid those
25 contracts . . . *must first prove Culver's violation of Section 1090.*"). This is not the law. A party
26 can sue to void a contract under section 1090 without joining the public official whose financial
27 interest allegedly invalidates the agreement. In *Carson Redevelopment Agency v. Padilla,* 140
28 Cal. App. 4th 1323 (2006), the Carson Redevelopment Agency brought suit against the Padillas to
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

recover money paid to the Padillas through a contract that was approved and signed only after they paid $75,000 to the mayor pro tempore, Agapito Diaz Fajardo. The Agency did not bring suit against Fajardo, yet it was able to recover the $850,000 paid to the Padillas by showing that the money paid to Fajardo constituted financial interest under section 1090. *Id.* at 1328, 1334.

The County's citation to *Klistoff v. Super. Ct.*, 157 Cal. App. 4th 469, 479-80 (2007) does not aid it. That case holds that Government Code "[s]ection 1092 provides the remedy for violations of section 1090," and further holds that a person who did not receive public funds under the allegedly void contract, and is not a party to the contract, may not be sued for the remedy provided by section 1092. The FAC does not allege that Culver received public funds under the ISA, or that he is a party to the contract. It does not state a claim for relief against Culver under section 1090 or 1092.[13]

Since the County seeks no remedy from Culver and is not required to assert the section 1090 claim against him to obtain the remedy it seeks, the section 1090 claim against him is unnecessary.

### 2. The FAC Does Not Identify The Requisite Financial Interest.

The County does not dispute that, under *City of Oakland v. California Constr. Co.*, section 1090 does not apply where the alleged financial conflict arose after issuance of the contract in question. 15 Cal. 2d 573 (1940). The FAC does not identify any new contracts entered into at a time when Culver had a cognizable financial interest therein. As a result, it fails to state a section 1090 claim.

The FAC alleges that Culver began discussing employment opportunities with Deloitte in December 2006 and with SAP Public Services in April 2007. Therefore (assuming that employment discussions even qualify as "financial interest," as the County never alleges he actually received money from Deloitte or SAP Public Services), to state a section 1090 claim under *City of Oakland*, the FAC must identify contracts that Culver entered into with Deloitte

---

[13] The County also cites *People v. Wong*, 186 Cal. App. 4th 1433, 1443 (2010), where a public official took $100,000 from one company before voting in favor of a city contract with a sister company. Wong was a criminal case. Nothing in the opinion suggests that where a public entity seeks, in a civil case, to recover the amounts paid under contracts in which a public employee has financial interest, that public entity must bring a claim against the public employee.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REPLY ISO CULVER'S MOTION TO
DISMISS/Case No. CV11-0381-SI - 14 - 26482\2704616.1

after December 2006 and with SAP Public Services after April 2007. However, the FAC fails to identify any such contracts. The ISA and Software License Agreement ("SLA") were signed in 2005, so neither can be avoided under the section 1090 claim against Culver. The FAC alleges that Culver signed Change Orders on January 15, 2007 and February 15, 2007. Am. Compl. ¶¶ 146, 153. But, there is no indication that these are new contracts (a "change order" refers to a modification of an existing contract), and section 1090 deals only with contracts, not modifications. The FAC also alleges that on January 29, 2007, Culver approved contracts "to retain SAP fund management and inventory consultants." Am. Compl. ¶ 151. The County does not specify the parties to the contract, but even assuming SAP Public Services was a party, Culver had no financial interest in that contract at that time.[14] Finally, the County suggests in its Opposition that the April 2007 project budget increase is also a contract that could be avoided under section 1090. Am. Compl. ¶¶ 161, 162. Yet, as with the other alleged contracts, there are no facts to show that this was a new contract, or any kind of contract at all. Since the requisite financial interest has not been alleged, the County's section 1090 claims must fail.

## III.  CONCLUSION

For the reasons expressed above and in Culver's Motion to Dismiss the Amended Complaint (FRCP 9(b) and 12(b)(6)) the Court should dismiss each of the claims against Ernest Culver.

Dated: August 9, 2011                              FARELLA BRAUN + MARTEL LLP

By: /s/ Thomas B. Mayhew
      Thomas B. Mayhew

Attorneys for Defendant
ERNEST W. CULVER

---

[14] If the County is arguing that Culver had a financial interest in the County's contracts with SAP Public Services during the time that he was discussing job opportunities with Deloitte simply because the County alleged a conspiracy between Deloitte and SAP Public Services, this theory fails because such an interest would be so remote and minimal that section 1090 is not implicated. *See* Opp. 21 n.34; *contra Wong* 186 Cal. App. 4th at 1451-52 (the court found that Wong had a financial interest in a contract where he accepted money from one company that was part of the same conglomerate as the company whose contract was up for extension).