**United States District Court**
For the Northern District of California

1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    COUNTY OF MARIN,                          No. C 11-00381 SI
9              Plaintiff,                      **ORDER GRANTING IN PART AND**
                                               **DENYING IN PART DEFENDANTS'**
10      v.                                     **MOTIONS TO DISMISS**
11   DELOITTE CONSULTING LLP, et al.,
12             Defendants.
                                        /
13

14          Currently before the Court are defendants' SAP America, Inc., SAP Public Services, Inc.

15   (collectively "SAP") and Ernest Culver's motions to dismiss plaintiff's Amended Complaint.  For the

16   reasons discussed below, the Court GRANTS in part and DENIES in part SAP's motion to dismiss and

17   GRANTS in part and DENIES in part Culver's motion to dismiss.

18

19                                      **BACKGROUND**

20          In May 2010, Marin County filed suit in Marin County Superior Court against Deloitte

21   Consulting LLP.  That complaint asserted causes of action against Deloitte for breach of contract as well

22   as various torts related to the formation and performance of the parties' Implementation Services

23   Agreement ("ISA").  Deloitte and Marin entered into the ISA in 2005 based on the County's desire to

24   implement enterprise resource planning ("ERP")  software produced by SAP America, Inc. to support

25   the County's financial and human resources management.  In its state court complaint against Deloitte,

26   the County alleged that Deloitte made misrepresentations to induce Marin to enter the ISA, failed to

27

28

United States District Court

For the Northern District of California

properly implement the SAP system, and covered up its failures.[1]

On December 16, 2010, Marin County filed a second action in Marin County Superior Court, alleging causes of action for violation of and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Deloitte and SAP America, Inc. and SAP Public Services, Inc. ("SAP"); fraud against Ernest Culver, a former Marin County official who worked with Deloitte and SAP on the ISA; aiding and abetting fraud, against Deloitte and SAP; breach of fiduciary duty, against Culver; aiding and abetting breach of fiduciary duty, against Deloitte and SAP; common law civil conspiracy, against Deloitte and SAP; violation of California Government Code section 1090, against Culver; and return of monies in violation of Government Code section 1090, against all three defendants. On January 26, 2011, defendants removed the second action to this Court and on April 6, 2011, plaintiff filed an Amended Complaint ("AC").[2]

SAP now moves to dismiss the action as against it, arguing that Marin has failed to adequately plead its causes of action. Culver has likewise moved to dismiss arguing that he is immune from suit and, in the alternative, that Marin failed to adequately allege its causes of action against him. Marin opposes both motions.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative

---

[1] Pursuant to a provision in the ISA requiring all disputes "relating to this engagement" to be submitted to a referee under California Code of Civil Procedure section 640, the parties stipulated to a referral to former California Superior Court Judge John F. Herlihy.

[2] The claims asserted against Deloitte in this second action have been referred pursuant to the ISA's provision to Judge Herlihy.

level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Moreover, as a number of the allegations against SAP and Culver sound in fraud, Marin must meet the heightened pleading standard of Rule 9(b) which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Ninth Circuit has interpreted this rule to require pleadings to specify "the time, place, and nature of the alleged fraudulent activities." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). This heightened pleading standard applies to RICO claims alleging fraud. *See id.* (dismissing the RICO claim for failure to specify the time, place, and content of the alleged mail and securities fraud).

## DISCUSSION

**I.    SAP's Motion to Dismiss**

  **A.    Marin Fails to Allege a RICO Claim**

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). "Racketeering activity" is any act indictable under one of several provisions of Title 18 of the United States Code. A RICO claim also requires a showing that "a pattern of racketeering activity" occurred. 18 U.S.C. § 1961; *see Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9th Cir. 1990).

Marin alleges that Deloitte and SAP joined in an enterprise with the aim of securing contracts with public sector entities to implement SAP's Public Sector enterprise resource planning ("ERP") software. This enterprise was fraudulent, Marin asserts, because SAP and Deloitte knew that Deloitte

United States District Court
For the Northern District of California

had an insufficient number of consultants to be able to implement the ERP software. AC, ¶¶ 1-5. Marin alleges that the enterprise benefitted from the racketeering scheme – even though defendants knew Deloitte was not able to competently implement the software – because the enterprise intended to use Marin as a reference for other public entities looking for ERP solutions, and if the implementation for Marin was successful more business would flow to Deloitte/SAP and if the implementation was not successful Deloitte/SAP would still earn fees for supplying additional consultants to attempt to salvage the Marin Project. *See generally* AC.

In moving to dismiss, SAP argues that Marin has failed to allege a number of necessary elements of a RICO claim, in particular that the predicate acts of mail fraud, wire fraud and bribery identified by Marin do not withstand scrutiny. SAP also argues that Marin's theory of the enterprise is implausible on its face, as it would make no economic sense for SAP to knowingly pursue a project with a partner who could not implement its software and, thereby, jeopardize its ability to secure new clients.

### 1. Racketeering Activity

#### a. Mail Fraud

"Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Claims for mail and wire fraud are subject to Rule 9(b)'s heightened pleading requirements. *Id.* at 557-58. As such, a complaint needs to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Id.* at 558.

Marin alleges that Deloitte and SAP committed mail fraud by inducing the County to enter into the ISA and the SAP software license agreement ("SLA"), by making fraudulent representations in Deloitte's June 7, 2004 Response to the County's Request for Proposal and Response to the County's Request for Clarification. AC ¶ 220(a). Marin identifies the following fraudulent representations made in the RFP response: that Deloitte is "uniquely qualified"; has "deep experience"; has "assembled a highly skilled and experienced" team; has "experienced consultants"; has a "seasoned team"; has a "breadth" of capability and "unmatched" understanding of the County's needs; has "[c]ommitment to

4

United States District Court
For the Northern District of California

dedicate our best resources"; has "deep bench strength"; has an "experienced team that has worked together before"; has "solid" references from every one of its North American installation clients; has great "strength" in integration of "all aspects of ERP implementations"; will "draw upon the experience of a full range of public sector specialists"; is "absolutely committed to the success of this project"; and that Deloitte and SAP have a "winning solution, a proven implementation approach, and the strong project team needed to meet" the County's requirements. AC ¶¶ 56(a)-(n).

The Court finds that the representations are highly subjective, generalized statements of the superiority of Deloitte's qualifications made in a sales context. As such, they are "puffery" and not quantifiable, actionable misstatements that can form the basis of a mail fraud claim. As the Ninth Circuit explained in *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc*., 911 F.2d 242 (9th Cir. 1990), puffery or puffing has been recognized as vague, exaggerated, generalized or highly subjective statements regarding a product or business which do not make specific claims. The Court found that the "common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Id.* at 246. As such, the Court concluded that claims that a firm was the "low cost commercial collection experts" and any implication that the firm had comparable services to attorneys at lower rates were "general assertions of superiority rather than factual misrepresentations." *Id.* at 246; *see also United States v. Gay*, 967 F.2d 322, 329 (9th Cir. 1992) ("'Puffing' concerns expressions of opinion, as opposed to the knowingly false statements of fact which the law proscribes.").

The statements Marin complains of here are, likewise, vague, highly generalized and subjective statements regarding Deloitte's abilities to implement the RFP. *See, e.g., Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (claims that company would deliver "flexibility" in their contracts and would lower copying costs for consumers is not a "quantifiable claim" but "classic puffery"); *Williams v. Aztar Indiana Gaming Corp*., 351 F.3d 294, 299 (7th Cir. 2003) (holding that "sales puffery" cannot constitute mail fraud to support RICO claim); *Byrne v. Nezhat,* 261 F.3d 1075, 1111 (11th Cir. 2001) (claims of surgical success in medical journals "more akin to puffing than actionable misrepresentations" and cannot sustain mail fraud predicate act under RICO); *Forsyth v. Humana, Inc*., 114 F.3d 1467, 1481 (9th Cir. 1997) (defendant's statements that it could "control costs"

5

and the employers and employees can save money were puffery; "The statements were too general to be interpreted as defining any calculation of insurance premiums."); *Edgenet, Inc. v. GS1, AISBL*, 742 F. Supp. 2d 997, 1018 (E.D. Wis. 2010) ("Statements regarding the ability of a business to meet clients' needs are completely subjective" and cannot support a RICO fraud claim.).

Moreover, this is not a situation where, in deciding to purchase a product or service, the plaintiff relied solely on the representations made in the document allegedly containing the misrepresentations, *i.e.*, the response to RFP. Here, following the representations made in the RFP response, the parties negotiated the very detailed ISA. That document, among other things, required Deloitte to identify "key personnel" assigned to the Project, made each assignment subject to the County's "interview and approval," and required Deloitte to perform the installation with competent and qualified personnel in a timely manner. *See* RJN [Docket No. 75], Ex. C at § 3.1.1; *but see Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967) (where prospective buyers were expected to rely almost entirely on the advertising materials which contained "substantial deception," allegations sufficient to state RICO fraud claim). The detailed requirements negotiated in the ISA confirm that Marin did not rely solely on the representations made in the RFP response, but separately negotiated its needs in the ISA.

Finally, the Court notes that there is a significant plausibility problem in Marin's attempt to join SAP to alleged misrepresentations made by Deloitte in the RFP response. SAP points out that because Marin's RFP required "implementation firms" such as Deloitte to submit their bids with an identified "software firm" like SAP, SAP was actually listed as the "software firm" in four separate RFP responses, one with Deloitte and three with other implementation firms. Supplemental Request for Judicial Notice [Docket No. 105], Ex. B.[3] The fact that SAP participated in four bids seriously undermines Marin's theory that SAP and Deloitte intentionally created an enterprise to convince Marin to select Deloitte/SAP even though SAP *knew* Deloitte's consultants were not competent to fulfill their duties to implement SAP's software under the ISA. As SAP had multiple other options for implementation partners, the more plausible inference is that SAP agreed to go forward only with implementation firms who it believed had the ability and resources to make the Project successful. This

---

[3] The Court GRANTS SAP's request that the Court take judicial notice of the public record, located on the County's website, showing the vendors who responded to Marin's RFP.

1   plausibility problem seriously undermines Marin's theory.  *See Iqbal*, 129 S. Ct. at 1950 ("only a

2   complaint that states a plausible claim for relief survives a motion to dismiss.").

3       As such, the Court concludes that the Amended Complaint fails to allege any predicate acts of

4   mail fraud.

5

6                           **b.      Wire Fraud**

7                            **i.      Ramp-Up**

8       Marin next argues that SAP "perpetuated" the enterprise in the fall of 2005 through various acts

9   of wire fraud that were intended to convince Marin to adopt a new release of SAP's ERP software and

10  become a "Ramp-Up" customer.  *See, e.g.*, AC ¶¶ 67-71.  As predicate wire fraud acts, Marin identifies

11  various emails and attachments sent by SAP personnel to County employees in which SAP touted the

12  benefits of being a "Ramp-Up" customer.  AC ¶ 220(b).  Marin does not allege that any of the

13  representations made in those emails or reports were false.  Instead, Marin bases its wire fraud claim

14  on the fact that SAP sent "deliberately misleading emails and reports representing the purported benefits

15  of becoming a Ramp-Up customer, while concealing the extraordinary risks known exclusively to SAP,

16  including the fact that the Project was already experiencing 'severe problems' and, crucially, the known

17  risk that Deloitte lacked the necessary skills to implement the new Ramp-Up software."  Marin Oppo.

18  at 14.  Therefore, it is SAP's failure to disclose these two "risks" that forms the basis of Marin's wire

19  fraud claims.

20      With respect to the "risks" regarding the status of the Project, Marin's claim fails.  As Marin

21  acknowledges in its own Amended Complaint, during the time period at issue SAP *did* disclose in an

22  October 2005 Report to Marin that "the County is at risk of an improperly designed system which could

23  lead to substantial rework during the Project or a re-implementation after go live."  AC, ¶ 73.  Marin,

24  with hindsight, alleges that the warning should have been stronger, and that on the basis of the warning,

25  SAP should have advised Marin to stop implementation to correct the deficient design.  *See, e.g.*, AC,

26  ¶ 74.  However, Marin cannot bring a failure to disclose claim where SAP disclosed the essence of the

27  problem, that Deloitte's "Blueprint Design" had issues which could, and according to Marin did, lead

28

United States District Court
For the Northern District of California

to subsequent problems.[4]

With respect to the other risk that Marin claims SAP should have disclosed – that Deloitte did not have a sufficient number of consultants to implement the new ERP 2005 software – Marin's claim also fails.  Marin has alleged *no* facts supporting its allegation that at the time of Ramp-Up SAP knew that Deloitte did not have consultants who could implement the Ramp-Up software.  Instead, the crux of Marin's complaint is that Deloitte *promised* to provide a seasoned, experienced team, including specific individuals, but then never provided those individuals.  *See, e.g.*, AC ¶ 60.[5]  The fact that Deloitte did not provide specific individuals to work on Marin's Project does not mean that Deloitte did not have them in its organization, that SAP knew Deloitte lacked experienced consultants, or that SAP knew Deloitte intended not to assign adequate and competent consultants to Marin's Project.

As such, the emails and reports currently identified in the AC sent by or on behalf of SAP in order to encourage the County to adopt Ramp-Up cannot form the basis of predicate acts of wire fraud.

### ii.        Silencing of SAP Employee Metz

The final set of allegations that Marin relies as predicate acts of wire fraud are communications made in Spring 2006,  in which SAP allegedly instructed its own employee – Christopher Metz – to refrain from advising the County on deficiencies in Deloitte's work.  AC ¶¶ 80-96.  SAP argues that it cannot be liable for its alleged "silencing" of Metz because Marin has failed to allege that SAP had any duty to disclose to Marin its views about the Project's implementation.  Marin argues that where parties have an ongoing transactional relationship, and one party disseminates a half-truth, a duty to disclose information necessary to prevent the prior statement from being misleading arises.  *See* Oppo. at 13-15 (relying on *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th

---

[4]   In a footnote, Marin claims that the Report's statement that the Project was "making reasonable progress" was an affirmative misrepresentation.  However, Marin does not allege that the transmission of the SAP October 2005 Report is a predicate act of mail or wire fraud.  *See* AC, ¶¶220(a) & (b).

[5]   AC ¶ 60 ("Yet Shuttlesworth only worked for a single day on the Project, and half of the team members specifically identified in the written materials presented to the County at the pre-contract meetings never showed up to work on the Project."); AC ¶ 62 (complaining that Deloitte staffed the Project with "neophyte" consultants and exacerbated the situation by "constantly shuffling" its personnel on to and  off the Project).

835, 859 (Cal. App. 2007) (noting that "when the defendant makes partial representations but also suppresses some material facts," a duty to disclose can arise where the parties have a relationship "grounded in some sort of transaction between the parties" for example, between "parties entering into any kind of contractual agreement"); *Kennedy v. Jackson Nat'l Life Ins. Co.*, 2010 U.S. Dist. LEXIS 111653, *20 n.3 (N.D. Cal. Oct. 6, 2010) ("dissemination of a half-truth could impose a duty to disclose information necessary to prevent the statement from being misleading.")). However, these cases focus on misrepresentations made at the time the transaction or contract was entered into between the parties. *See, e.g.*, *OCM Principal Opportunities Fund, L.P.,* 157 Cal. App. 4th at 859-60  (seller of securities had duty to disclose material facts about the securities);  *Ordonez v. Saxon Mortgs. Servs*., 2009 U.S. Dist. LEXIS 16511 (E.D. Cal. Feb. 13, 2009) (fraudulent concealment regarding refinancing loans). As noted above, the Court does not find that any actionable half-truths have been alleged with respect to SAP's encouraging Marin to become a "Ramp-Up" customer.  By contrast, the conduct alleged with respect to Metz – preventing him from discussing the status of the Project with Marin – all occurred after Marin had agreed with SAP to become a "Ramp-Up" customer and adopt the 2005 ERP software. Marin cannot show that the alleged silencing of Metz in Spring 2006 constitutes fraudulent conduct without identifying a particular *transaction* between the parties that would not have resulted if SAP had not silenced Metz.[6]

Marin's allegations lack the "factual content that allows the court to draw the reasonable inference" that SAP engaged in a scheme to conceal information from the County in support of its attempt to plead wire-fraud predicate acts. *Iqbal*, 129 S. Ct. at 1949.

### c.    Bribery

Marin also alleges that SAP engaged in bribery as a predicate RICO act.  Marin argues that SAP's promises of future employment to Culver amounted to bribery to perpetuate the RICO

---

[6]  Marin also accuses SAP of "attempted obfuscation" by modifying the April 2006 "Solution Review" where Metz described various errors with Deloitte's work.  However, Marin acknowledges that the report *actually* disclosed the problems Metz found with Deloitte's implementation, and that it was Deloitte's employee who "intentionally misrepresented and minimized the depth and extent of the problems identified by Metz."  AC ¶ 92.

enterprise's attempt to secure more money from the County in implementing the ERP software. Specifically with respect to SAP, Marin alleges that: in April 2007 SAP "engaged" Culver in discussions concerning future employment, AC ¶ 158; in mid-April following "talk of prospective employment," Culver deceived the County Administrator (Matthew Hymel), County Auditor-Controller Richard Arrow, and the new Project director into seeking the BOS approval of $3 million in additional fees for Deloitte and SAP, *id.* ¶ 160; the additional fees were approved by the County on May 1, 2007, *id.*, ¶ 162; and Culver secured employment with SAP in July 2007. *Id.*, ¶ 180.

SAP argues that the "lure of employment" allegation is insufficient as a matter of law because a May 22, 2007 letter signed by a County official memorializes that Culver disclosed to the County that he was pursuing job opportunities with SAP, and the County indicated any resulting job offer would not jeopardize the contractual relationship between the County and SAP; Culver was not offered a job until months after that letter was issued. *See* RJN [Docket No. 75], Ex. A.[7]   However, the Amended Complaint alleges that Culver's employment discussions with SAP began in "April 2007" and identifies a contract approved by the BOS on May 1, 2007 that awarded fees to SAP.  Simply because Culver subsequently secured a letter from the County apparently allowing Culver have discussions with SAP regarding potential employment, and that potential employment did not materialized until July, does not foreclose the County's allegation that an improper bribe occurred when SAP engaged Culver in employment discussions in exchange for Culver's help securing the additional consulting funds. Although a thin reed, the Court finds the County has alleged sufficient facts to state a plausible claim of bribery.

---

[7]  The County objects to the request for judicial notice, arguing that the May 22, 2007 letter is not a public record under California Civil Code § 6252(c) because of its subject matter, i.e., an employee seeking authorization to seek employment with a vendor.  The Court finds that a letter from a public entity allowing an employee to seek employment with a vendor is a record regarding "the conduct of the public's business" as contemplated by the California Public Records Act.  Moreover, the County does not dispute the letter's authenticity or argue that it was not signed by a County official.  As such, SAP's request for judicial notice of the record is GRANTED.

United States District Court

For the Northern District of California

**d.     Use of a Facility of Interstate Commerce in Furtherance of Bribe**

In its opposition, Marin clarifies that its predicate act claim under 18 U.S.C. § 1952 (the "Travel Act"), is based on its allegations that SAP used "facilities" of interstate or foreign commerce, *e.g.*, internet, telephone, or the mail, in furtherance of its alleged acts of bribery. *See* Marin Oppo. at 18.[8] The facts alleged in the Amended Complaint to support its claim are that Culver traveled to a SAP-sponsored conference in Atlanta where he met with Deloitte employees, and that Culver faxed a copy of the letter from the County executive acknowledging Culver's plans to seek employment with SAP to SAP. *Id*.  With respect to the Atlanta conference, the Amended Complaint does not indicate that any SAP employee met with or had any discussions with Culver regarding either potential employment or the County's Project during the conference.  With respect to the fax, as discussed above, read generously the County has alleged bribery with respect to Culver's discussions of prospective employment with SAP at the same time Culver was working to convince the County to approve additional fees for SAP. However, the fax at issue was *sent* by Culver to SAP on May 22, 2007.  Marin has not alleged that SAP expected Culver to send SAP the fax or otherwise communicate to SAP the representations made by the County in the fax.  In absence of facts showing that *SAP* used a facility in interstate or foreign commerce in order to promote or facilitate its alleged bribery of Culver, the Amended Complaint fails to state a Travel Act claim.

**2.     Pattern of Racketeering Activity**

In addition to alleging discrete predicate acts, a plaintiff must also allege a pattern of racketeering activity in order to state a claim under RICO.  18 U.S.C. § 1962(c).  A pattern of racketeering activity must constitute at least two separate predicate acts.  *See, e.g., Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).  In determining whether Marin has alleged a pattern of racketeering activity, the Court may only consider predicate acts attributable to SAP. *See Blake v. Dierdorff*, 856 F.2d 1365, 1371 (9th Cir. 1988) (dismissing a RICO defendant who was alleged to have engaged in only one predicate act, for failure to allege pattern of racketeering activity).

---

[8] Marin refers to "acts" of bribery, but as noted above, has identified only one act of bribery with specificity.

11

Moreover, under RICO, a plaintiff must show that the underlying "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "'Continuity'" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.*, at 242.

Here, with respect to SAP only one act – bribery related to Culver's discussions about employment – has been sufficiently alleged.[9]  Moreover, that alleged act took place *after* the RICO scheme alleged by Marin was already devised and implemented.  As noted above, the "scheme" alleged is that Deloitte and SAP induced Marin, as well as other public entities, to purchase SAP's software and hire Deloitte as the implementing consultants, even though Deloitte and SAP knew that Deloitte lacked the resources and skills to successfully implement SAP's software.  *See, e,g.,* AC ¶¶ 50-58 (inducing Marin to enter into the ISA with Deloitte and SLA with SAP); ¶¶ 67-77 (inducing Marin to become a Ramp-Up customer).  According to Marin's own pleadings, the aim of SAP's bribery was to get Culver to sign off on deliverables for Deloitte and to get Culver to advocate for Marin awarding additional consulting fees to Deloitte and SAP.  *See* Marin Oppo. at 16.  Bribery by SAP in April 2007 in order to secure additional consulting fees for Deloitte and SAP is not directly related to the RICO scheme alleged – fraudulently inducing public entities to enter software license agreements with SAP and hire Deloitte as implementing consultants – and does not support an allegation that the scheme's conduct is at threat of continuing.[10]

Having found that the Amended Complaint fails to allege sufficient predicate acts to establish SAP participated in a pattern of racketeering activity, Marin's section 1962(c) claim must be dismissed. Although the Court questions whether Marin will be able to remedy the deficiencies found, the Court grants Marin leave to further amend its complaint.

---

[9]  The fact that only one predicate act has been alleged also forecloses Marin's argument that "SAP committed predicate [acts] that occurred over a substantial period of time" in order to demonstrate closed-end continuity.  *See* Marin Oppo. at 20.

[10]  Since Marin has failed to adequately allege any predicate acts by SAP based on mail fraud, wire fraud or violation of 18 U.S.C. § 1952, and thus has failed to allege a pattern of racketeering activity, the Court need not reach SAP's arguments regarding deficient allegations of SAP's role in conducting the enterprise or causation between SAP's conduct and Marin's injuries.

United States District Court
For the Northern District of California

### 3. Conspiracy to engage

Because Marin failed to allege a cause of action under 18 U.S.C. § 1962(c), the claim under section 1962(d) for conspiracy to violate section 1962(c) is likewise dismissed with leave to amend. *See Neibel v. Trans World Assur. Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997).

### B. SAP's Aiding and Abetting Culver's Fraud and Breach of Fiduciary Duty

SAP alleges that the Amended Complaint fails to allege sufficient facts with respect to SAP's knowledge of and intent to facilitate Culver's fraud and breach of fiduciary duty against the County of Marin. In opposition, Marin focuses on its allegations that SAP engaged Culver in discussions of prospective employment while expecting Culver to push the County to approve $3million in additional fees to Deloitte and SAP. AC ¶¶ 158-160. Marin also argues that SAP employees knew of the serious problems with the Project, and point to SAP's efforts to silence its employee Christopher Metz, as evidence that SAP knew Culver should not have been recommending further fees to SAP. *See, e.g.*, AC ¶¶ 73, 77-96. Based on these allegations (and as discussed in more detail below regarding the substantive claims of fraud and breach of fiduciary duty against Culver), the Court finds that Marin has adequately alleged SAP's aiding and abetting Culver's fraud and breach of fiduciary duty. The allegations made in the complaint permit the inference – at this juncture – that SAP held out discussions of future employment with SAP while encouraging Culver to seek additional consulting funds for SAP, which presumably would not have been awarded had the full scope of the problems on the Project been known to the Board of Supervisors. *See, e.g.*, AC, ¶¶158-160; *see also Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (Cal. App. 2005) (aiding and abetting liability may be imposed if the person knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other).[11]

---

[11] In Reply, SAP argues that these allegations cannot state a claim against SAP because the fees approved by the BOS on May 1, 2007 were paid to Deloitte and not to SAP. The Court recognizes that the Amended Complaint specifically alleges that the $3 million in additional fees approved by the BOS were for "Deloitte and SAP" (AC ¶ 160), but also asserts that the BOS approved the budget increase in a "contractual amendment to the ISA," which only Deloitte was a party to. AC, ¶ 162. However, no public records regarding the BOS's May 1, 2007 action are before the Court and, therefore, there is nothing to contradict Marin's allegation that some portion of the $3 million in fees want to SAP. That

United States District Court

For the Northern District of California

**C.      Common Law Conspiracy**

SAP argues that Marin has failed to allege the elements of civil conspiracy under California law, which are the formation and operation of the conspiracy, wrongful act or acts done pursuant thereto, and damage. *See Mosier v. S. Cal. Physicians Ins. Exch.*, 63 Cal. App. 4th 1022, 1048 (Cal. App. 1998). As noted above, Marin has failed to allege any wrongful conduct on SAP's part with respect to RICO predicate acts, except for the bribery claim.   California courts acknowledge that a claim for "civil conspiracy is [] easy to allege," although hard to prove. *See, e.g., Choate v. County of Orange*, 86 Cal. App. 4th 312, 333 (Cal. App. 2000).   Nevertheless, given the Court's rejection of the mail and wire fraud claims discussed above, the Court finds that the current Amended Complaint fails to adequately allege a common law conspiracy claim against SAP.   As with the RICO claims mentioned above, Marin will be given leave to amend to plead more specific facts regarding the scope, aim, and intent of the alleged conspiracy plead in this claim.

**D.      Government Code Section 1090 Claim Against SAP**

California Government Code section 1090 provides that, "employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."   The remedy for a violation of section 1090 is to void the affected contracts and disgorgement of monies received by the contracting party. *See, e.g., Carson Redevelopment Agency v. Padilla*, 140 Cal App 4th 1323 (Cal. App. 2006).   Marin alleges two sets of contracts with SAP that Culver had a financial interest in: unidentified January 2007 contracts to "retain" SAP fund management and inventory consultants, AC ¶ 151; and the additional contract with Deloitte and SAP approved by the BOS on May 1, 2007.   AC ¶¶ 158-62.

With respect to the May 1, 2007 contract, SAP argues no "interest" has been alleged when the allegations demonstrate that Culver's employment with SAP did not begin until July 2007. *See, e.g., Thomson v. Call*, 38 Cal. 3d 633, 645 (1985) (recognizing an exception to the conflict rule where the conflict arose after the award of the contract).   However, the Amended Complaint sufficiently alleges

is sufficient to survive a motion to dismiss.

that Culver began employment discussions with SAP prior to the May 1, 2007 BOS action approving the funds to Deloitte and SAP. The allegations support an inference that Culver and SAP had reached an "express or implied" agreement to consider Culver for employment if he helped SAP receive additional funds from Marin. *See id.* (exception only applies where "no earlier agreement – express or implied – existed between the official and the entity contracting directly with the city.").[12]

With respect to the January 2007 contracts, the Court agrees with SAP that Marin has failed to allege sufficient facts regarding both Culver's self interest at that point – with respect to the actions of SAP – and how the unidentified January 2007 contracts benefitted SAP directly.[13] Marin cannot rely on Deloitte's alleged interests, and actions Culver took with respect to Deloitte, in order to state a section 1090 claim against SAP with respect to the January 2007 contracts.

### E.   Claims Against SAP America, Inc.

Finally, SAP moves to dismiss defendant SAP America, Inc., the parent company of defendant SAP Public Services, Inc. SAP argues that the SLA at issue was entered into between Marin and SAP Public Services, Inc., and that Marin has failed to allege how SAP America, Inc. was responsible for the alleged acts by its subsidiary. In opposition, Marin identifies the portions of the Amended Complaint where acts of wrongdoing are alleged directly against employees and representatives of SAP America, Inc. *See* Marin Oppo. at 24-25. SAP does not address Marin's points in the Reply. The Court finds that SAP America should remain in this action as this point, in light of the specific allegations of wrongdoing levied against it in the Amended Complaint.

For the foregoing reasons, the Court GRANTS in part and DENIES in part SAP's motion to dismiss. Marin's RICO and common law conspiracy claims are DISMISSED with leave to amend.

---

[12] The Court has already rejected SAP's alternate argument, in the current posture of the case, that the funds approved by the BOS went solely to Deloitte. *See supra.*

[13] The Amended Complaint alleges only that on or about January 29, 2007, despite his ongoing conflicts of interest, Culver approved contracts on behalf of the County to retain SAP fund management and inventory consultants." AC ¶ 151. As SAP notes, "SAP consultants" are not necessarily employed by SAP, but can be employed by third-parties who act as consultants for SAP's software.

## II.     Culver's Motion to Dismiss

Defendant Ernest Culver has likewise moved to dismiss the three claims asserted against him for fraud, breach of fiduciary duty/duty of loyalty, and violation of California Government Code section 1090.  Culver argues that he is immune from suit and, alternatively, the claims asserted against him are not adequately plead.

### A.     Culver is Not Immune From Suit

Culver first argues that the claims against him should be dismissed because he is immune from liability under California Government Code sections 820.2 and 821.2.  Culver argues that section 820.2 protects government officials from suits over discretionary decisions made by those officials.  Section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Culver asserts that the acts plaintiff complains of – signing off on Project deliverables for work allegedly not completed or not appropriately substantiated, making representations regarding the status of the Project, and inappropriately approving change orders and invoices, *see* AC ¶¶ 128-177 – are discretionary acts protected by the statute.

Discretionary acts covered by section 820.2, are ones "which require[] the exercise of judgment or choice. Discretion has also been defined as meaning equitable decision of what is just and proper under the circumstances." *Burgdorf v. Funder*, 246 Cal. App. 2d 443, 449 (1966).  Subsequent California cases, including the seminal *Johnson v. State of California*, 69 Cal. 2d 782 (1968) opinion, have narrowed the definition of "discretionary" acts covered by 820.2's immunity to those which involve reasoned policy decisions. *See Harmston v. City & County of San Francisco*, 2007 U.S. Dist. LEXIS 74891, *7-8, 13 (N.D. Cal. Sept. 25, 2007).  The California Supreme Court in *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995), explained the decision in *Johnson v. California* as follows:

> a "workable definition" of immune discretionary acts draws the line between "planning" and "operational" functions of government. . . . Immunity is reserved for those "basic policy decisions [which have] . . . been [expressly] committed to coordinate branches of government," and as to which judicial interference would thus be "unseemly." [*Johnson*, 69 Cal. 2d at 793]. Such "areas of quasi-legislative policy-making . . . are sufficiently sensitive" (*id.* at p. 794) to call for judicial abstention from interference that "might even in the first instance affect the coordinate body's decision-making process" (*id.* at p. 793).

United States District Court
For the Northern District of California

On the other hand, said *Johnson*, there is no basis for immunizing lower-level, or "ministerial," decisions that merely implement a basic policy already formulated. (*Johnson, supra*, 69 Cal. 2d at p. 796.) Moreover, we cautioned, immunity applies only to deliberate and considered policy decisions, in which a "[conscious] balancing [of] risks and advantages . . . took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision. [Citations]." ( *Id*. at p. 795, fn. 8.)

*Caldwell*, 10 Cal. 4th at 981 (holding that votes by members of a school district's governing board whether to renew the superintendent's employment contract qualify as discretionary acts within the meaning of section 820.2). Subsequent cases have further explained that operational level judgments, like acts taken to implement policies, are not entitled to Section 820.2 immunity. *See, e.g.*, *Alvarez v. Lake County Bd. of Supervisors*, 2010 U.S. Dist. LEXIS 95109, *47 (N.D. Cal. Sept. 13, 2010); *Ciampi v. City of Palo Alto*, 2011 U.S. Dist. LEXIS 50245, 69-70 (N.D. Cal. May 11, 2011) ("day-to-day operational decisions are not immunized by § 820.2, even if they require 'exercise of considerable judgmental skills.'" [quoting *Barner v. Leeds*, 24 Cal. 4th 676, 684-85, (2000)]).

The Court finds that the decisions Culver allegedly took are not "policy" or planning decisions with immunity under Section 820.2, but "operational" decisions. Culver did not decide to enter into the ISA with Deloitte. *But cf. Rubino v. Lolli*, 10 Cal. App. 3d 1059 (Cal. App. 1970) (director of California's Department of General Services, who awarded contract at issue, entitled to immunity for decision). He was, instead, tasked with signing off on deliverables, change orders and invoices under the ISA. Culver's decisions, therefore, *implemented* the ISA approved by the County and are not entitled to immunity even if Culver exercised his authority in signing off on those decisions.[14]

*Curcini v. County of Alameda*, 164 Cal. App. 4th 629 (Cal. App. 2008), relied on by Culver, is not to the contrary. In *Curcini*, the Court started from the premise that immunity was appropriate for actions taken in awarding an *initial* public contract. *Id.*, at 648-49. The reasons for providing immunity for the public official's decision to award a contract are different and not present here where Culver was not alleged to have any role in the County's initial approval of the ISA. Here, the allegations are that

---

[14]   Moreover, as Marin points out, the County explicitly alleged that Culver abandoned his judgment and any reasoned decision-making authority and instead signed off the items Deloitte wanted due to the bribes Deloitte and SAP offered him in the form of expensive meals out and offers of potential employment. *See, e.g.*, AC ¶ 131. This is not the sort of "conscious" balancing of "risks and advantages" the California Supreme Court has identified as falling within the immunity of section 820.2. *Caldwell*, 10 Cal. 4th at 981.

1    Culver improperly approved payments and orders under that contract.[15]  The allegation that Culver

2    misled others into convincing the County's Board of Supervisors to enlarge the Project's budget

3    likewise cannot support a claim of immunity.  The policymakers on the BOS who voted to increase the

4    Project's budget are likely entitled to immunity for their policy decision, but Culver's role in convincing

5    others to convince others to increase the budget is not.

6        Culver's argument for immunity under section 821.2 fares no better.  Section 821.2 provides that

7    "[a] public employee is not liable for an injury caused by his issuance, denial, suspension or revocation

8    of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate,

9    approval, order, or similar authorization where he is authorized by enactment to determine whether or

10   not such authorization should be issued, denied, suspended or revoked."  Culver claims that his sign offs

11   on the deliverables, invoices and change orders bring him within this section's immunity.

12        However, the cases discussing immunity under this section recognize the immunity extends to

13   licensing and similar activities.  *See O'Hagan v. Bd. of Zoning Adjustment*, 38 Cal. App. 3d 722, 726

14   (Cal. App. 1974) ("under the Tort Claims Act injuries stemming from the issuance, denial, revocation

15   or suspension of licenses, permits and similar official authorizations are excluded from the scope of tort

16   liability of entities and employees."); *see also Sonoma Ag Art v. Department of Food & Agriculture*, 125

17   Cal App 4th 122 (Cal. App. 2004) (State was immune as to an incorrect finding that a grape grower's

18   vines were diseased); *Engel v. McCloskey*, 92 Cal App 3d 870 (Cal. App. 1979) (administrators of the

19   Committee of Bar Examiners were not liable for negligence in failing to promptly complete an initial

20   investigation regarding the moral character of an applicant for admission to the State Bar); *Hirsch v.

21   Department of Motor Vehicles*, 42 Cal App 3d 252 (Cal. App. 1974)( DMV not liable to the purchaser

22   of a stolen car for DMV's issuance of a certificate of ownership to seller of the car who falsely

23   represented that he was legal owner); *Brown v. Los Angeles*, 267 Cal. App. 2d 849 (Cal. App. 1968)

24   (extending immunity to notice that incorrectly informed business owner that property was not zoned for

25

26        [15] Presumably referring to the change orders, Culver asserts that he entered into "contracts" and
     those actions should be considered similar to the initial award of a public contract at issue in *Curcini.
27   See, e.g.*, Reply at 2.  However, Culver's signing of change orders under the ISA is not the type of
     "sensitive" policy decisions that Courts should be reluctant to review.  *But cf. Caldwell,* 10 Cal. 4th at
28   981.

her business).  Culver points to no case where section 821.2's immunity was extended to the types of acts at issue here: a government employee signing off on deliverables, invoices and change orders under an existing contract approved by a legislative body.  Similarly, each of the cases applying section 821.2 immunity was based on harms suffered by individuals who either applied to the government for a license or order, or who were harmed by an order or revocation of license issued by the government.  These are not cases where – as here – the claim is brought by the government against a former employee.  The only case relied on by Culver, *Brown v. Los Angeles*, 267 Cal. App. 2d 849 (Cal. App. 1968) is, therefore, inapposite.  In *Brown*, the Court held that the City of Los Angeles was immune from suit over a notice the City sent to plaintiff claiming that her businesses could not be operated in light of the property's zoning.  The Court found that the notice sent was arguably an "order" covered by 821.2's immunity as well as immunity provided in other provisions in the government code.  "The fact that the act of which appellant complains can be classified under several headings, each of which provides immunity, persuades us that the Legislature intended to ensure that such acts would never become the basis for public liability."  *Id.*, at 851.  The signing of a deliverable, invoice or change order under the ISA is simply not akin to an order finding that a business is not operating in an appropriately designated landuse zone.

For the foregoing reasons, the Court finds that Culver is not immune from the claims in this case.

### B.      Claims for Fraud and Breach of Fiduciary Duty

Culver also moves to dismiss the fraud and breach of fiduciary duty (to the extent based on fraud) claims, arguing that Marin has failed to meet the demanding Rule 9(b) pleading standard.  Marin relies on four categories of misrepresentations Culver made: (1) omissions of material facts; (2) sign-offs on specific Project deliverables; (3) oral misrepresentations; and (4) sign-offs on change orders.  Marin also asserts that Culver's failure to disclose to the County that he was being taken to expensive meals by Deloitte and exploring employment opportunities with Deloitte and then SAP during the time he was signing off on the documents and making misrepresentations are material omissions of fact that constitute separate acts of fraud.

Under Federal Rule of Civil Procedure 9(b), an allegation of fraud must be averred with enough

19

United States District Court
For the Northern District of California

particularity to give specific notice to defendants of misconduct so that they can adequately defend against the charge and not simply offer a general denial. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs may satisfy this heightened requirement by providing "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Marin initially argues that Culver's failure to disclose each of the expensive meals provided to him by Deloitte as well as the discussions of potential employment that occurred in the relevant period (October 2006 through April 2007) were material facts that Culver had a duty to disclose to Marin. *See, e.g., Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (Cal. App. 2007) ("an employee, while employed, owes undivided loyalty to his employer."). Marin argues that it was entitled to Culver's "conflict-free judgment" and loyalty during this time and that, instead, because of the undisclosed meals and employment discussions, Culver was acting in Deloitte and SAP's best interest instead of the County's. *See* AC, ¶¶ 131-, 230-34. Culver notes that in California, merely seeking other job opportunities, even with a competitor, does not constitute a breach of the duty of loyalty to one's employer. *See, e.g.*, Cal. Bus. & Prof. Code § 16600. Here, however, the allegations are not simply that Culver was seeking other employment opportunities, but that he improperly signed off on deliverables and took other inappropriate actions because of the meals and potential employment opportunities being explored. *See* AC, ¶¶ 118-19, 150-51, 153, 158. These allegations sufficiently allege a breach of the duty of loyalty.

However, as SAP points out, in order to state a cause of action for fraud based on concealment, a plaintiff must plead that had Marin known of the concealed facts, it would have acted differently. *See e.g., Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 131 (Cal. App. 2007).[16] The Court agrees that the Amended Complaint does not explicitly allege what the County would have

---

[16] A plaintiff must also allege facts that disclose the damage resulting from the concealment. *See Linear Technology Corp.*, 152 Cal. App. 4th at 131. The Amended Complaint alleges – albeit obliquely – that the concealment "deceived the County into proceeding with the Release II go-live" which caused injury to the County. AC, ¶ 182.

1    done differently if the concealed facts had been revealed and the County avoided or attempted to

2    mitigate the damage, but finds that the allegations regarding the deception that led the County into

3    paying Deloitte for work that was not done or was deficient, as well as agreeing to proceed with the

4    Release II go-live, are sufficient to survive the motion to dismiss.  *See, e.g.,* AC, ¶ 182, 232.

5        Moreover, with respect to the Project deliverables, Marin identifies fifteen deliverable approval

6    forms which it claims Culver signed for work he "knew, or was reckless in not knowing, was defective

7    knowing, was defective or, at a minimum, did not comply with the requirements of the ISA."  AC, ¶¶

8    131-32, 149-50.  Marin also specifically identifies three deliverable approval forms signed by Culver

9    even though the deliverables lacked sufficient documentation as required by the ISA.  *Id.*, ¶¶ 133-34.

10   Finally, Marin identified seven deliverables which Culver signed when he did not have the authority to

11   approve them.  *Id.*, ¶¶ 166, 169, 174.  Along with these allegations, Marin details – using notes from

12   Culver's own electronic diary – Deloitte's and SAP's discussions with Culver regarding employment

13   possibilities during the same time period, as well as the expensive meals Deloitte provided for Culver.

14       Culver argues that the deliverables themselves cannot be fraudulent because they contain no

15   express representations.  *See* Motion at 10; *see also* Declaration of Thomas Mayhew, Exs. A, C, D

16   (attaching sample deliverables).  The Court finds that the misrepresentations are necessarily implied,

17   because under the ISA, the Project deliverable forms were an integral part of the process to track when

18   work was completed under the ISA and sign-offs on those deliverables were necessary for Deloitte to

19   receive payment.  *See* AC ¶¶ 115, 128 ; *see also Universal By-Products, Inc. v. City of Modesto*, 43 Cal.

20   App. 3d 145, 151 (Cal. App. 1974) ("misrepresentation need not be express but may be implied by or

21   inferred from the circumstances.").  The Court also notes that paragraph 130 of the AC, which quotes

22   from section 13.3 of the ISA, explains in detail how signing the deliverables was allegedly fraudulent:

23   "With the signature of each Deliverable, Culver represented to the County and the public, as stated in

24   the ISA, that: '(i) such Deliverable contains no material errors or defects; (ii) such Deliverable meets or

25   fulfills, in all material aspects, the Acceptance Criteria, and (iii) all training and other Services required

26   by this Agreement in connection with the provision of such Deliverable have been completed in all

27   material aspects. . . .'" AC, ¶ 130.  The Court finds that the facts plead, viewed in conjunction with the

28   terms of the ISA incorporated into the Amended Complaint, adequately explain the context for Marin's

allegation that signing each of the deliverables was fraudulent. *See Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

As such, the Court finds that Marin has met the 9(b) pleading standard with respect to the deliverables specifically identified in the Amended Complaint. Culver knows exactly what the alleged misrepresentations were, as well as when and to whom they were made, in addition to Marin's theory of why they were made. The level of detail provided is sufficient for Culver to be able to answer and defend himself against the fraud-based claims. *See Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).[17] However, to the extent Marin is attempting to rely on other, undisclosed, deliverables as its basis for the fraud and/or breach of fiduciary duty claims, it cannot do so. *See, e.g.*, AC, ¶ 132 ("Such Deliverables included . . . ."). Only those deliverables specifically identified in the operative Amended Complaint are actionable.

With respect to oral misrepresentations, Marin relies on two specific oral misrepresentations. On December 29, 2006, Marin alleges that Culver told County Administrator Matthew Hymel that "things generally things were going well," while describing his work on that same day as "hell" in his contemporaneous Project-related writing. AC, ¶ 135. Marin argues that the fact that Culver approved deficient work the week before that he knew was deficient, the fact that he described the Project sometime in December 2006 as a "shopping cart careening downhill," and that the Project experienced severe problems during the "go live" phase the following week, all demonstrate the context for Culver's false statement to Hymel. Oppo. to Culver Motion to Dismiss at 19. Culver asserts that none of these facts show fraud, in particular because other than general assertions Marin has failed to allege facts showing exactly how the work Culver certified was defective. Culver Reply at 9. The Court finds that for purposes of this motion to dismiss, even under the more stringent Rule 9(b) standards, Marin has adequately alleged an oral misrepresentation to Hymel. Marin's arguments essentially go to the merits

---

[17] The Amended Complaint makes clear that these deliverables were misrepresentations to the County and the public. *See* AC, ¶ 130. Culver also argues that for each of the 25 deliverables, Marin must identify which specific components of the deliverable were defective, which specific components of the written materials were missing, and which County of Marin employees relied upon the misrepresentations as to Culver's authority to sign them. However, these details can be readily ascertained through discovery. The Amended Complaint gives Culver adequate information to be able to defend himself in this case.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

of whether the alleged misrepresentation is actionable, not whether a misrepresentation has been alleged.

Marin also relies on misrepresentations made to three senior County officials to deceive them into approving an additional $3 million dollars in consulting fees for Deloitte & SAP. AC, ¶ 160. However, unlike the representation above, Marin does not identify what – if any – oral statements were actually made to any of the three County officials. Without information as to what was actually said by Culver to each of the three County officials, Culver has failed to meet the requirements of Rule 9(b).

Finally, with respect to change orders and invoices, Culver argues that these cannot form the basis of a fraudulent misrepresentation claim because Marin has failed to identify how any of the change order or invoices Culver allegedly signed off on were false or misleading. *See* AC, ¶¶142, 146, 151, 153, 178. Marin does not address these allegations in its Opposition. The Court agrees with Marin that these allegations are insufficient to support a claim for fraudulent misrepresentation because there is no indication or inference in the Amended Complaint as to what was false or misrepresented in Culver's signing off on these documents. Unlike the deliverables discussed above, the change order and invoices are not specifically identified by name or invoice number and Marin has failed to provide any explanation in the Amended Complaint as to why Culver's signing these documents could be considered a false statement under the requirements of the ISA or otherwise.[18]

## C.     The Section 1090 Claims Are Appropriately Alleged Against Culver

Finally, Culver asserts that he cannot be held liable under the Eight Claim, for violation of California Government Code section 1090, because Main does not seek any relief from Culver directly, such as rescission of the contract or damages. Similarly, Culver asserts that because the Ninth Claim – for return of monies received in violation of section 1090 – likewise seeks relief only from Deloitte or SAP, it must be dismissed as to Culver.

However, at least one California court has recognized that only government officials or employees can be liable for a violation of Government Code 1090. *See, e.g., Klistoff v. Superior Court*, 157 Cal. App. 4th 469, 480 (Cal. App. 2007) (Section 1090 prohibits only government officials and

---

[18] However, these allegations – when read in context with the other facts alleged – are relevant to Marin's claim for breach of fiduciary duty. *See supra.*

United States District Court
For the Northern District of California

employees from being "financially interested" in a government contract). As such, Culver is arguably an indispensable party to these claims, even though no monies are sought from him. *But see Carson Redevelopment Agency v. Padilla*, 140 Cal. App. 4th 1323 (Cal. App. 2006) (affirming summary judgment against private contracting party on claim for avoidance of contract under Cal. Govt. Code §§ 1090 & 1092, where contracting party paid extortion demanded by city official). At this juncture, the Court will not dismiss the claims against Culver simply because the 1090 claims do not seek recovery directly from Culver. The fact that the two section 1090 claims are based on Culver's alleged improper financial interests, and as a result the contracts Culver allegedly influenced are avoidable, are sufficient at this stage to avoid dismissal.

Culver's argument that the Amended Complaint fails to adequately identify the requisite financial interest in specific contracts, is likewise rejected at this juncture. Marin identifies three "sets" of contracts that Culver – in light of the dinners and the discussions of job opportunities with Deloitte starting in October 2006, and the subsequent discussions of employment opportunities with SAP starting in April 2007 and culminating in July 2007 – had a financial interest in seeing approved: (1) change orders for additional services signed by Culver on January 15, 2007 and February 15, 2007, AC ¶¶ 146, 153; (2) additional contracts with SAP on January 29, 2007, AC ¶ 151; and (3) additional contracts with Deloitte and SAP in April 2007. AC ¶ 161; *see also* Opposition to Culver Motion at 21. Culver argues that the transactions identified by Marin are simply extensions and amendments of the original ISA and SLA entered into in 2005, prior to Culver having any financial interests in them, and as such are not actionable. Culver Reply at 14-15. However, whether the change orders and contractual amendments relied on by Marin are sufficiently significant and separate from the initial 2005 contracts to support a violation of section 1090 is better suited for resolution at summary judgment, with evidence regarding the exact nature and scope of the change orders and amendments at issue.

For the foregoing reasons, the Court GRANTS in part Culver's motion to dismiss. Marin cannot – without alleging more facts – pursue fraudulent misrepresentation claims based on the allegations in paragraphs 142, 146, 151, 153, 160, and 178 of the Amended Complaint.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part SAP's motion to dismiss. The Court also GRANTS in part and DENIES in part Culver's motion to dismiss. If plaintiff seeks to correct the deficiencies identified above, Marin shall file its Second Amended Complaint within twenty (20) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: December 27, 2011

SUSAN ILLSTON
United States District Judge